IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ROBERT W. OTTO, PH.D. LMFT,<br>individually and on behalf of his patients,<br>JULIE H. HAMILTON, PH.D., LMFT,<br>individually and on behalf of her patients, | )<br>)<br>)<br>) | Civil Action No.:<u> 9:18-cv-80771-RLR </u> |
| Plaintiffs, | )<br>) | **INJUNCTIVE RELIEF SOUGHT** |
| v. | )<br>) | |
| CITY OF BOCA RATON, FLORIDA,<br>and COUNTY OF PALM BEACH,<br>FLORIDA, | )<br>)<br>)<br>) | |
| Defendants | )<br>) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
WITH INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES..........................................................................................iii

REQUEST FOR HEARING..........................................................................................vii

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION...................................1

MEMORANDUM OF LAW IN SUPPORT..................................................................1

BACKGROUND FACTS..............................................................................................2

LEGAL ARGUMENT..................................................................................................3

I.      PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS. ...............................................................................................................3

      A.    The Ordinances Unconstitutionally Discriminate On The Basis Of Viewpoint.................................................................................................3

      B.    The Ordinances Unconstitutionally Discriminate On The Basis Of Content.........7

          1.    No Compelling Government Interests Support The Ordinances.................9

             a.    "Dubious" decisions from other Circuits do not constitute a compelling interest........................................................9

             b.    Defendants cannot assert a compelling interest in preventing harm from voluntary SOCE counseling to willing minor clients................................................10

             c.    Defendants' own studies admit that "no empirical research" supports banning voluntary SOCE counseling for willing minor clients, and Defendants cannot manufacture a compelling interest by misrepresenting those studies...................11

          2.    The Ordinances Are Not Narrowly Tailored............................................12

      C.    The Ordinances Are Unconstitutional Prior Restraints.........................15

      D.    The Ordinances Are Unconstitutionally Vague....................................16

      E.    Defendants' Enactment Of The Ordinances Is *Ultra Vires* And *Void Ab Initio*...............................................................................................17

II.      PLAINTIFFS ARE SUFFERING IRREPARABLE INJURY..........................................19

III.     THE BALANCE OF THE EQUITIES FAVORS INJUNCTIVE RELIEF.....................20

IV.      INJUNCTIVE RELIEF SERVES THE PUBLIC INTEREST........................................20

CONCLUSION......................................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)....................................................20

*ASF, Inc. v. City of Seattle*, 408 F. Supp. 2d 1102 (W.D. Wash. 2005) .........................16

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) .............................................................15

*Bantham Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ....................................................15

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ................................................................17

*Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983) ...........................................................19

*City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ..............................4

*Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779 (Fla. 2016) .........................................18

*Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926) .........................................................16

*Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) ..........................................................5, 6

*D'Ambra v. City of Providence*, 21 F. Supp. 2d 106 (D.R.I. 1998) ................................16

*Elrod v. Burns*, 427 U.S. 347 (1976) .........................................................................19, 20

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995) .....................................................6

*Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123 (1992) ........................................15

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ...................................................16, 17

*Horton v. City of St. Augustine*, 272 F.3d 1318 (11th Cir. 2001) ...................................15

*Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360 (M.D. Fla. 2000.......................16

*Joelner v. Vill. of Washington Park*, 378 F.3d 613 (7th Cir. 2004)................................20

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006). .....................20

*King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014) ........................................8

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) ...............4

*Legal Servs. Corp. v. Valazquez*, 531 U.S. 533 (2001) .................................................................5

*Machesky v. Bizzell*, 414 F.2d 283 (5th Cir. 1969) ....................................................................20

*NAACP v. Button*, 371 U.S. 415 (1963) ..............................................................................8, 16

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283 (11th Cir. 1990) ....................................................19

*Pickup v. Brown,* 740 F. 3d 1208 (9th Cir. 2014) .......................................................................9

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ..............................................................7, 13, 14

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ......................................................................7, 8

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)...........................................3

*Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989) .......................................................13

*Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880 (Fla. 2010)...............17, 18

*Schneider v. New Jersey*, 308 U.S. 147 (1939) ............................................................................20

*Searcy v. Harris*, 888 F.2d 1314 (11th Cir. 1989) .........................................................................4

*Siegel v. Lepore*, 234 F.3d 1163 (11th Cir. 2000) ........................................................................3

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991)..............................................................................................................8

*Sorrell v. IMS Health*, 131 S. Ct. 2653 (2011) ...............................................................3, 5, 10, 13

*Time, Inc. v. Hill*, 385 U.S. 374 (1967) ......................................................................................20

*United States v. Frandsen*, 212 F.3d 1231 (11th Cir. 2000) .........................................................15

*United States v. Salerno*, 481 U.S. 739 (1987) ...........................................................................15

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982).........................16

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ...................................................................13

*Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017) ....................................................*passim*

**Statutes**

Fed. R. Civ. P. 65................................................................................................................1

Fla. Stat. Ann. §491.009...........................................................................................13, 14

Fla. Stat. Ann. §491.001....................................................................................................14

Fla. Admin. Code §64B5-5.001.........................................................................................14

S.D. Fla. L.R. 7.1................................................................................................................1

## REQUEST FOR HEARING

Pursuant to S.D. Fla. L.R. 7.1(b)(2), Plaintiffs hereby request that their Motion for Preliminary Injunction be scheduled for a hearing at the Court's earliest opportunity. Given the significant First Amendment issues presented in Plaintiffs' Motion for Preliminary Injunction, and the ongoing and irreparable injury being visited on Plaintiffs and their clients each day Defendants' Ordinances remain in effect, Plaintiffs believe that oral argument would assist this Court in understanding and deciding the weighty constitutional issues presented in the instant Motion.

