UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:18-CV-80771-RLR

ROBERT W. OTTO, PH.D. LMFT,
individually and on behalf of his patients,
JULIE H. HAMILTON, PH.D., LMFT.
individually and on behalf of her patients,

      Plaintiffs,

vs.

CITY OF BOCA RATON, FLORIDA,
and COUNTY OF PALM BEACH,
FLORIDA

      Defendants.

_____/

**DEFENDANT, CITY OF BOCA RATON'S MOTION TO
DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant, City of Boca Raton ("City"), moves for entry of an order dismissing the Complaint [ECF No. 1] ("Complaint"), filed by Plaintiffs, Robert W. Otto ("Otto") and Julie H. Hamilton ("Hamilton") (collectively, "Plaintiffs") in its entirety and submits its Memorandum of Law in support of its Motion.

## OVERVIEW

On October 10, 2017, the City passed Ordinance No. 5407 ("Ordinance"), which prohibits conversion therapy—treatment performed <u>with the goal of</u> changing an individual's sexual orientation or gender identity—on minors within City limits.  *See* Ordinance, ECF No. 1-4, 6:10-14.[1] [2]  The Ordinance:

> does not intend to prevent mental health providers from speaking to the public about SOCE; expressing their views to patients; recommending SOCE to patients; administering SOCE to any person who is 18 years of age or older; or referring minors to unlicensed counselors, such as religious leaders.

*Id.* at 4:21-24.  Clergy and other religious leaders, moreover, are exempt from the Ordinance and may provide guidance and counseling to minors, so long as it is not performed under the guise of licensed mental health therapy.  *Id.* at 6:26-7:3.

Defendant, Palm Beach County ("County") has passed a similar (albeit, not identical) ordinance.  *See* ECF No. 1-5.

The Ordinance is justified by overwhelming research from leading health organizations that demonstrate that conversion therapy on minors[3] is both harmful and lacking in psychological or other medical foundation.[4]  *See id.* 1:11-5:11. The City determined, in enacting the Ordinance, that it has "<u>a compelling interest</u> in protecting the physical and psychological well-being of

---

[1]        When considering a motion to dismiss, courts should examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2]        Hereinafter cited as "Ordinance, page: line."

[3]        The Ordinance sometimes refers to "conversion therapy" as "sexual orientation change efforts," or its abbreviation, SOCE.  Ordinance, 2:5-8.

[4]        The Ordinance specifically references articles, reports, position statements, policy statements, and resolutions from the American Academy of Pediatrics; the American Psychiatric Association; the American Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual Orientation; the American Psychological Association; the American Psychoanalytic Association; the American Academy of Child & Adolescent Psychiatry; the Pan American Health Organization; the American School Counselor Association; the Substance Abuse and Mental Health Services Administration (a division of the U.S. Dep't of Health and Human Services); and the American College of Physicians.  Ordinance, 1-4.

minors"[5] against exposure "to serious harms caused by sexual orientation and gender identity change efforts." *Id.* at 5:3-6 (emphasis added).  The City also found that minors receiving such treatment from licensed therapist within City limits "<u>are not effectively protected by other means</u>, including but not limited to, other state statutes, local ordinances or federal legislation." *Id.* at 5:12-15 (emphasis added).

The Complaint alleges that the Plaintiffs are licensed marriage and family therapists who provide conversion therapy to minors.  Complaint, ECF No. 1, ¶¶ 122; 126; 140; 142.[6]  Plaintiffs have "sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong." Compl., ¶ 302.

The Complaint asserts the same causes of action against both the City and the County, as follows: Count I, violation of freedom of speech under the First Amendment; Count II, violation of Plaintiffs' clients' right to receive information under the First Amendment; Count III, violation of Plaintiffs' freedom of religion under the First Amendment; Count IV, violation of Florida's constitutional right to free speech; Count V, violation of Florida's constitutional right to freedom of religion; Count VI, the Ordinance was *ultra vires* because the Ordinance is preempted under Article VIII, Sections 1(g) and 2(b), Florida Const.; Count VII, violation of the Florida Patient's Bill of Rights and Responsibilities; and Count VIII, violation of the Florida Religious Freedom Restoration Act, § 761.01, Fla. Stat., *et seq*.

The City moves to dismiss the Complaint both based on a lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), and based upon the failure of the Complaint to state a claim, Fed. R. Civ. P. 12(b)(6).  With regard to standing, Hamilton individually lacks standing to sue the City.  In addition, Plaintiffs lack standing to assert the rights of third-parties as alleged in Count II.

Plaintiffs' constitutional claims in Counts I-V, moreover, fail to state claims upon which relief can be granted.  At the outset, the Complaint fails to meet the well-settled pleading requirements of Rule 8, Fed. R. Civ. P.  If they seek recovery through 42 U.S.C. § 1983, the Complaint fails to meet the strict pleading requirements applicable to such actions.  Plaintiffs' prayer for relief is improper and seeks damages that are not available remedies to Plaintiffs' alleged constitutional violations. If those claims seek direct compensation for alleged violations of the

---

[5]     The Ordinance defines "minor" as any person less than 18 years of age.  Ordinance, 6:20.
[6]     Hereinafter cited as "Compl., ¶ __."

Constitution, they fail as a matter of law.  Substantively, based upon the applicable standard of review, the Ordinance withstands First Amendment scrutiny on its face.

Count VI fails because the Ordinance is neither expressly nor impliedly preempted by Florida state law.  The Florida Patient Bill of Rights, Count VII, does not provide Plaintiffs with a cause of action, and this claim must, therefore, be dismissed.  Finally, Count VIII, a claim pursuant to Florida's Religious Freedom Restoration Act, fails to meet the pleading standard required to state a claim.

**MEMORANDUM OF LAW**[7]

### I.   HAMILTON LACKS STANDING TO SUE THE CITY.

Article III, § 2 of the U.S. Constitution requires that there be a "case" or "controversy" before a federal court may decide a case.   Art. III, § 2, U.S. Const.; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  In other words, a case must be justiciable to be properly before a federal court.  Standing presents a threshold jurisdictional question of whether a court may consider the merits of a dispute.  *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006) (*citing Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005)).  Because a federal court does not have jurisdiction over a matter absent standing, questions of justiciability are properly brought pursuant to Fed. R. Civ. P. 12(b)(1).  It is, therefore, a plaintiff's burden to satisfy three constitutional prerequisites of standing: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61.