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65 and. S.D. Fla. L.R.7.1, Plaintiffs, ROBERT W. OTTO, PH.D. LMFT and JULIE H. HAMILTON, PH.D., LMFT, individually and on behalf of their patients, respectfully move this Court to enter a preliminary injunction enjoining Defendants, CITY OF BOCA RATON, FLORIDA ("City") and COUNTY OF PALM BEACH ("County"), together with their officers, agents, servants, employees, and others who are in active concert or participation with them, from enforcing Boca Raton City Ordinance 5407 ("City Ordinance") and Palm Beach County Ordinance 2017-046 ("County Ordinance") (collectively "Ordinances"), on the grounds that the Ordinances violate the First Amendment and Florida law.

## MEMORANDUM OF LAW IN SUPPORT

### "**We found no empirical research on adolescents <u>who request</u> SOCE**."[1]

By enacting the Ordinances, Defendants are storming the office doors of therapists, thrusting themselves into the sacrosanct relationship of counselor and client, and running roughshod over the clients' and counselors' cherished First Amendment liberties. Defendants' justification for such unconscionable actions is that they do not approve of counseling which addresses the possibility of reducing or eliminating minors' unwanted same-sex attractions ("SSA") or desires to "transition to another gender," **even if the clients desire such change**. Defendants offer no evidence of harm arising from such **voluntary** treatment, but rely upon position papers from advocacy groups, an inconclusive study, and court decisions upholding similar ordinances in other states, which the Eleventh Circuit has dismissed as "dubious."

---

[1]     2009 American Psychological Association Task Force Report on Appropriate Therapeutic Response to Sexual Orientation, on which **Defendants** principally rely. (Verified Complaint, Ex. C, p. 73) (emphasis added).

*Wollschlaeger v. Florida*, 848 F.3d 1293, 1307 (11th Cir. 2017) (en banc). The Ordinances are in gross violation of the Constitution and Florida law, and should be enjoined.

## BACKGROUND FACTS

Plaintiffs refer to the sworn facts set forth in the Verified Complaint ("VC") filed simultaneously with this Motion and Memorandum, and incorporate those facts herein as if set forth in full. Without limitation, Plaintiffs particularly emphasize the following facts:

Plaintiffs Robert Otto ("Dr. Otto") and Julie Hamilton ("Dr. Hamilton") are licensed marriage and family therapists practicing in the City of Boca Raton and County of Palm Beach. (VC ¶¶ 125, 140). As part of their practices, they counsel **willing** minors who are experiencing unwanted SSA and would like to reduce or eliminate the unwanted desires. (VC ¶¶ 126, 142). Many of the clients are Christians who struggle with the conflict between their unwanted SSA and their sincerely held religious beliefs, and they ask Plaintiffs for help in reducing or eliminating SSA to relieve the conflict. (VC ¶¶ 129, 145). The talk therapy that Plaintiffs use to help their clients achieve their goals of reducing or eliminating SSA constitutes Sexual Orientation Change Efforts ("SOCE") counseling, which the Ordinances now prohibit. (VC ¶¶ 126, 142).

Plaintiffs would never force any therapy on any unwilling client, minor or adult. (VC ¶¶131-35, 143-54). Plaintiffs only conduct therapy to assist clients, including minors, with **goals and objectives that the clients themselves set**. (*Id.* ¶¶71-82, 131-35, 143-54). **Plaintiffs would never engage in any counseling with any minor client unless the client himself or herself desires counseling and provides informed consent**. (*Id.*).

Defendants' Ordinances prohibit licensed professionals such as Plaintiffs from engaging in voluntary SOCE counseling under threat of fines and disciplinary actions. (VC, Exs. A, B). Defendants have carved out individualized exemptions and exceptions for counseling that affirms

and supports minors' SSA and desires to "transition to another gender," thereby punishing only the viewpoint that these attractions can be changed if the client desires. (VC Exs. A, B). The Ordinances purport to be aimed at protecting minors from harm caused by SOCE counseling, but offer no evidence of such harm for SOCE counseling **that is voluntarily sought, given and received**. (VC ¶¶131, 144). State regulatory officials have confirmed that there are no records of complaints of harm from voluntary SOCE counseling. (VC Ex. F). In addition, the Ordinances purport to impose differential regulations on practitioners than are imposed elsewhere in Florida, exceeding Defendants' constitutional and statutory authority. (*Id.* ¶¶ 139, 161, 267-81).