The Complaint challenges the validity of two separate ordinances, promulgated by two different governmental entities, banning conversion therapy for minors—(1) the Ordinance, applicable only within City-limits [ECF No. 1-4]; and (2) the County's ordinance [ECF No. 1-5], applicable throughout the County, unless a municipality within the County has "adopted an ordinance in conflict." ECF No. 1-5, 6:6-8. Unlike Otto's allegation that he maintains a counseling practice in the City (Compl., ¶ 125), Hamilton makes no such claim.  Rather, she merely alleges that she practices therapy "in Palm Beach County."  Compl., ¶ 140.  In fact, Hamilton's factual allegations regarding the cause of her alleged injuries address <u>only</u> the County's ordinance and <u>not</u>

---

[7]   The relevant facts are derived from the Complaint, and for the purposes of this Motion only, are accepted as true.

the Ordinance (Compl., ¶¶ 155-161).   Accordingly, the Complaint fails to allege any causal connection between Hamilton's alleged injury and the Ordinance.  *Lujan*, 504 U.S. at 560-61 (requiring a causal connection for Article III standing).   To the extent Hamilton asserts claims against the City, she lacks standing to do so, and her claims should be dismissed.

## II.   COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK THIRD-PARTY STANDING.

Plaintiffs allege in Count II that the Ordinance violates their minor clients' right to receive information under the First Amendment.   However, generally speaking, "[i]t is a well-established tenet of standing that 'a litigant cannot rest a claim to relief on the legal rights or interests of third parties.'" *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (3d Cir. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).   Courts will only recognize third-party standing:

> provided three important criteria are satisfied: the litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.'

*Harris v. Evans*, 20 F.3d 1118, 1112 (11th Cir. 1994) (quoting *Powers*, 499 U.S. at 411).

Here, the Complaint wholly fails to allege the elements necessary to obtain third-party standing.  *See* Compl., ¶¶ 178-182; 203-211.   A substantive review of the Complaint also reveals that Plaintiffs cannot meet the *Powers* factors.   Specifically, there exists no apparent hindrance to the minor clients' ability to seek their own judicial relief.

Courts have rejected therapists' attempts to assert third-party standing when challenging conversion therapy bans for minors (as the Court should here) because, *inter alia*, the therapist could not meet the third standing factor demonstrating that the minor clients "fac[ed] obstacles that would prevent them from pursuing their own claims." *King v. Christie*, 981 F. Supp. 2d 296, 312 (D.N.J. 2013).   Because minors affected by conversion therapy regulations have, in fact, filed suit pseudonymously in both *Doe ex rel. Doe v. Governor of New* Jersey, 783 F.3d 150 (3d Cir. 2015) (affirming dismissal of First Amendment complaint by minor children regarding conversion therapy ban for failure to state a claim), and *Pickup, et al. v. Brown*, 740 F.3d 1208 (9th Cir. 2014) (affirming in part dismissal of conversion therapy ban lawsuit brought by both therapist and minor children) *abrogated on other grounds by Nat'l Inst. of Family and Life Advoc. v. Becerra*, 138 S. Ct. 2361 (2018), no "obstacles" prevent the minors from exercising their purported rights

4

directly.   Because Plaintiffs have not (and cannot) allege a hindrance to their clients' ability to protect their own interests, a requirement for third-party standing, Count II should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1).[8]

### III.   THE COMPLAINT FAILS TO COMPLY WITH THE REQUIREMENTS OF RULE 8, FED. R. CIV. P.

To survive a motion to dismiss, a complaint must contain a short and plain statement of the facts that show the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Kyle v. Chapman,* 208 F.3d 940, 944 (11th Cir.2000).   A pleading under Rule 8 should give opposing parties fair notice of the nature of the claims and the bases or grounds for it. *Jones v. Moore*, No. 07-21154-CIV, 2008 WL 384557, at *2 (S.D. Fla. Feb. 11, 2008) (citing *Eidson v. Arenas*, 155 F.R.D. 215, 220 (M.D. Fla. 1994)).   The Complaint fails to comply with Rule 8 in several respects and should, therefore, be dismissed.

### a.   Plaintiffs' Allegations Are Insufficient To State A Section 1983 Claim.

The Supreme Court has placed strict limitations on municipal liability under Section 1983. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1993).   "While Rule 8 allows a Plaintiff considerable leeway in framing its complaint, the Eleventh Circuit has tightened the application of Rule 8 with respect to § 1983 cases in an effort to identify meritless claims." *Jones*, 2008 WL 384557, at *2 (citing *GJR Investments v. Cnty. of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."). A Section 1983 plaintiff must allege with specificity the facts that make out his claim. *See Wilson v. Strong,* 156 F.3d 1131, 1134 (11th Cir. 1998).

In its "invocation of jurisdiction," the Complaint states that it "is brought pursuant to 42 U.S.C. § 1983."   Compl., ¶ 18.   Reference to this statute is conspicuously absent from the federal claims brought in Counts I, II, and III, which reference only the First Amendment.   In fact, the words "Section 1983" appear nowhere else in the Complaint.   *See Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381 (5th Cir. 1980) (declining to "assume" plaintiff intended to assert a Section 1983 claim).[9]   Are all three federal claims intended to be Section 1983 claims?   Or are these merely

---

[8]      The City also asserts that Plaintiffs fail to meet the first element of third party standing: injury in fact.  This additional shortcoming is addressed, *infra* Section V.

[9]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

direct constitutional claims seeking declaratory and injunctive relief?  If the latter, Plaintiffs are not entitled to the monetary damages they reference in the catch-all prayer for relief.  *See* Compl., ¶¶ A-H.  These are not mere trivialities, but rather critical questions—the answers to which have significant ramifications for the City's defenses.  Accordingly, the Complaint should be dismissed for failure to comply with Rule 8.

      b.   <u>The Complaint's Prayer For Relief Fails To Comply With Rule 8 And Seeks Unavailable Relief.</u>

None of the Complaint's eight, separate claims contains a separate prayer for relief.  Rather, all demands for relief are incorporated into one, conclusory paragraph containing a prayer for relief for all counts.  Compl., ¶¶ A-H.  However, Plaintiffs seek remedies (namely, damages) which are unavailable for some of the causes of action alleged in the Complaint.  As noted, *supra*, the Complaint is wholly unclear as to whether they have asserted Section 1983 claims and which, if any, causes of action are intended as such.  To the extent, however, Plaintiffs seek recovery for First Amendment violations in Counts I, II, and III, "[t] the First Amendment, standing alone, cannot be interpreted to require the payment of money for its alleged violation . . . ."  *Johnson v. United States*, 17 F. App'x 964, 966 (Fed. Cir. 2001) (dismissing plaintiffs' claims).