## LEGAL ARGUMENT

Injunctive relief is appropriate where, as here: (1) Plaintiffs have a substantial likelihood of success on the merits, (2) Plaintiffs will suffer irreparable injury absent injunctive relief, (3) the balance of the equities tips in Plaintiffs' favor, and (4) the injunction would serve the public interest. *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Plaintiffs meet these criteria and the injunction should issue.

## I.  PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.  The Ordinances Unconstitutionally Discriminate On The Basis Of Viewpoint.

A viewpoint-based restriction on private speech has never been upheld by the Supreme Court or any court. Indeed, a finding of viewpoint discrimination is dispositive. *See Sorrell v. IMS Health*, 131 S. Ct. 2653, 2667 (2011). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the

more blatant." *Id.* at 829. In fact, **viewpoint-based regulations are always unconstitutional**. *See, e.g.*, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) ("'the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others'") (quoting *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984)). *See also Searcy v. Harris*, 888 F.2d 1314, 1324 (11th Cir. 1989) (the government "may not discriminate between speakers who will speak on the topic merely because it disagrees with their views"); *id.* at 1325 ("**The prohibition against viewpoint discrimination is firmly embedded in first amendment analysis**." (emphasis added)).

The Ordinances are textbook examples of viewpoint discrimination. On their face, the Ordinances purport to allow licensed therapists to discuss the subject of sexual orientation, but explicitly prohibit only one particular viewpoint on that subject, namely that unwanted SSA can be reduced or eliminated to the benefit of the client, if the client so desires. The Ordinances define "conversion therapy" in such a way that it is clear that Defendants are targeting only one viewpoint, *i.e.*, SOCE that seeks to "eliminate or reduce sexual or romantic attractions or feelings **toward individuals of the same gender or sex**." (VC, Ex A at 6 (emphasis added)). Similarly, the Ordinances permit counselors to accept and facilitate SSA, even if their minor clients are merely questioning such feelings, but prohibit counselors from counseling minor clients to change unwanted SSA, even when the minor clients themselves request and seek that outcome. (*Id.*).

The Ordinances purport to prohibit licensed counselors from engaging in any practice that seeks to change behaviors, gender identity, or gender expression. But the plain text of the Ordinances demonstrates that they only prohibit such counseling for minor clients who wish to reduce or eliminate behaviors, identity, or expressions that differ from their biological sex. That this is true cannot be questioned because the Ordinances specifically exempt counseling that

4

"provides support and assistance to a person undergoing gender transition." (VC, Ex. A at 6; Ex. B at 5). To undergo "gender transition," one has to be – at minimum – seeking to change from one gender to the other. To transition is to change. So, under the Ordinances, if a minor client wants to undergo radical surgery to alter their appearance or genitalia, Defendants have no problem with a counselor providing counseling to assist in that change. But, if a minor client merely wants to speak with a counselor about unwanted feelings concerning their gender identity or expression, the counselor is absolutely prohibited from engaging in such counseling if it aids the minor in reducing unwanted other-sex identity, behaviors, or expressions. There can be no question that this is viewpoint discrimination.

The Supreme Court and several other courts have invalidated regulations of professional speech as unconstitutional viewpoint discrimination. *See Sorrell*, 131 S. Ct. 2653 (2011); *Legal Servs. Corp. v. Valazquez*, 531 U.S. 533 (2001); *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002). In these cases, the courts recognized the axiomatic truth that the government is not permitted to impose its viewpoint on speakers, even professional speakers subject to licensing requirements and regulation.

In *Velazquez*, the Court addressed a federal funding limitation on legal aid attorneys that operated in the same viewpoint-based manner as the Ordinances. *Velazquez*, 531 U.S. at 537-38. The law provided that attorneys could not receive funds if they challenged welfare laws. The Court invalidated the law as viewpoint discriminatory, because it had the effect of prohibiting "advice or argumentation that existing welfare laws are unconstitutional or unlawful," and thereby excluded certain "vital theories and ideas" from the lawyers' representation. *Id.* at 547-49.

In *Conant*, the Ninth Circuit invalidated a federal policy that punished physicians for communicating with their patients about the benefits or options of marijuana as a potential

treatment. *Conant*, 309 F.3d at 633. The Ninth Circuit noted that the doctor-patient relationship is entitled to robust First Amendment protection:

> An integral component of the practice of medicine is the communication between a doctor and a patient. **Physicians must be able to speak frankly and openly to patients**. That need has been recognized by courts through the application of the common law doctor-patient privilege.

*Id.* at 636 (emphasis added). Far from being a First Amendment orphan, such professional speech "may be entitled to the strongest protection our Constitution has to offer." *Id.* at 637 (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 634 (1995)). The ban impermissibly regulated physician speech based on viewpoint:

> The government's policy in this case seeks to punish physicians on the basis of the content of doctor-patient communications. Only doctor-patient conversations that include discussions of the medical use of marijuana trigger the policy. Moreover, the **policy does not merely prohibit the discussion of marijuana; it condemns expression of a particular viewpoint, i.e., that medical marijuana would likely help a specific patient**. Such condemnation of particular views is especially troubling in the First Amendment context.