This same principle applies to the Florida constitutional claims in Counts IV, V, and VI.  "[N]o cause of action exists for money damages for a violation of a state constitutional right."  *Harris v. Jones*, No. 4:14cv454-RH/GRJ, 2015 WL 4668297 (N.D. Fla. Aug. 5, 2015) (citing *Depaola v. Davie*, 872 So. 2d 377, 380 (Fla. 4th DCA 2004); *Bradsheer v. Fla. Dep't of Hwy Safety and Motor Veh.*, 20 So. 3d 915, 921 (Fla. 1st DCA 2009); *Corn v. Lauderdale Lakes,* 816 F.2d 1514, 1519 (11th Cir. 1987).  Accordingly, the Complaint should be dismissed for failure to request relief which can be granted by this Court, based on the Complaint's failure to comply with Rule 8 and the "catch-all" prayer for relief.

## IV.   THE COMPLAINT DOES NOT STATE A CLAIM FOR A FIRST AMENDMENT VIOLATION IN COUNT I.[10] [11]

    a.   <u>The Ordinance Is A Regulation Of Professional Conduct, Supported By A Rational Basis.</u>

        <u>1. The Ordinance Regulates Conduct, Rather Than Speech.</u>

The United States Supreme Court recently reaffirmed the ability of governments to regulate professional conduct, even if that conduct incidentally involves speech. *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*").  "States may regulate professional conduct, even though that conduct incidentally involves speech." *Id.* at 2372 (citing *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 456 (1978)); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992).   "While drawing the line between speech and conduct can be difficult, this Court's precedents have long drawn it . . . ." *Id.* (citing *Sorell v. IME Health Inc.*, 564 U.S. 552, 567 (2011)); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *U.S. v. Stevens*, 559 U.S. 460, 468 (2010)).   A law may regulate speech, for example, "'as part of the <u>practice</u> of medicine, subject to reasonable licensing and regulation by the state.'"   *Id.* (emphasis in original) (quoting *Casey*, 505 U.S. at 884).

Unlike the California statute at issue in *NIFLA*—which improperly compelled speech that was not "<u>tied to a [medical] procedure at all</u>"—the Ordinance is expressly tied to a specific procedure (psychological conversion therapy), and does not compel any speech at all.  *NIFLA*, 138 S. Ct. at 2374 (emphasis added).   It is a specific, dangerous, and ineffective <u>mental health procedure that</u> the Ordinance bans.  Therefore, the *NIFLA* Court's focus upon, and rejection of,

---

[10]    Plaintiffs assert a free speech claim in Count IV, pursuant to Article I, Section 4 of the Florida Constitution.  In *Simmons v. State of Fla.*, 944 So.2d 317, 323 (Fla. 2006), the Florida Supreme Court acknowledged that the First Amendment of the United States Constitution is similar to Florida's Constitutional provisions regarding freedom of speech. *Warner v. City of Boca Raton*, 64 F. Supp. 2d 1272, 1295 (S.D. Fla. 1999), *aff'd* 420 F.3d 1308 (11th Cir. 2005), also recognizes that "Florida courts have generally construed their state constitutional guarantees to be coextensive with their federal counterparts." Accordingly, in support of its motion to dismiss Count IV, the City adopts and incorporates by reference the arguments raised herein as to Count I.

[11]    Count I asserts a litany of theories of First Amendment violations, both facial and as-applied, many of which are repetitive.  Plaintiffs' state law free speech claim, contained in Count IV, suffers the same infirmities. For example, Paragraph 195 alleges a violation of Plaintiffs' clients' rights, rather than Plaintiffs' own First Amendment rights and should therefore be stricken.  Compl., ¶ 195 ("The City and County Ordinance . . . unconstitutionally chill and abridge the right of Plaintiffs' clients to freely receive information . . . .").  Paragraph 196 is similarly improper.  Should the Court deny the City's motion to dismiss as to Counts I and IV, Plaintiff should at the very least be required to plead a more definite claim for the federal and state law free speech violations and eliminate the redundant and inapplicable allegations.

"professional speech" as a separate First Amendment category is not applicable to the Ordinance, which does not ban "professional speech" (or any speech for that matter).  The Ordinance bans a mental health procedure, conversion therapy for minors, expressly found to be valid, constitutional regulation of conduct in *Pickup v. Brown*, 740 F.2d 1208 (9th Cir. 2014); *King v. Christie*, 981 F.Supp.2d 296 (D.N.J. 2013), *aff'd* 767 F.3d 216 (3rd Cir. 2014), *abrogated on other grounds*, *NIFLA, supra*; and *Doe v. Christie*, 33 F.Supp.3d 518 (D.N.J. 2014), *aff'd sub nom*, *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 155 (3d Cir. 2015).  Those regulations, like the Ordinance and unlike the regulations in *NIFLA*, are constitutional - not because they regulate professional speech, but because they regulate professional conduct (which conduct may incidentally involve speech).  The Court in *NIFLA*, in rejecting "professional speech" as a category of speech, also expressly reaffirmed that regulation of professional conduct is constitutionally permissible.

For example, the decision in *Pickup* did not turn on whether the California statute governed "professional speech."  *See* 740 F.3d 1229.  Rather, the court examined a "continuum" in determining whether the challenged ban improperly regulated speech or properly regulated conduct. *Id.* at 1227.  Along the spectrum, the court discussed "professional speech," a phrase the *NIFLA* court rejected as a separate category of speech.  At the end of the continuum are regulations of professional conduct, "where we conclude that [the challenged statute] lands."  *Id.* at 1229.  When regulating professional conduct, "the state's power is great, even though such a regulation may have an incidental effect on speech."  *Id.* (citing *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White J., concurring) ("Just as offer and acceptance are communications incidental to the regulatable transaction called a contract, the professional's speech is incidental to the conduct of the profession.")).