*Id.* at 637-38 (emphasis added). The court rejected as inadequate the government's justification that the policy prevented clients from engaging in harmful behavior, and permanently enjoined enforcement of the policy. *Id.* at 638-39.

The Ordinances here operate almost identically to the federal policy enjoined in *Conant*. Just as the policy in *Conant* prohibited physicians from speaking about the benefits of marijuana to a suffering patient, so do the Ordinances prohibit counselors from speaking about the potential for reduction or elimination of unwanted same-sex attractions, or desires to "transition to another gender," that might benefit a client distressed by the unwanted desires. In both cases, the laws express a preference for the message the government approves of and disdain attached to punishment for the viewpoint with which the government disagrees. As was true of the law in *Conant*, the Ordinances here should be invalidated as unconstitutional viewpoint discrimination.

**B.    The Ordinances Unconstitutionally Discriminate On The Basis Of Content.**

"Content-based laws—those that target speech on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling government interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (same). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both distinctions are drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Reed*, 135 S. Ct. at 2227 (emphasis added). Put simply, the Supreme Court has handed down a firm rule: **laws that are content based on their face must satisfy strict scrutiny**. *Id.*; *see also id.* at 2233 ("As the Court holds, what we have termed 'content-based' laws must satisfy strict scrutiny.") (Alito, J., concurring).

Importantly, this firm rule mandating strict scrutiny of facially content-based restrictions applies regardless of the government's alleged purpose in enacting the law. *Id.* at 2227. "On its face, the [law] is a content-based regulation of speech. We thus have no need to consider the government's justifications or purposes for enacting the [law] to determine whether it is subject to strict scrutiny." *Id.* In so holding, the Court rejected the lower court's rationale that the alleged purpose behind enacting the content-based law can justify subjecting it to diminished constitutional protection. *Id.* "But this analysis skips the crucial first step . . . determining whether the law is content neutral on its face." *Id.* at 2228. The answer to that question, the *Reed* Court said, is dispositive of the level of scrutiny applicable to the regulation of speech. *Id.* "**A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the**

7

**regulated speech**." *Id.* (emphasis added). "[A]n innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.*

> This rule also applies to content-based restrictions of the speech of licensed professionals.
>
> Although *Button* predated our more recent formulations of strict scrutiny, the Court rightly rejected the State's claim that its interest in the regulation of professional conduct rendered the statute consistent with the First Amendment, observing that **it is no answer to say that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression**.

*Id.* at 2229 (citing *NAACP v. Button*, 371 U.S. 415, 438-39 (1963)) (emphasis added). The en banc Eleventh Circuit, too, has unequivocally stated that the prohibition on content-based laws applies equally to laws targeting the speech of licensed professionals. *Wollschlaeger,* 848 F.3d at 1307 ("Speech is speech, and it must be analyzed as such for purposes of the First Amendment") (quoting *King v. Governor of New Jersey*, 767 F.3d 216, 229 (3d Cir. 2014)); *id.* at 1308 (rejecting Florida's contention that it can prohibit certain types of speech as a regulation of licensed professionals) ("Keeping in mind that no law abridging freedom of speech is ever promoted as a law abridging freedom of speech . . . we do not find the [state's] argument persuasive.").

Thus, content-based laws must satisfy strict scrutiny, even if targeted at licensed professionals. *Reed*, 135 S. Ct. at 2229. **There are no exceptions to this rule**.[2] Indeed, the notion that a content-based restriction on speech is presumptively unconstitutional is "so engrained in our First Amendment jurisprudence that last term we found it so 'obvious' as to not require explanation." *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105,

---

[2]     The concurring Justices confirm the concrete nature of the rule. *See, e.g.*, *Reed*, 135 S. Ct. at 2234 (Breyer, J., concurring) (noting that under the majority's rule, a finding of content discrimination is "**an automatic strict scrutiny trigger**." (emphasis added)); *id.* at 2236 (Kagan, J., concurring in the judgment) ("Says the majority, When laws single out specific subject matter, they are facially content based; and when they are facially content based, they are **automatically subject to strict scrutiny**." (emphasis added)).

115-16 (1991). The burden is on Defendants to prove they can satisfy strict scrutiny, and they cannot meet that burden.

### 1.     No Compelling Government Interests Support The Ordinances.

#### a.     "Dubious" decisions from other Circuits do not constitute a compelling interest.

Defendants claim that the Ordinances are justifiable exercises of their interests in protecting their citizens because other federal courts have upheld similar prohibitions enacted in other states. (VC, Ex. A at 4 (citing *Pickup v. Brown,* 740 F. 3d 1208 (9th Cir. 2014)); Ex. B at 3). However, Defendants ignore the fact that they are in the Eleventh, not the Ninth, Circuit, and the Eleventh Circuit has expressed "serious doubts about whether *Pickup* was correctly decided," because "**characterizing speech as conduct is a dubious constitutional enterprise**." *Wollschlaeger*, 848 F.3d at 1309. "[W]e do not think it is appropriate to subject content-based restrictions on speech by those engaged in a certain profession to mere rational basis review," as the Ninth Circuit had done in *Pickup*. *Id.* at 1311.