The same was true for the SOCE regulation at issue in *King v. Christie, supra*.  There, the district court held that "psychotherapists are not entitled to special First Amendment protection merely because they use the spoken word as therapy," 981 F.Supp.2d at 319, and rejected the First Amendment challenge because the New Jersey SOCE regulation governed conduct, rather than speech:

> To be clear, the line of demarcation between conduct and speech is whether the counselor is attempting to communicate information or a particular viewpoint to the client or whether the counselor is attempting to apply methods, practices, and procedures to bring about a change in the client – the former is speech and the latter is conduct.

*Id.*; *see also Doe v. Christie*, 33 F. Supp. 3d at 525 ("[The challenged SOCE regulation] regulates mental health <u>treatment</u> – albeit in the form of talk therapy – not any particular <u>speech</u> of counselors or therapists involving certain views") (emphasis in original); *Booth v. Pasco County*, 757 F.3d 1198, 1210 (11th Cir. 2014) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.") (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

States and local governments routinely (and constitutionally) regulate professional conduct, and more specifically, medical treatments. *See Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993) ("[A] patient does not have a constitutional right to obtain a particular type of treatment or to obtain treatment from a particular provider if the government has reasonably prohibited that type of treatment or provider."); *Rutherford v. United States*, 616 F.2d 455, 457 (10th Cir. 1980) ("[T]he decision by the patient whether to have a treatment or not is a protected right, but his selection of a particular treatment, or at least a medication, is within the area of governmental interest in protecting public health.").[12]

As reconfirmed by the *NIFLA* Court, "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech." 138 S.Ct. at 2372. There can be no dispute, then, that the above authorities remain "good law" for purposes of evaluating Plaintiffs' claims herein.

---

[12]   "Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities, *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968), *cert. denied*, 394 U.S. 976 (1969), corporate proxy statements, *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970), the exchange of price and production information among competitors, *American Column & Lumber Co. v. United States,* 257 U.S. 377 (1921), and employers' threats of retaliation for the labor activities of employees, *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 618 (1969). *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 61-62, (1973). Each of these examples illustrates that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) (additional citations omitted). *See also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) ("That is why a ban on race-based hiring may require employers to remove 'White Applicants Only' signs, *Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006); why 'an ordinance against outdoor fire' might forbid 'burning a flag,' *R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992); and why antitrust laws can prohibit 'agreements in restraint of trade,' *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949))."

2.  <u>Since the Ordinance Regulates Professional Conduct, the Rational Basis Test Applies, and the Ordinance Should Be Deemed Valid.</u>

The constitutionality of regulations of professional <u>conduct</u> are analyzed under the lens of the rational basis test, and the Court should apply the rational basis test in reviewing the Complaint's First Amendment claims. *Lange-Kessler v. Dep't of Educ. of the State of New York*, 109 F.2d 137 (2d Cir. 1997) (finding that regulation of the medical profession is afforded rational basis review); *King*, 981 F.Supp.2d at 312 ("Ultimately, if the statute does not implicate or burden constitutionally protected speech or expression in any manner, I apply rational basis review").

"Rational basis scrutiny is a highly deferential standard that proscribes only the very outer limits of a legislature's power." *Williams v. Pryor,* 240 F.3d 944, 948 (11th Cir. 2001) (citing, *inter alia, Romer v. Evans,* 517 U.S. 620, 632 (1996)). Under this standard, a statute comes to the court bearing "a strong presumption of validity." *F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314 (1993). "The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1306 (11th Cir. 2009). A state is under no obligation to produce evidence supporting the rationality of the legislation and, indeed, the legislature need not even have actually been motivated by the rational reason presented to the court when it enacted the challenged law. *Beach Commc'ns,* 508 U.S. at 314–15; *Leib,* 558 F.3d at 1306. Rather, the challenger bears "the burden to negative every conceivable basis which might support [the law]." *Beach Commc'ns,* 508 U.S. at 315; *Williams,* 240 F.3d at 948. "Only in an exceptional circumstance will a statute not be rationally related to a legitimate government interest and be found unconstitutional under rational basis scrutiny." *Williams,* 240 F.3d at 948.

Here, the City clearly has the power to regulate the particular conduct in question. *See* Section VIII (discussing preemption). Neither the Florida Constitution nor Florida statutes preempt the City's authority to legislate mental health treatments and the conduct of mental health professionals. *See Hillsborough Cty. v. Automated Med. Labs, Inc.*, 471 U.S. 707, 719 (1985) ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."); *Kelley v. Johnson*, 425 U.S. 238, 247 (1976) ("The promotion of safety of persons . . . is unquestionably at the core of the State's police power," which extends to "state and local governments."). The City clearly has a legitimate—in fact, compelling—interest in the health and safety of its minor residents. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) ("We

10

recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.").

The Ordinance is rationally related to this government interest by banning conversion therapy for minors—a procedure which scores of medical and mental health organizations have found to be harmful—within the City.[13]  *See* Ordinance (citing numerous medical and mental health reports).[14]  Like the statute at issue in *Pickup*, the Ordinance "bans a form of treatment for minors; it does nothing to prevent licensed therapists from discussing the pros and cons of SOCE with their patients.  [The law] merely prohibits licensed mental health providers from engaging in SOCE with minors." *Pickup*, 740 F.3d at 1229.[15]  Accordingly, the Ordinance meets the rational basis test as rationally related regulation of a mental health procedure for the health and safety of minors, and Plaintiffs' First Amendment cause of action fails to state a claim.

> b. Even If the Ordinance Regulates Speech, the Ordinance Withstands Heightened Scrutiny.

Although routinely challenged, no court has ever found a SOCE regulation to be unconstitutional.  As discussed, *supra*, most courts that have considered SOCE regulations have found the laws to regulate conduct, rather than speech, and have upheld the regulations under a rational basis analysis.  The Third Circuit in *King*, however, held that a SOCE regulation did restrict speech, and subjected the regulation to intermediate scrutiny.  *King*, 767 F.3d at 235-37.  Under intermediate scrutiny, a regulation must be upheld if it "directly advances" a "substantial government interest," and is "not more extensive than necessary to serve that interest." *Central*

---

[13]    In fact, intransient nature of homosexuality has even been judicially recognized by the Supreme Court in *Obergefell v. Hodges*, 135 S. Ct. 2584, 2596 (2015) (noting that "in more recent years [] psychiatrists and others recognize[] that sexual orientation is both a normal expression of human sexuality and immutable") (emphasis added).

[14]    The Ordinance, moreover, does not preclude Plaintiffs or any other mental health professional from voicing their sincerely held religious beliefs or candidly expressing their disdain for homosexuality.  What it does preclude, however, is professional counseling with the goal of changing a minor's sexual orientation or gender identity.  Ordinance, 6:10-19.