In *Wollschlaeger*, the en banc Eleventh Circuit invalidated portions of Florida's Firearm Owners' Privacy Act (FOPA), which prohibited physicians from "making a written inquiry or asking questions concerning the ownership of a firearm or ammunition by the patient or by a family member of the patient, or the presence of a firearm in a private home." *Id.* at 1302-03. The Court found that the provisions regulated speech on the basis of content by restricting (and providing disciplinary sanctions for) speech by medical professionals on the subject of firearm ownership. *Id.* Specifically, the court noted that because the restrictions "apply only to the speech of doctors and medical professionals, and only on the topic of firearm ownership," they were "speaker-focused and content-based restrictions." *Id.* at 1307. The Eleventh Circuit found that the provisions could not even satisfy intermediate scrutiny, let alone the strict scrutiny required for presumptively

unconstitutional content-based regulations. *Id*. This binding precedent from the Eleventh Circuit specifically rejecting the constitutional analysis employed by the Ninth Circuit in *Pickup* vitiates Defendants' reliance upon that case to justify enactment of the Ordinances.

> **b.    Defendants cannot assert a compelling interest in preventing harm from voluntary SOCE counseling to willing minor clients.**

Defendants assert that they have compelling interests in preventing minors from receiving SOCE counseling because it could potentially be harmful to them. This assertion is not only based on intentional misrepresentations of various studies, *see* Section I.B.1.c *infra*, but is also insufficient as a matter of law to serve as a compelling interest. *Wollschlaeger* noted that laws targeting the content of certain doctor-patient or counselor-client communications cannot be justified by the "paternalistic assertion that the policy was valid because patients might otherwise make bad decisions" if left to determine the best course of counseling for themselves. 848 F.3d at 1310. Indeed, just because Defendants "may generally believe that doctors and medical professionals should not ask about, nor express views hostile to, [a certain topic or course of counseling], [they] 'may not burden the speech of others in order to tilt the public debate in a preferred direction.'" *Id.* at 1313-14 (quoting *Sorrell* 564 U.S. at 578-79). Where, as here, "[t]he record demonstrates that some patients do not object to questions and advice about [the prohibited content of speech], and some even express gratitude for their doctor's discussion of the topic," a law is unconstitutional if it "does not provide for such patients a means by which they can hear from their doctors on the topic." *Id.* at 1313.

There are no such means provided in the Ordinances. Instead, Defendants assert that they need to protect minors from purported harms they claim would result if licensed professionals talked to willing minors about the possibility that unwanted same-sex attractions or desires to

"transition to another gender" can be changed, **even if the clients seek and desire such discussions**. (VC, Ex. A at 5; Ex. B at 3-4). No such harm will occur, according to Defendants, if counselors support and affirm minors' same-sex attractions or desires to "transition to another gender," (VC, Ex. A at 6; Ex. B at 5), revealing that Defendants are attempting to tilt the debate in favor of those advocating against SOCE counseling, not prevent purported harm. However, Defendants do "**not have carte blanche to restrict the speech of doctors and medical professionals on a certain subject without satisfying the demands [of the First Amendment]**." *Wollschlaeger*, 848 F.3d at 1314 (emphasis added). Defendants cannot support the claim that the Ordinances are necessary to protect a purported state interest in preventing harm from a politically undesirable type of counseling.

> **c.      Defendants' own studies admit that "no empirical research" supports banning voluntary SOCE counseling for willing minor clients, and Defendants cannot manufacture a compelling interest by misrepresenting those studies.**

Defendants also contend that the Ordinances serve a compelling state interest by pointing to statements and reports issued by professional associations which supposedly establish that SOCE counseling is harmful to minors. In particular, Defendants cite to the 2009 American Psychological Association Task Force Report on Appropriate Therapeutic Response to Sexual Orientation ("APA Report"), and the subsequent resolution, as justification for prohibiting SOCE counseling. (VC, Ex. A at 2-4; Ex. B at 1-3).

However, the APA Report does not support the conclusion that voluntary SOCE counseling is harmful to minor clients who desire to receive it. In fact, the APA Report specifically noted that the research is inadequate to draw **any** conclusions concerning SOCE counseling. (VC Ex. C). The APA Report specifically noted that "sexual orientation issues in children are **virtually**

**unexamined**." (VC Ex. C at 91 (emphasis added)), and noted that "[t]here is a lack of published research on SOCE among children." (*Id.* at 72). The APA Report also concluded that "there is a dearth of scientifically sound research on the safety of SOCE. **Early and recent research studies provide no clear indication of the prevalence of harmful outcomes**." (*Id.* at 42 (emphasis added)). The APA Report also noted that it could make no conclusions about SOCE counseling for those minors who request such counseling because "**We found no empirical research on adolescents who request SOCE**." (*Id.* at 73 (emphasis added)).