[15]    *See also Casey*, 505 U.S. at 884 ("All that is left of petitioners' argument is an asserted First Amendment right of a physician not to provide information about the risks of abortion, and childbirth, in a manner mandated by the State. To be sure, the physician's First Amendment rights not to speak are implicated [], but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State []. We see no constitutional infirmity in the requirement that the physician provide the information mandated by the State here" (internal citations omitted).

*Hudson Gas & Elec. Corp. v. Public Serv. Comm. of New York*, 447 U.S. 557 (1980); *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 572 (2011).  The Eleventh Circuit applies intermediate scrutiny to regulations deemed content-based restrictions of commercial and other speech afforded lesser protections.  *See, e.g., Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1240 (11th Cir. 2017); *Wollschlaeger v. Governor, Florida*, 848 F.3d 1293 (11th Cir. 2017); *Dana's Railroad Supply v. Attorney General of State of Florida*, 807 F.3d 1235, 1246 (11th Cir. 2015).

The *King* court determined that the SOCE regulation withstood intermediate-level scrutiny because "protecting … citizens from harmful professional practices is unquestionable substantial" (*King*, 767 F.3d at 237); because the governmental interest was "even stronger because [the regulation] seeks to protect minor clients – a population that is especially vulnerable to such practices" (*Id.* at 237-38); and because the regulation "'directly advances' [the government's] stated interest in protecting minor citizens from harmful professional practices." *Id.* at 239. And while there has yet to be a SOCE decision in this Circuit, Eleventh Circuit jurisprudence makes clear that the Ordinance's regulation of mental health procedures passes muster even if analyzed under intermediate scrutiny.  For instance, in *Wollschlaeger*, the court analyzed a Florida statute that, *inter alia*, prohibited medical professionals from asking their patients about ownership of a firearm unless the professional could articulate specific safety concerns.  *Wollschlaeger*, 848 F.3d at 1303.  In so doing, the court underwent intermediate-level scrutiny to determine if the statute "directly advanced a substantial governmental interest and [if the statute was] drawn to achieve that interest." *Id.* at 1312.  The State of Florida defended the statute as a "regulat[ion of] the medical profession," and the *Wollschlaeger* court noted that the government "does have a substantial interest in regulating professions like medicine.  *Wollschlaeger*, 848 F.3d at 1316. However, the statute was held to be invalid because it lacked a legislative basis in fact:

> There is no claim, much less any evidence, that routine questions to patients about the ownership of firearms are medically inappropriate, ethically problematic, or practically ineffective.  Nor is there any contention (or, again, any evidence) that blanket questioning on the topic of firearm ownership is leading to bad, unsound, or dangerous medical advice.

*Id.* at 1316.

Under similar analysis, the validity of the Ordinance should be upheld. Here, there is overwhelming evidence[16] that SOCE is, in fact, medically inappropriate, and that it is a dangerous medical procedure. *See supra*, pp. 2-3. Moreover, as opposed to the statute at issue in *Wollschlaeger*, the Ordinance does not restrict Plaintiffs from "expressing their views" on the subject, and expressly allows them to "recommend SOCE," and even "refer[] minors to unlicensed councilors." The Ordinance is therefore valid. And the Complaint should be dismissed. *See King, supra.*

  c.  <u>The Ordinance Is Not Unconstitutionally Vague.</u>[17]

A statute must "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 743 (2000). The Complaint contends that the Ordinance is vague and "leave[s] Plaintiffs guessing at what practices are permitted or prohibited." Compl., ¶ 97; ¶ 198. However, the Ordinance clearly defines "conversion therapy," which is then distinguished from other types of therapy that remain permitted. Ordinance, 6:10-19.[18] Where a regulation prohibits specific conduct with respect to a profession or "group of persons having specialized knowledge, and the challenged phraseology is indigenous to the idiom of that class, the standard [for vagueness] is lowered . . . ." *U.S. v. Weitzenhoff*, 35 F.3d 1275, 1289 (9th Cir. 1993) (internal quotations omitted). "Conversion therapy" and "SOCE" are terms of art within the professional counseling community and describe a distinct practice in which Plaintiffs claim to specialize. Compl., ¶¶ 126; 142; *see also Pickup v.*

---

[16]  While the Complaint purports to challenge the scientific validity of the various SOCE studies upon which the Ordinance is based, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived as true by the governmental decisionmaker." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1281 (11ᵗʰ Cir. 2014).

[17]  In addition to facial challenges, Plaintiffs purport to bring "as applied" challenges as well. *See* Complaint, ¶¶ 185-88. Yet, nowhere in the Complaint do they allege that the Ordinance has, in fact, been applied to them.

[18]  "Conversion therapy" or "reparative therapy" means, interchangeably, any counseling, practice or treatment performed <u>with the goal of changing an individual's sexual orientation or gender identity</u>, including, but not limited to efforts to change behaviors, gender identity or gender expression, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same gender or sex. Conversion therapy does <u>not</u> include counseling that provides support and assistance to a person undergoing gender transition or counseling that provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices, <u>as long as such counseling does not seek to change sexual orientation or gender identity</u>. Ordinance, 6:10-19 (emphasis added).

*Brown*, 42 F. Supp. 3d 1347, 1363-64 (E.D. Cal. 2012) (citing *Weitzenhoff* and finding a conversion therapy ban for minors not vague).

Plaintiffs, individuals with specialized knowledge of terms of art within their profession, clearly understand what the Ordinance prohibits, as they admit in their own allegations.  For example, Otto alleges that he provides his clients with an informed consent form which 'explains the controversial nature of SOCE counseling, including the fact that some therapists do not believe sexual orientation can or should be changed, and informs the client of the potential benefits and risks associated with SOCE counseling."  Compl., ¶ 128.  "Even if, 'at the margins,' there is some conjectural uncertainty as to what the statute proscribes, such uncertainty is insufficient to void the statute for vagueness because 'it is clear what the statute proscribes in the vast majority of its intended applications,' namely therapy intended to alter a patient's sexual orientation."  *Pickup v. Brown*, 42 F. Supp. 3d 1347, 1366 (E.D. Cal. 2012) (finding the challenged SOCE ban was not void for vagueness) (quoting *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1155 (9th Cir. 2001)).