The APA Report also noted that its conclusions were necessarily limited because they are not based on specific studies from individuals, including minors, who request SOCE counseling. (*Id.* at 76). In fact, contrary to Defendants' representations, the APA Report noted that it found evidence of **benefit** to individuals seeking such counseling. (*Id.* at 43, 85) The APA Report specifically noted that "[s]ome individuals report that they went on to lead outwardly heterosexual lives, developing a sexual relationship with an other-sex partner, and adopting a heterosexual identity." (*Id.* at 84-85). Since the APA admitted that its report was inconclusive and that there was **no evidence regarding** the effect of SOCE counseling on children, it does not support Defendants' claim that the Ordinances are necessary to protect children from harm.

Furthermore, the Board of Medical Quality Assurance for the State of Florida has also admitted that it has no records of any complaints against any licensed professionals in Florida related to SOCE counseling. (VC Ex. F). Absent such evidence, Defendants cannot establish a compelling state interest sufficient to support a content- and viewpoint-based speech restriction.

### 2.     The Ordinances Are Not Narrowly Tailored.

Even if Defendants could substantiate compelling interests for the Ordinances' prohibition on SOCE counseling, which they cannot, Defendants could not meet their burden of showing that

the Ordinances are narrowly tailored. "It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). There must be a 'fit between the . . . ends and the means chosen to accomplish those ends.'" *Wollschlaeger*, 848 F.3d at 1312 (quoting *Sorrell*, 564 U.S. at 572). While "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity, government may regulate the area of First Amendment freedoms only with narrow specificity." *Id.* at 1320 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

The Supreme Court has clearly established that "The government may not regulate a ['mode of speech'] based on hostility—or favoritism—towards the underlying message expressed." *R.A.V.* 505 U.S. at 386. As shown above, the Ordinances are based on political preferences to ban such counseling, not on scientific evidence of harm. Where, as here, other, content-neutral alternatives exist, government cannot fulfill its narrow tailoring burden by ignoring those alternatives. *See id.* at 395 ("The existence of adequate content-neutral alternatives thus 'undercut[s] significantly' any defense of such a statute, casting considerable doubt on the government's protestations that the 'asserted justification is in fact an accurate description of the purpose and effect of the law.'" (citations omitted)).

The Ordinances woefully fail narrow tailoring. They are not necessary to prevent harm (which has not been proven) because existing Florida law and the ethical codes of the professions engaging in this form of counseling already prohibit practices that actually harm patients. (VC ¶¶ 83-95). Licensed marriage and family therapists are already prohibited by law from "[m]aking misleading, deceptive, untrue, or fraudulent representations in the practice of any profession licensed, registered, or certified" by Florida's Marriage and Family Therapy Board. *See* Fla. Stat.

Ann. §491.009(1)(l). They are prohibited by law from engaging in any practice that is harmful to clients or patients, such as "[f]ailing to meet minimum standards of performance in professional activities when measured against generally prevailing peer performance." Fla. Stat. Ann. §491.009(1)(r).

Existing Florida law regulating professional counselors also imposes upon them a legal obligation to abide by the other ethical requirements of their profession. *See* Fla. Stat. Ann. §491.001(1)(t). These ethical obligations include codes promulgated by the American Association of Marriage and Family Therapists ("AAMFT Code"). Standard 1 of the AAMFT Code mandates that counselors not harm their clients or engage in practices that might do so. (VC ¶¶89-90). Standard 1.1 of the AAMFT Code prohibits licensed marriage and family therapists, such as Dr. Otto and Dr. Hamilton, from discriminating against clients based on their sexual orientation or gender identity (VC ¶91). If violated, these provisions come with legal sanction under existing Florida law. *See* Fla. Admin. Code §64B5-5.001. Thus, Defendants' assertions that no other alternatives or existing laws prevent the harm they allege are demonstrably false. (VC Ex. A at 5; Ex. B at 4). The fact that children are already protected from harmful and dangerous therapies reveals that Defendants' underlying purpose is not protecting minors. Statutes, regulations and ethical rules already protect minors without suppressing speech. Under *R.A.V.*, if Defendants had content-neutral means of preventing the alleged harm, failing to employ those means demonstrates that the Ordinances are not narrowly tailored as a matter of law. *R.A.V.*, 505 U.S. at 395.

Moreover, if Defendants were concerned with alleged harms resulting to minors who are **involuntarily** subjected to counseling against their will, Defendants could have banned those practices without indiscriminately outlawing **voluntary** SOCE counseling to willing patients. Indeed, informed consent would be another less restrictive means to achieve Defendants'

14

purported interests. When legislation virtually identical to the Ordinances was being debated in California, several mental health organizations recognized that this type of "legislation is attempting to undertake an unprecedented restriction on psychotherapy." (*See* VC Ex. G at 1). They proposed informed consent language that would have been much more narrowly tailored than the unprecedented intrusion into the relationship between counselor and willing client. (*Id.*). Although this alternative is in the public record, Defendants either never considered it or rejected it for no good reason.