## V.    EVEN IF PLAINTIFFS HAD STANDING TO ASSERT THEIR CLIENTS' CLAIMS, COUNT II FAILS TO STATE A CAUSE OF ACTION.

Notwithstanding the standing arguments asserted, *supra* Section III, even if Plaintiffs had standing to assert their clients' First Amendment claims, they have not stated a cause for action in Count II.  Although the First Amendment protects both the speaker and the recipient of information, the right is reciprocal.  *See Va. State Bd. of Pharm v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976); *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) ("[T]he right to receive ideas follows ineluctably from the sender's First Amendment right to send them.").  Therefore, because the Ordinance does not violate Plaintiffs' First Amendment right to speak, *see supra* Section IV, it does not violate their clients' right to receive information.  *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 155 (3d Cir. 2015) (dismissing the clients' First Amendment right to receive information claim).

## VI.    THE COMPLAINT DOES NOT STATE A CLAIM FOR VIOLATION OF FREEDOM OF RELIGION IN COUNT III AND V.[19]

Plaintiffs assert, in Count V, that City's Ordinance violates their religious rights under the Free Exercise Clause of the United States Constitution in Count III and Article 1, Section 3 of the Florida Constitution.  Florida courts apply the same analysis to Article 1, Section 3 claims as their federal counterpart in determining a law's constitutionality.  *Toca v. State*, 834 So. 2d 204, 207 (Fla. 2d DCA 2002); *see also* Section IV n. 10, *supra*.

Where a law is neutral and generally applicable, it need only satisfy a rational review under the First Amendment's Free Exercise Clause.  *Keeton v. Anderson-Wiely*, 664 F.3d, 865, 879 (11th Cir. 2011).  "The neutrality inquiry asks whether 'the object of a law is to infringe upon or restrict practices because of their religious motivation.'"  *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 533 (1993)).  "The general applicability prong asks whether the government has 'in a selective manner impose[d] burdens only on conduct motivated by religious belief.'"  *Id.* (quoting *Hialeah*, 508 U.S. at 543).

The Ordinance prohibits conversion therapy because it can cause significant psychological harm.  Ordinance, 6:26-7:3.  However, it contains a specific exemption for religious counseling.  *Id.*  The object of the law, therefore, is <u>not</u> to "infringe upon or restrict practices" based on religion, but "to protect the physical and psychological well-being of minors."  *Id.* 6:3-4; *see Keeton*, 664 F.3d at 880 (finding the curriculum requirements neutral because it was adopted to comply with a professional code of ethics).  Additionally, the Ordinance applies to <u>all</u> mental health professionals licensed by the state.   Ordinance, 6:21-26; *see Keeton*, 664 F.3d at 880 (noting the curricular requirement was generally applicable to all students in the program).   Unlike the religious counselors exempt from the Ordinance, the individuals subject to the Ordinance are only those who provide mental health therapy, pursuant to a professional license, not religious guidance or religious counsel.  *Id.*; *Keeton*, 664 F.3d at 880 ("In seeking to evade the curricular requirement that she not impose her moral values on clients, [plaintiff] is looking for preferential, not equal, treatment.").  The Ordinance is, therefore, neutral, as it expressly exempts religious counseling,

---

[19]     As with Counts I and IV, to the extent the Court denies the City's motion to dismiss this claim, Plaintiffs should be required to plead a more definite statement in Counts III and V.  Plaintiffs again make several repetitious claims under various theories of federal and state constitutional law, including violations of their clients' religious rights, which they lack standing to plead.

and generally applicable to all mental health professionals, and Plaintiffs have not stated a claim in Counts III or V under federal or state law.

VII. **PLAINTIFFS' *ULTRA VIRES* CLAIM (COUNT VI) SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE ORDINANCE IS NOT PREEMPTED BY FLORIDA LAW.[20]**

Plaintiffs claim in Count VI that the City's enactment of the Ordinance was *ultra vires* and in violation of Article VIII, § 2(b)[21], of the Florida Constitution[22] and § 166.021, Florida Statutes.[23] Florida is a home rule state, and the Florida Constitution explicitly authorizes municipalities to "exercise any power for municipal purposes except as otherwise provided by Florida law." Fla. Const. Art. 8 § 2(b). Count VI misunderstands the doctrine of preemption, and the Ordinance is neither expressly or impliedly preempted under any of Plaintiffs' cited authorities (or otherwise).

a. The Ordinance Is Not Expressly Preempted.

One type of constitutional preemption acknowledged in Florida, express preemption, requires a specific legislative statement that cannot be implied or inferred and must be accomplished by clear language stating an intended preemption. *Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 886 (Fla. 2010); *City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1243 (Fla. 2006). "[T]he legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state legislature may act" except "[a]ny subject expressly prohibit by the constitution or "[a]ny subject expressly preempted to state or county government by the constitution or by general law." § 166.021(3)(b)-(c), Fla. Stat.

Plaintiffs fail to cite any legislative action expressly preempting municipalities from enacting ordinances prohibiting conversion therapy for minors. To the extent Plaintiffs cite § 491, Title XXXII, Florida Statutes, or Section 64B4-5.001, Florida Administrative Code, as a source of "express" preemption, neither law expressly preempts regulation of mental health professionals by

---

[20]     Plaintiffs use the term "*ultra vires*" apparently as a means of stating that the regulation of professional conduct is "preempted" by Florida law and, thus, beyond the City's power to legislate.

[21]     Article VIII, § 2(b) authorizes municipal home rule, allowing municipalities to "exercise any power for municipal purposes except as otherwise provided by law." Art. VIII, § 2(b), Fla. Const.

[22]     Count VI also references Article VIII, § 1(g), Fla. Const., which governs counties operating under county charters and is, thus, inapplicable to the claim against the City.

[23]     Section 166.021, Fla. Stat., recognizes that "the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except . . . [a]ny subject expressly prohibited by the constitution [and] . . . [a]ny subject expressly preempted to state or county government by the constitution or by general law." § 166.021, Fla. Stat.

local government.[24]  *See* Compl., ¶ 275; §§ 491.002-16, Fla. Stat.; § 64B4-5.001, Fla. Admin. Code.[25]  Accordingly, Florida law does not expressly preempt the Ordinance.[26]

        b.  The Ordinance Is Not Impliedly Preempted.