In sum, a complete ban a viewpoint regarding SSA is not the least restrictive means to achieve any governmental interest. Total prohibitions on constitutionally protected speech are "hardly an exercise of narrow tailoring." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Absent narrow tailoring the Ordinances cannot survive strict scrutiny.

### C.      The Ordinances Are Unconstitutional Prior Restraints.

Prior restraints against constitutionally protected expression are highly suspect and disfavored. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). In fact, "any system of prior restraints comes to this Court bearing the heavy presumption against its constitutional validity." *Bantham Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). This is why "[t]he Supreme Court and [the Eleventh Circuit] consistently have permitted facial challenges to prior restraints without requiring a plaintiff to show that there are no conceivable set of facts where the application of the particular government regulation might or would be constitutional." *United States v. Frandsen*, 212 F.3d 1231, 1236 (11th Cir. 2000); *Horton v. City of St. Augustine*, 272 F.3d 1318, 1331-32 (11th Cir. 2001) ("the Supreme Court itself in *Salerno* acknowledged [that prior restraints are the] exception to the 'unconstitutional-in-every-conceivable-application' rule" (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

15

Total prohibitions, such as the Ordinances here, constitute prior restraints. *See, e.g.*, *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1364 (M.D. Fla. 2000) ("This Court also finds that . . . moratoria are governed by prior restraint analysis in the same manners as permitting schemes."); *D'Ambra v. City of Providence*, 21 F. Supp. 2d 106, 113-14 (D.R.I. 1998) (same); *ASF, Inc. v. City of Seattle*, 408 F. Supp. 2d 1102, 1108 (W.D. Wash. 2005) (total prohibitions on protected expression fail prior restraint analysis).

Here, as in *ASF*, the Ordinances go "a step further in suppressing protected speech." *Id.* The Ordinances completely prohibit SOCE counseling, even voluntary counseling, with minors in the City and County. There is no exception to the Ordinances' perpetual prohibition on protected expression. As the court held in *Howard*, such bans are subject to prior restraint analysis. *Howard*, 109 F. Supp. 2d at 1364. The Ordinances fail that analysis.

### D.    The Ordinances Are Unconstitutionally Vague.

A law is unconstitutionally vague and overbroad if it "either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). Government policies "must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to take." *Id.* at 393. "Precision of regulation" is the touchstone of the First Amendment. *Button*, 371 U.S. at 435. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). While all regulations must be reasonably clear, "laws which threaten to inhibit the exercise of constitutionally protected" expression must satisfy "a more stringent vagueness test." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). Such a law must give "adequate warning of what activities it proscribes"

and must "set out explicit standards for those who apply it." *See Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973) (citing *Grayned*, 408 U.S. at 108).

The Ordinances do not fulfill either requirement and thus force both those enforcing the Ordinances and mental health professionals to guess at their meaning and differ as to their application. Defendants attempted to defeat a vagueness claim by offering statements of intended limitations in the preliminary provisions of the Ordinances (VC Ex. A at 4-5, Ex. B at 3). However, those limiting statements are not part of the operative terms of the Ordinances and so are unavailing. Because sexual orientation and gender identity are fluid and changing concepts, licensed professionals such as Dr. Otto and Dr. Hamilton are left to guess about what they are permitted to say to their clients who present with unwanted same-sex attractions or unwanted desires to "transition to another gender." (VC ¶¶96-110). The Ordinances leave licensed counselors uncertain whether and at what point a particular recommendation or even a particular statement with a minor client will cost them hundreds of dollars in fines and other disciplinary actions. Similarly, code enforcement officers and others tasked with enforcing the Ordinances are uncertain at what point a counselor has crossed the line. This does not satisfy the stringent test required for the threat to Plaintiffs' First Amendment rights. *Village of Hoffman,* 455 U.S. at 499.

    **E.**    **Defendants' Enactment Of The Ordinances Is *Ultra Vires* And *Void Ab Initio.***

Plaintiffs also have a substantial likelihood of success on the merits because the Ordinances are *ultra vires* enactments that violate the Florida Constitution and statutes. A local government enactment will be considered inconsistent with state law if (1) the Legislature "has preempted a particular subject area" or (2) the local enactment conflicts with a state statute." *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880, 886 (Fla. 2010). The Ordinances fail on both counts. The State has impliedly preempted the field of regulation of mental health professionals

17

through enactment of a comprehensive licensing and disciplinary scheme in Florida Statutes, Title XXXII, Chapter 491. Furthermore, the Ordinances conflict with Florida law by purporting to make illegal a form of counseling that the state legislature permits.