Implied preemption, on the other hand, occurs when "the legislative scheme is so pervasive as to virtually evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *D'Agastino v. City of Miami*, 220 So. 3d 410, 421 (Fla. 2017); *Browning*, 28 So. 3d at 886.  In determining if implied preemption applies, the court must look 'to the provisions of the whole law, and to its object and policy.'" *Browning*, 28 So. 3d at 886 (quoting *State v. Harden*, 938 So. 2d 486, 489 (Fla. 2006)). Findings of implied preemption are generally "disfavored," and courts "must be careful and mindful in attempting to impute intent to the Legislature to preclude a local elected governing body from exercising its home rule powers." *D'Agastino*, 220 So. 3d at 421, 423; *see also Exile v. Miami-Dade Cty.*, 35 So. 3d 118, 119 (Fla. 3d DCA 2010) (noting the "severely restricted and strongly disfavored doctrine of implied preemption"); *Randolph v. Family Network on Disabilities of Fla., Inc.*, No. 4:11-cv-555-RS-WCS, 2012 WL 71719 (M.D. Fla. Jan. 10, 2012) (upholding ordinance prohibiting discrimination based on sexual orientation and finding no implied preemption). *Phantom of Clearwater, Inc. v. Pinellas Cty.*, 894 So. 2d 1011, 1019 ("Florida courts are reluctant to conclude that a municipality is preempted from exercising its local powers in the absence of an express exemption, particularly in light of the ease with which the Florida Legislature can expressly preempt a local authority if intended.") (citations omitted).

Even assuming, *arguendo*, Plaintiffs' claim is based on implied preemption (which they fail to specify), under this disfavored doctrine, a plain reading of Chapter 491 clearly shows that the City's Ordinance is not impliedly preempted by said legislation.  The intent of Chapter 491 is

---

[24]    The Complaint incorrectly refers to "Fla. Admin. Code. Ann r. 64B-5001," a rule that does not exist.  Compl., ¶¶ 275-278.  Rather, Section 64B4-5.001 provides the disciplinary guidelines for professionals licensed pursuant to § 491.002, Fla. Stat.

[25]    Section 491 merely regulates the licensing scheme for mental health professionals, "establishing minimum qualifications for entering into and remaining in" this field, and Section 64B4-5.001 of Florida's Administrative Code codifies the disciplinary scheme for violations of Section 491.  §§ 491.002-16, Fla. Stat.; § 64B4-5.001, Fla. Admin. Code.

[26]    Moreover, Plaintiffs' passing reference to proposed legislation in the Florida Legislature is merely a red herring.  Compl., ¶ 278.  Whether the Legislature considered legislation relating to conversion therapy in the past is of no consequence here, nor is the Florida Legislature the sole regulator of mental health providers in Florida, based on the plain language Chapter 491, Title XXXII, Fla. Stat., as Plaintiffs incorrectly claim in Paragraph 278.  Compl., ¶ 278.

merely to "establish[] minimum qualification for entering into and remaining in the respective [mental health] professions"—clearly a licensing regulation detailing the requirements to obtain certain professional titles and specializations. § 491.002, Fla. Stat. The regulation of the types of therapy that a professional, licensed pursuant to Chapter 491, may offer to minors is not referenced, merely the qualifications to provide such therapies. Thus, municipal regulation of conversion therapy for minors is clearly not an implied area of preemption. To wit, the Supreme Court has recognized that "the regulation of health and safety matters is primarily, and historically, a matter of local concern." *Hillsborough Cty. v. Automated Med Labs Inc.*, 471 U.S. 707, 716 (1985) (emphasis in original); *see also Craig v. Boren*, 97 S. Ct. 451, 458 (1976) ("[T]he protection of public health and safety represents an important function of state and local governments.").

Similarly, Section 456.003, Fla. Stat., which outlines the legislative intent for Florida's professional regulation statutes, provides that the state may regulate professions for the preservation of health, safety, and welfare of the public when "[t]he public is not effectively protected by other means [such as] local ordinances." § 456.003(2)(b), Fla. Stat. Both the precedential case law and Florida's statutes shows that municipalities can and should regulate professions when appropriate, as the City has done in the Ordinance. Because neither the Florida Constitution nor general law addresses the mental health procedure of conversion therapy, there is no basis Plaintiffs' claim that Florida law impliedly preempts the Ordinance.

## VIII.   COUNT VII, THE PATIENT'S BILL OF RIGHTS CLAIM, FAILS TO STATE A CLAIM FOR RELIEF.

In Count VII, the Complaint alleges that the Ordinance violates the Florida Patient's Bill of Rights and Responsibilities ("FPBRR"), § 381.026, Fla. Stat. However, the FPBRR does not provide a private right of action against the City. § 381.026(3), Fla. Stat. ("This section shall not be used for any purpose in any civil or administrative action and neither expands nor limits any rights or remedies provided under any other law.") (emphasis added); *Langbehn v. Public Health Trust of Miami-Dade Cty.*, 661 F. Supp. 2d 1326, 1342-43 (S.D. Fla. 2009) (stating plaintiffs' reliance on the FPBRR in support of their negligence per se claim was misplaced). "Given [the language in Section 381.026(3)], it is apparent [] that the statute is not meant to protect a particular class of people from a particular injury or risk of injury." *Langbehn*, 611 F. Supp. 2d at 1343. Therefore, Plaintiffs cannot state a claim under the FPBRR because it does not provide them with a private right of action.

Additionally, even if a cause of action under the FPBRR could be found (though it cannot), Plaintiffs' claim fails because they are not "heath care providers" as defined by Section 381.026(2)(c), Fla. Stat.  Contrary to the allegation that Plaintiffs are "health care practitioners" under the FPBRR (Compl.,¶ 284), the statute defines this terms as "a physician licensed under chapter 458, an osteopathic physician licensed under 459, or a podiatric physician licensed under chapter 458."  § 381.026(2)(c), Fla. Stat.  Section 456.41, Fla. Stat. (which sets forth the requirements to provide "complementary or alternative health care treatments"), upon which the Plaintiffs rely, is neither referenced nor otherwise incorporated into the FPBRR.  *See Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CIV, 2010 WL 11553188, at *2 (S. D. Fla. March 18, 2010) (stating that because the prison health service is not a "health care provider" as defined by the FPBRR, the plaintiff had no basis to compel disclosure of certain records pursuant to said statute).  Because Plaintiffs are not regulated or otherwise subject to the FPBRR, they cannot state a claim upon which relief may be granted in Count VII.