Preemption is implied when "the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme." *Sarasota*, 28 So.3d at 886. When determining if implied preemption applies, the court must look at the provisions of the policy as a whole, the nature of power exercised by the legislature, the object sought to be attained by the statute, and the character of the obligations imposed by the statute. *Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779, 784 (Fla. 2016). In *Classy Cycles*, the Florida Supreme Court held that local ordinances regarding insurance requirements for certain vehicles were impliedly preempted by the State. *Id.* at 788-90. The court reasoned that the State had created a pervasive and extensive scheme of regulation and that the local ordinances were "attempt[s] to regulate in an area well-covered by existing statutes" and thus were impliedly preempted. *Id.* at 788.  Where the State has not specifically granted any authority to local officials to be involved with certain regulation, the State's extensive law in that particular area demonstrates implied preemption. *Id.* The same is true of the Ordinances here, as Florida has enacted a pervasive and comprehensive scheme for regulating mental health professionals. (VC ¶¶84-88).

The Ordinances conflict with Section 491.009 of the Florida Statutes, and Rule 64B4-5.001, in purporting to impose additional fees and penalties and, more importantly, attempting to expand upon conduct that would subject a provider to discipline. The Ordinances purport to make illegal in the City and County a form of therapy that is legal elsewhere in Florida. Thus, the Ordinances are in direct conflict with Florida law that has occupied the field of professional

regulation for mental health counselors. The Ordinances are void as *ultra vires* acts in violation of Defendants' authority under the laws and Constitution of the State of Florida.

## II.     PLAINTIFFS ARE SUFFERING IRREPARABLE INJURY.

Plaintiffs are suffering and will continue to suffer immediate and irreparable injury absent injunctive relief. Indeed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983); *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

As was true of the law invalidated in *Wollschlaeger*, the Ordinances here discriminate on the basis of content and viewpoint, prohibiting only the viewpoint that same-sex attractions and desires to "transition to another gender" can be changed if unwanted. The Ordinances silence licensed counselors who wish to engage in a course of counseling with consenting minor clients that aligns with the clients' sincerely held religious beliefs. Such a prohibition constitutes a deprivation of First Amendment rights and imposes immediate and irreparable harm on Plaintiffs and their clients.

Plaintiffs are suffering irreparable injury by being silenced in their ability to speak to their willing, minor clients about counseling which is legally available throughout Florida, and which can assist the clients in reducing or eliminating unwanted same-sex attractions. (VC ¶¶ 162-182). If Plaintiffs violate the Ordinances' prohibitions, then they are subject to fines and other disciplinary actions. (VC ¶¶29, 35). If they follow the Ordinances' requirements, then Plaintiffs will be subject to sanctions for violating ethical codes mandating that the clients have the right to self-determination and that the counselor should not impose an ideology on the clients. (*Id.* ¶¶138, 160). The imposition of punishment for discussing a course of counseling desired by the clients

and permitted by professional standards is a deprivation of constitutional rights, and constitutes *a priori* irreparable harm.

## III.   THE BALANCE OF THE EQUITIES FAVORS INJUNCTIVE RELIEF.

An injunction in this matter will protect the very rights the Supreme Court has characterized as "lying at the foundation of a free government of free men." *Schneider v. New Jersey*, 308 U.S. 147, 151 (1939). The granting of a preliminary injunction that enjoins enforcement of the Ordinances will not impose any harm on the City or County. As noted above, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 72 (11th Cir. 2006). Conversely, "there can be no harm to [the government] when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004). That is because the government "has no legitimate interest in enforcing an unconstitutional [law]." *KH Outdoor*, 458 F.3d at 1272. As such, there can be no comparison between the irreparable and unconscionable loss of First Amendment freedoms suffered by Plaintiffs and their clients absent injunctive relief, and Defendants' non-existent interest in enforcing unconstitutional ordinances. The balance of the equities tips decidedly in Plaintiffs' favor, and the preliminary injunction should issue.

## IV.   INJUNCTIVE RELIEF SERVES THE PUBLIC INTEREST.

The protection of First Amendment rights is of the highest public interest. *See Elrod v. Burns*, 427 U.S. at 373. This protection is *ipso facto* in the interest of the general public because "First Amendment rights are not private rights [but] rights of the general public [for] the benefits of all of us." *Machesky v. Bizzell*, 414 F.2d 283, 288-90 (5th Cir. 1969) (citing *Time, Inc. v. Hill*, 385 U.S. 374 (1967)). Indeed, "[i]njunctions protecting First Amendment freedoms are **always in the public interest**," *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (emphasis added).

## CONCLUSION

For the foregoing reasons, the preliminary injunction should issue.

/s/ Horatio G. Mihet
Mathew D. Staver (FL Bar 0701092
Horatio G. Mihet (FL Bar 026581)
Roger K. Gannam (FL Bar 240450)
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Email: court@lc.org

*Pro hac vice* pending

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June 2018, I caused the foregoing to be electronically filed with this Court through this Court's ECF/electronic filing system, and I caused a true and correct copy of the same to be served via process server on the following individuals:

Defendant City of Boca Raton, Florida
c/o Scott Singer, Mayor
201 West Palmetto Park Road
Boca Raton, FL 33432

County of Palm Beach, Florida
c/o Melissa McKinlay, Mayor
301 N. Olive Avenue, Suite 1201
West Palm Beach, FL 33401

/s/ Horatio G. Mihet
Horatio G. Mihet