## IX.   COUNT VIII, THE RELIGIOUS FREEDOM RESTORATION ACT CLAIM, SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Count VIII is an alleged violation of Florida's Religious Freedom Restoration Act ("RFRA") Fla. Stat., § 761.01, *et seq.*  Under RFRA, courts apply a strict scrutiny standard, as set forth in the statute, requiring an initial showing that the challenged regulation places a "substantial burden" on one's free exercise of religion. §761.03, Fla. Stat.; *Warner v. City of Boca Raton*, 887 So. 2d 1023, 1033 (Fla. 2004) (stating a "substantial burden" is one that "either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires).  The Complaint alleges in Count VIII that the Ordinance violates Plaintiffs' free exercise of religion by preventing their ability "to provide spiritual counsel," based on their religious beliefs that homosexuality is wrong,[27] despite Plaintiffs' conflicting allegation that they are providing mental health counseling through conversion therapy.  Compl., ¶¶ 65-66; 71-73; 252; 303.

---

[27]    These allegations imply that Plaintiffs seek to tell their clients that same-sex attractions and relationships are "wrong," solely based on their religious beliefs, but in the context of mental health therapy. This undermines their own statement that the Ordinance "presumes that all such counseling from Plaintiffs is premised on the notion that homosexuality is an illness, defect, or shortcoming" because, based on Plaintiffs' own religious beliefs, they in fact do view homosexuality in such a manner.  Compl., ¶ 78.

To the extent Plaintiffs seek to provide "spiritual counsel" and exercise their "sincerely held religious beliefs" regarding homosexuality, the plain language of the Ordinance clearly permits them to do so and, thus, does not impose a substantial burden (or any burden) on their exercise of religion.[28]  In fact, the Ordinance has a clear religious exemption:

> The term "provider" does not include members of the clergy or other religious leaders who are acting in their roles as clergy or pastoral counselors, or are providing religious counseling or instruction to congregants, provided they do not hold themselves out as providing conversion therapy pursuant to any of the aforementioned Florida Statutes licenses.

Ordinance, 6:26; 7:1-3, DE 1-4.  Plaintiffs do <u>not</u> allege, moreover, that their religion requires them to provide professional mental health treatment so as to change a child's sexual orientation. *See Freeman v. Dep't of Hwy Safety & Motor Veh.*, 924 So. 2d 48, 56-57 (Fla. 5th DCA 2006) (finding that the DMV's refusal to provide Muslim woman with an ID unless she removed her veil was not a substantial burden of religion because Islam permits women's veils to be removed for government photos).  Therefore, Plaintiffs fail to allege facts that meet the threshold requirement in Count VIII of showing that the Ordinance places a "substantial burden" on free exercise of religion, under RFRA because the plain language of the Ordinance specifically exempts religious counseling.

WHEREFORE, because Plaintiffs lack standing and because their causes of action fail to state a claim, the City respectfully requests that the Court dismiss the Complaint and any further relief the Court deems just and proper.

---

[28]  "Hate speech is frequently cloaked in the garb of religion." *Good News/Good Sports Club v. School Dist. of City of Ladue*, 28 F. 2d 1501, 1516 n.5 (8th Cir. 1994) (Bright, J., dissenting) (citing *Wiggins v. Sargent*, 753 F.2d 663 (8th Cir. 1985) (holding prisoners' religious groups which 'advocate[d] for racial purity and believe[d] that race mixing is a sin" were arguably "religious" entities for first amendment purposes); *Brown v. Dade Christian Schs.*, 556 F.2d 310 (5th Cir. 1977) (en banc) (Goldberg, J., concurring) (finding substantial evidence that private school based its whites-only policy on Christian beliefs of school administrators); *Invisible Empire, KKK v. Mayor of Thurmont*, 700 F. Supp. 281 (D. Md. 1988) (noting KKK's position that permitting blacks to march with KKK would be hypocrisy because the KKK supports segregation on religious grounds.)).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Electronic Mail on August 1, 2018 on all counsel of record on the attached Service List.

Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for Defendant City of Boca Raton*
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, FL  33301
Telephone:  (954) 763-4242
Telecopier:  (954) 764-7770

By: */s/ Daniel L. Abbott*
    JAMIE A. COLE
    Florida Bar No. 767573
    Primary email: jcole@wsh-law.com
    Secondary email: msarraff@wsh-law.com
    DANIEL L. ABBOTT
    Florida Bar No. 767115
    Primary email: dabbott@wsh-law.com
    Secondary email: pgrotto@wsh-law.com
    ANNE R. FLANIGAN
    Florida Bar No. 113889
    Primary email: aflanigan@wsh-law.com
    Secondary email: pgrotto@wsh-law.com

## SERVICE LIST

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 18-CIV-80771-RLR**

**Mathew Duane Staver, Esq.**
Liberty Counsel
1053 Maitland Center Commons, 2nd Floor
Maitland, FL 32751-7214
Telephone:  800-671-1776
Facsimile:  407-875-0770
Email:   mat@lc.org

*Attorneys for Plaintiffs*

**Roger K. Gannam, Esq.**
Liberty Counsel
PO Box 540774
Jacksonville, FL 32854
Telephone:  800-671-1776
Facsimile: 407-875-0770
Email:   rgannam@lc.org

*Attorneys for Plaintiffs*

**Horatio G. Mihet, Esq.**
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854-0774
Telephone:  800-671-1776
Facsimile: 407-875-0770
Email:   hmihet@lc.org

*Attorneys for Plaintiffs*

**Jamie A. Cole, Esq.**
**Daniel L. Abbott, Esq.**
**Anne R. Flanigan, Esq.**
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, FL  33301
Telephone:  954-763-4242
Facsimile:  954-764-7770
Emails:   dabbott@wsh-law.com (primary)
                pgrotto@wsh-law.com (secondary)
Emails:   aflanigan@wsh-law.com (primary)
                pgrotto@wsh-law.com. (secondary)

*Attorneys for the Defendant, City of Boca Raton*

**Rachel Marie Fahey, Esq.**
Palm Beach County Attorney's Office
300 N. Dixie Highway, Ste. 359
West Palm Beach, FL 33401
Telephone:  561-355-6337
Email: rFahey@pbcgov.org

**Kim Ngoc Phan, Esq.**
Palm Beach County Attorney's Office
300 N. Dixie Highway, Ste. 359
West Palm Beach, FL 33401
Telephone: 561-355-2529
Email: kphan@pbcgov.org

*Attorneys for County of Palm Beach Florida*