IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ROBERT W. OTTO, PH.D. LMFT, | ) | |
| individually and on behalf of his patients, | ) | |
| JULIE H. HAMILTON, PH.D., LMFT, | ) | |
| individually and on behalf of her patients, | ) | Civil Action No.:<u>9:18-cv-80771-RLR</u> |
| | ) | |
| Plaintiffs, | ) | **INJUNCTIVE RELIEF SOUGHT** |
| v. | ) | |
| | ) | |
| CITY OF BOCA RATON, FLORIDA, | ) | |
| and COUNTY OF PALM BEACH, | ) | |
| FLORIDA, | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' CONSOLIDATED RESPONSE
<u>IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTION ............................................................................................................1

LEGAL ARGUMENT .....................................................................................................2

I.     THE "EXCEEDINGLY LOW" THRESHOLD OF SUFFICIENCY ON "HIGHLY DISFAVORED AND RARELY GRANTED" MOTIONS TO DISMISS. .......................2

II.    PLAINTIFFS' WELL-PLED ALLEGATIONS DEMONSTRATE A VIOLATION OF SECTION 1983................................................................................................3

    A.    The City Attacks A Strawman Complaint Plaintiffs Did Not File. ........................3

    B.    Plaintiffs' Actual Complaint Alleges A Claim Under Section 1983. .....................4

III.    PLAINTIFFS' WELL-PLED ALLEGATIONS ESTABLISH THEIR STANDING TO CHALLENGE THE CITY ORDINANCE AND COUNTY ORDINANCE. ....................5

    A.    Hamilton's Well-Pled Allegations Demonstrate Standing To Challenge The City Ordinance, And Otto's Well-Pled Allegations Demonstrate Standing To Challenge The County Ordinance...........................................................................5

        1.    Hamilton has standing to, and does, challenge the City Ordinance............6

        2.    Otto has standing to, and does, challenge the County Ordinance...............7

    B.    The City's Concession That Otto Has Standing To Challenge The City Ordinance, And The County's Concession That Hamilton Has Standing To Challenge The County Ordinance, Are Fatal To Their Contentions. .....................8

    C.    Plaintiffs Have Standing To Challenge The Ordinances On Behalf Of Their Minor Clients. ......................................................................................................9

        1.    Plaintiffs have alleged concrete injury.....................................................9

        2.    Plaintiffs and their clients have the requisite close relationship. ..............10

        3.    Plaintiffs' clients face significant obstacles to litigation. .........................11

IV.    DEFENDANTS' ATTEMPTS TO RESOLVE FACTUAL DISPUTES AT THE MOTION TO DISMISS STAGE IS IMPROPER AS A MATTER OF BLACK LETTER LAW......................................................................................................12

    A.    Defendants' Self-Serving Contentions Regarding Defendants' Supposedly Innocent Intent Behind The Ordinances Are Factual Determinations Improper For Resolution At The Motion To Dismiss Stage. ................................................12

    B.    Defendants' Contentions Regarding Speech Vs. Conduct Are Factual Determinations Improper For Resolution On A Motion To Dismiss. ..................13

    C.      Defendants' Evidentiary Arguments And Submissions Are Clearly Improper At The Motion To Dismiss Stage. ............................................................................14

    D.      Defendants' Preemption Arguments Are Factual Issues Improper For Resolution At The Motion To Dismiss Stage.. ......................................................15

V.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF THE FIRST AMENDMENT.....................................................................................................................17

    A.      Plaintiffs' Well-Pled Allegations Demonstrate A Violation Of Their Right To Free Speech. ..........................................................................................................17

          1.      Plaintiffs' well-pled allegations demonstrate that their practice is pure speech, and neither Defendants nor this Court can resurrect the "dubious constitutional enterprise" of classifying Plaintiffs' speech as conduct expressly interred by the Eleventh Circuit. ...............................................17

          2.      Plaintiffs' well-pled allegations demonstrate that their speech is chilled and restricted by Defendants' ordinances. ....................................................18

    B.      Plaintiffs' Well-Pled Allegations Demonstrate A Violation Of Their Right To Free Exercise. .......................................................................................................20

          1.      Plaintiffs' allegations demonstrate their sincerely held religious beliefs. ...........................................................................................................21

          2.      Plaintiffs' allegations demonstrate that the Ordinances violated their sincerely held religious beliefs...............................................................21

          3.      Plaintiffs' allegations demonstrate the Ordinances' hostility towards religious belief. .......................................................................................22

          4.      Plaintiffs' allegations demonstrate that the Ordinances contain individualized exemptions and religious gerrymanders. ...........................22

VI.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF THE FLORIDA RELIGIOUS FREEDOM RESTORATION ACT. ..........................................23

VII.   PLAINTIFFS' HAVE SUFFICIENTLY ALLEGED THAT THE ORDINANCES ARE *ULTRA VIRES*.................................................................................................................24

VIII.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF THE PATIENTS' BILL OF RIGHTS AND RESPONSIBILITIES. ..........................................25

IX.    IF THIS COURT FINDS PLAINTIFFS' ALLEGATIONS LACKING IN ANY RESPECT, IT MUST GRANT THEM LEAVE TO AMEND. ........................................27

CONCLUSION...................................................................................................................................28

CERTIFICATE OF SERVICE .........................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006) ...................................................10,11

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016) ......................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................2,3

*Bowen v. Roy*, 476 U.S. 693 (1986) ................................................................................................21

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ....................2,3

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)........................................................................28

*Carey v. Population Serv., Int'l*, 431 U.S. 678 (2010) ....................................................................8

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472 (11th Cir. 1991)....................12,15

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)..............20,21,22

*Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779 (Fla. 2016)........................................................16

*Criss v. Point & Pay, LLC*, 274 F. Supp. 3d 1289 (M.D. Fla. 2017) ...........................................15

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) .............................................................................15

*Devengoechea v. Bolivarian Rep. of Venezuela*, 889 F.3d 1213 (11th Cir. 2018) .......................14

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ........................9,10

*Doe v. Bolton*, 410 U.S. 179 (1973)..................................................................................................9

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981) .................................................28

*Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990) ......................................20

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941) .............................26,27

*Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288 (11th Cir. 2003) ....18

*Gillette v. United States*, 401 U.S. 437 (1971)...............................................................................21

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228 (11th Cir. 2000).................................................14

*Guthartz v. Park Centre West Corp.*, No. 07-80334-Civ,
   2009 WL 278960 (S.D Fla. Feb. 5, 2009) .............................................................................12

*Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381 (5th Cir. 1980)........................................3,4

*Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352 (S.D. Fla. 2016).................................................13

iv

*Hernandez v. Am. Fed'n of Police, Inc.*, No. 13-24002-Civ-WILLIAMS,
  2014 WL 12600144 (S.D. Fla. Mar. 7 2014) ................................................................ 14,15

*Holmes v. Crosby*, 418 F.3d 1256 (11th Cir. 2005) ............................................................ 5

*In re Florida Cement & Concrete Antitrust Litig.*, No. 09-2387-CIV-ALTONAGA/Brown,
  2011 WL 13174536 (S.D. Fla. Feb. 24, 2011) ............................................................... 8

*In re Presta*, No. 3:09-bk-1222-JAF, 2014 WL 2448444 (M.D. Fla. May 28, 2014) ................ 15

*Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465 (5th Cir. 1968) ......... 3

*Jaffree v. Redmond*, 518 U.S. 1 (1996) .......................................................................... 11

*Jouria v. CE Res., Inc.*, No. 0:15-cv-61165-WPD,
  2017 WL 3868422 (S.D. Fla. July 17, 2017) ................................................................ 15

*Katsaris v. United States*, 684 F.2d 758 (11th Cir. 1982) ................................................... 12

*Kevin Harrington Enter., Inc. v. Bearwolf*, No. 98-1039-Civ-UNGARO-BENAGES,
  1998 WL 798164 (S.D. Fla. Aug. 5, 1998) ............................................................... 15,16

*King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014) ............................................. 18

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993) ............................................................................................... 3

*Long v. Satz*, 181 F.3d 1275 (11th Cir. 1999) ............................................................. 27,28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................ 6

*Melton v. Abston*, 841 F.3d 1207 (11th Cir. 2016) ........................................................... 5

*Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991) ........... 16

*Nasir v. Morgan*, 350 F.3d 366 (3d Cir. 2003) ............................................................... 10

*National Labor Relations Board v. Datapoint Corp.*,
  42 F.2d 123 (5th Cir. Unit A Apr. 1981) ................................................................... 18

*Parham v. J.R.*, 442 U.S. 584 (1979) ............................................................................ 11

*Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004) ................................. 8

*Penn. Psychiatric Soc'y v. Green Springs Health Serv., Inc.*,
  280 F.3d 278 (3d Cir. 2002) ................................................................................. 10,11

*Planned Parenthood Ass'n of Altanta Area, Inc. v. Miller*,
  934 F.2d 1462 (11th Cir. 1991) ........................................................................... 8,9,10

*Planned Parenthood Se., Inc. v. Bentley*, 951 F. Supp. 2d 1280 (M.D. Ala. 2013) .................... 10

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) ........................................................... 12

*Reproductive Health Servs. v. Strange*, 204 F. Supp. 3d 1300 (M.D. Ala. 2016) ........................10

*Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880 (Fla. 2010) ....................24

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)....................................................................................1

*S.E.C. v. City of Miami*, 988 F. Supp. 2d 1343 (S.D. Fla. 2013) ....................................................4

*Singleton v. Wulff*, 428 U.S. 106 (1976) ...............................................................................9,10,11

*Sofarelli v. G.L.E. Assoc., Inc.*, No. 8:08-cv-387-T-24 EAJ,
   2008 WL 2047928 (M.D. Fla. May 13, 2008).........................................................................14

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
   376 F.3d 1065 (11th Cir. 2004) ..............................................................................................2,7

*St. George v. Pinellas Cnty.*, 285 F.3d 1334 (11th Cir. 2002)................................................12,14

*Stansell v. Revolutionary Armed Forces of Columbia*, 704 F.3d 910 (11th Cir. 2013)................27

*Turbyfill v. Scottsdale Indem. Co.*, No. 3:14cv283-RV/EMT,
   2016 WL 741657 (N.D. Fla. Feb. 24, 2016).............................................................................15

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981) ............................................3

*United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994) ................................................................15

*United States v. Vega-Castillo*, 540 F.3d 1235 (11th Cir. 2008) .................................................18

*Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252 (1977) ............................8

*Warner v. City of Boca Raton*, 887 So.3d 1023 (Fla. 2004)....................................................23,24

*Weiland v. Palm Beach Cnty. Sherriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ..........................4

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................................................5

*Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017) ....................................................17,18

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .............................................................................................................4,5,17,20

U.S. Const. amend. XIV .................................................................................................................4

Art. VIII, § 2, Fla. Const.................................................................................................................24

## STATUTES

42 U.S.C. §1983...............................................................................................................3,4,5,12

Fla. Stat. ch. 458 ............................................................................................................................25

Fla. Stat. ch. 459 ............................................................................................................................25

Fla. Stat. ch. 491 ........................................................................................................25

Fla. Stat. ch. 761 (Florida Religious Freedom Restoration Act) .............................................23,24

Fla. Stat. § 381.026 .....................................................................................................25,26

Fla. Stat. § 456.001 ........................................................................................................26

Fla.Stat. § 456.41 .........................................................................................................25,26

Fla. Stat. § 491.003 ........................................................................................................26

Fla. Stat. § 761.03 ..........................................................................................................23

## RULES

Fed. R. Civ. P. 8 .............................................................................................................2

Fed. R. Civ. P. 12 ....................................................................................................1,2,8,15

Fed. R. Civ. P. 15 .........................................................................................................27,28

## OTHER AUTHORITIES

City of Boca Raton Ordinance 5407 ....................................................................... *passim*

Palm Beach County Ordinance 2017-46 .................................................................. *passim*

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990) .........2

*"We had a chance to review [the Tampa] complaint since the last meeting, and it really is an ordinance that's similar to ours. . . . It's a well-pled complaint."*[1]

## INTRODUCTION

In their motions to dismiss (Dkt. 34, "City MTD"; Dkt. 39, "County MTD"), Defendants Boca Raton ("City") and Palm Beach County ("County") seek dismissal of Plaintiffs' Verified Complaint (dkt. 1, Verified Complaint, "VC" or "Complaint") as purportedly failing to state a claim. Plaintiffs were surprised to learn of Defendants' contentions, considering that the County's own attorney publicly admitted that a virtually-identical complaint against the virtually-identical SOCE ordinance of the City of Tampa was "well-pled." (Note 1, *supra*). Despite that admission, Defendants now devote much ink to contend otherwise.

Defendants' contentions for dismissal, however, utterly fail to recognize the standards for a Rule 12(b)(6) motion to dismiss. Defendants' motions to dismiss are riddled with evidentiary contentions, factual disputes, and merits arguments. These contentions must fail as a matter of settled law, as they are unquestionably premature at this stage. *See, e.g.*, *Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993) ("though many allegations are subject to dispute," the court is required to assume the factual allegations of the complaint). Indeed, Defendants attempt to introduce factual materials not in the record, rely upon matters outside the four corners of Plaintiffs' Complaint, present evidence of factual questions central to Plaintiffs' Complaint, argue questions of fact concerning Defendants' intent, and generally argue the merits of Plaintiffs' Complaint. All of this is improper in the context of Defendants' motions to dismiss.

The only question presented to this Court on Defendants' motions to dismiss is whether Plaintiffs' allegations, when taken as true as they must be, are sufficient to state a claim, entitling Plaintiffs to discover and produce evidence to support their claims at trial. Defendants' attempt to circumvent this bedrock, black letter law cannot be countenanced. The County's attorney is right:

---

[1] (Dkt. 37-1, 5:4-6 – 6:24-25) (Statement of Defendant Palm Beach County's attorney Denise Nieman, admitting that the very similar federal complaint challenging the nearly-identical SOCE ordinance of the City of Tampa in *Vazzo, et. al. v. City of Tampa*, No. 8:17-cv-02896-CEG-AAS (M.D. Fla) is "well-pled."). Attorney Nieman strongly urged the commissioners of Palm Beach County not to enact its SOCE Ordinance until the Tampa lawsuit was concluded, but her advice was rejected. (*Id.* at 5:6-9) ("I would **strongly recommend** that the Board not take action on this, but to hold off and direct staff to monitor the [federal court proceedings [in Tampa]." (emphasis added)).

Plaintiffs' Verified Complaint is indeed "well-pled." Accordingly, Defendants' motions to dismiss must be denied.

**LEGAL ARGUMENT**

## I.      THE "EXCEEDINGLY LOW" THRESHOLD OF SUFFICIENCY ON "HIGHLY DISFAVORED AND RARELY GRANTED" MOTIONS TO DISMISS.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but a plaintiff must meet his "obligation to show the grounds of his entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" and enough facts to "nudge[] [plaintiffs'] claims across the line from conceivable to plausible." *Id.* at 570; *see also Ashcroft*, 556 U.S. at 679 ("a complaint that states a plausible claim to relief survives a motion to dismiss"). Therefore, a motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. Importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The pleading standard "simply call[s] for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful actions]." *Bell Atl.*, 550 U.S. at 556.

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is **exceedingly low**." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004) (emphasis added). A district court cannot dismiss a complaint unless – after "**accept[ing] the factual allegations in the complaint as true and mak[ing] all reasonable inferences in favor of the non-moving party**" – it appears **beyond doubt** that [the pleader] can prove no set of facts which would entitle it to relief." *Id.* (emphasis added).

Defendants cannot overcome their extraordinarily high burden to prevail on the motions to dismiss. It is axiomatic that motions to dismiss under Rule 12(b)(6) are highly disfavored and rarely granted. *See, e.g.*, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("We hasten to add that this motion is viewed with disfavor and rarely granted."). In fact, "[d]ismissal of a claim on the basis of barebone pleadings is a precarious disposition with

2

a high mortality rate." *Id.* (quoting *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968)).

Dismissal is highly disfavored "even if the face of the pleadings indicate that recovery is very remote." *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl.*, 550 U.S. at 556 (emphasis added) (internal quotations omitted). Plaintiffs' well-pleaded complaint easily satisfies this exceedingly low threshold, and Defendants' motions to dismiss should be denied

## II. PLAINTIFFS' WELL-PLED ALLEGATIONS DEMONSTRATE A VIOLATION OF SECTION 1983.

### A. The City Attacks A Strawman Complaint Plaintiffs Did Not File.

The City begins its assault on Plaintiffs' well-pled Complaint by arguing that Plaintiffs failed to adequately allege a violation of 42 U.S.C. §1983. (City MTD at 5-6). To support its untenable contention, the City relies on standards explicitly rejected by the Supreme Court and erects a straw complaint unrecognizable to Plaintiffs' actual allegations.

First, the City contends that Section 1983 complaints must somehow satisfy a heightened pleading standard, and "must allege with specificity the facts that make out [the] claim." (City MTD at 5). The Supreme Court, however, has explicitly rejected the notion that plaintiffs must satisfy some higher threshold than "the liberal system of notice pleading" when bringing Section 1983 claims against municipalities. *See, e.g.*, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that it is improper to apply a heightened pleading requirement to Section 1983 claims against municipalities).

Perhaps sensing that its first line of defense is infirm, the City next relies upon *Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381 (5th Cir. 1980) for the notion that a complaint needs to explicitly spell out its claims under Section 1983. But the City again strikes out, because *Hearth* provides no support and actually bolsters Plaintiffs' Complaint. In *Hearth*, the complaint failed to state a claim under Section 1983 because **it failed to even mention Section 1983 anywhere in the complaint**. *Id.* at 382-83. Indeed, the *Hearth* complaint was premised solely on the Fourteenth Amendment and explicitly stated so. *Id.* at 382 ("[t]he action arises under the Fourteenth Amendment [and] [t]he matter in controversy exceeds exclusive of interests and costs the sum of $10,000"). That statement was the only allegation, jurisdictional or otherwise, that was put forward

to invoke the Article III jurisdiction of the court. The Fifth Circuit found that such an invocation was insufficient to state a cause of action because "no attempt has been made to invoke the protection of section 1983." *Id.*

Contrary to the straw complaint the City erects and attacks, Plaintiffs plainly invoked the protection of Section 1983, not simply in their jurisdictional allegations, but **in every count raised under the First and Fourteenth Amendments**. (*See, e.g.*, Dkt. 1, Verified Complaint, "VC" at ¶ 18) ("This action **arises under the First and Fourteenth Amendments** to the United States Constitution **and is brought pursuant to 42 U.S.C. §1983**." (emphasis added)); (*Id.* ¶183) (incorporating ¶ 18 into Count I, and thus alleging a violation of the speech clause of the First Amendment "pursuant to 42 U.S.C. §1983"); (*Id.* ¶ 203) (incorporating ¶ 18 into Count II, and thus alleging a violation of the speech clause of the First Amendment as to Plaintiffs' clients "pursuant to 42 U.S.C. §1983"); (*Id.* ¶ 212) (incorporating ¶ 18 into Count III, and thus alleging a violation of the free exercise clause of the First Amendment "pursuant to 42 U.S.C. §1983").

The City's notion that the "words Section 1983 appear nowhere in the Complaint" (City MTD at 5) is therefore absurd, and yields no confidence that the City has even read the Complaint actually filed by Plaintiffs in this case. The City attacks a complaint Plaintiffs did not bring.

Even more fatal to the City's contentions, however, is the Eleventh Circuit's holding that it is an abuse of discretion to dismiss a Section 1983 complaint where it incorporates the jurisdictional and factual allegations into the relevant count. *See, e.g.*, *Weiland v. Palm Beach Cnty. Sherriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (holding that it is permissible to incorporate general factual allegations into the counts of a complaint); *id.* at 1326 (holding that it is an abuse of discretion to dismiss a complaint that incorporated the relevant factual allegations into the relevant counts); *see also S.E.C. v. City of Miami*, 988 F. Supp. 2d 1343, 1354-55 (S.D. Fla. 2013) (holding that it is permissible to incorporate by reference those allegations of fact that are applicable to each count alleged). Plaintiffs' incorporation by reference of their clear invocation of Section 1983 into each of their federal constitutional claims is permissible, and the City's argument fails as a matter of settled law.

**B.      Plaintiffs' Actual Complaint Alleges A Claim Under Section 1983.**

Beyond the City's bad misreading of Plaintiffs' Complaint, Plaintiffs have clearly met the requirements of pleading section 1983 claims for federal constitutional violations, not only in form but also in substance. "To state a claim under Section 1983, a plaintiff must allege the violation of

a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (same); *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (same).

Plaintiffs' Complaint is chock-full of allegations stating the obvious – that Defendants are state actors and that the challenged Ordinances are state action. (VC ¶ 16) (alleging that the City is a "municipal corporation and political subdivision of the State of Florida," *i.e.*, a government/state actor); (*Id.* ¶ 17) (alleging that the County is "a political subdivision of the State of Florida," *i.e.*, a government/state actor); (*Id.* ¶ 20) (alleging that the City and County committed the actions giving rise to Plaintiffs' claims); (*Id.* ¶¶ 23-29) (alleging that the City enacted Ordinance 5407, which gave rise to Plaintiffs' claims); (*Id.* ¶¶ 30-37) (alleging that the County enacted Ordinance 2017-046, which gave rise to Plaintiffs' claims); (*Id.* ¶¶ 166-179) (alleging that the City and County Ordinances are imposing irreparable harm by violating Plaintiffs' and their clients' constitutional rights). These allegations, taken as true, are plainly sufficient to establish that Plaintiffs' alleged injuries arise from state action.

It is also beyond peradventure that Plaintiffs' Complaint alleges violations of federal constitutional rights. (*See, e.g.*, VC ¶¶ 183-228) (alleging violations of Plaintiffs and their clients' constitutional rights under the First Amendment). In fact, the City concedes – as it must – that Plaintiffs' Complaint alleges violations of federal constitutional rights. (City MTD at 5) (acknowledging Plaintiffs' "federal claims brought in Counts I, II, and III, [under] the First Amendment").

Thus, Plaintiffs have indisputably pled both of the only two requirements for section 1983 claims. The City's flimsy argument to the contrary is a waste of the parties' and the Court's time, but is indicative of the weakness of both Defendants' other asserted grounds for dismissal.

## III. PLAINTIFFS' WELL-PLED ALLEGATIONS ESTABLISH THEIR STANDING TO CHALLENGE THE CITY ORDINANCE AND COUNTY ORDINANCE.

### A. Hamilton's Well-Pled Allegations Demonstrate Standing To Challenge The City Ordinance, And Otto's Well-Pled Allegations Demonstrate Standing To Challenge The County Ordinance.

The City does not contest, and therefore concedes, that Otto has standing to challenge the City Ordinance. (City MTD at 3-4). The County does not contest, and therefore concedes, that

Hamilton has standing to challenge the County Ordinance. (County MTD at 2-3). Nevertheless, the City challenges Hamilton's standing and the County challenges Otto's standing, but each of those challenges fails.

> To demonstrate standing,
>
> the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). The well-pled allegations of both Otto and Hamilton easily satisfy this threshold.

### 1.    Hamilton has standing to, and does, challenge the City Ordinance.

Demonstrating once again that it has not read the actual Complaint it is challenging, the City asserts, incredibly, that Hamilton's "factual allegations regarding the cause of her alleged injuries address <u>only</u> the County's ordinance and <u>not</u> the [City's] Ordinance." (City MTD at 3-4 (underline in original)). In support of this demonstrably false claim, the City cites to just seven paragraphs out of 308 paragraphs in the Complaint. (*Id.*) The City plainly ignores numerous other paragraphs where Dr. Hamilton, in very certain terms, alleges that the City's Ordinance is, indeed, harming her: (VC ¶¶ 162-164) (alleging that **Hamilton** would like to be able to advertise, offer, and engage in voluntary SOCE counseling with "clients and potential clients **in the City** and County" (emphasis added)); (*Id.* ¶¶ 166-179) (alleging that "**[b]ecause of the City** and County **Ordinances**" **Hamilton** is suffering irreparable injury to her rights to free speech (emphasis added)). Hamilton's injuries are clearly caused by both the City and County Ordinances, as they are both standing in the way of her desire to engage in constitutionally protected expression and speech with her clients.[2] (*Id.* ¶¶ 162-182). In this section of the Complaint alone, there are close to **twenty** separate paragraphs alleging that Hamilton is being harmed and chilled by the City's Ordinance. (*Id.*) How the City can conclude that Hamilton does not provide or wish to provide SOCE counseling in the City, and is not bringing claims against its ordinance, defies reason.

---

[2]    Indeed, the State's licensing board does not prohibit Hamilton from offering SOCE counseling in Florida, only the Ordinances do that. (*Id.* ¶¶ 277-278).

As for redressability, there can be no dispute that a favorable decision from this Court enjoining the City (and County) Ordinance would eliminate the obstacles to Hamilton's ability to offer voluntary SOCE counseling to her willing minor clients, both in the City and throughout the County. (*Id.* ¶¶ 162-182).

In sum, the plainly stated fact, never mind reasonable inference, is that Hamilton wishes to provide voluntary SOCE counseling within the City limits, but cannot because of the City's Ordinance. The City is wasting the Court's time.

### 2.      Otto has standing to, and does, challenge the County Ordinance.

The County's reading of the Complaint as to Otto is similarly impaired. Even assuming (without conceding) that the County and City Ordinances are indeed "in conflict" as the County urges, such that the County Ordinance does not apply within the City limits (County MTD at 2), in no way does it follow that Otto cannot challenge the County's Ordinance. Yes, it is true that Otto "maintains a counseling practice in the City of Boca Raton," as the County points out. (*Id.*) But that does not mean that Otto does not provide or desire to provide SOCE counseling services elsewhere within the County (outside the City). In fact, Otto's allegations, taken as true, clearly demonstrate that he does. (VC ¶¶ 162-164) (alleging that **Otto** would like to be able to advertise, offer, and engage in voluntary SOCE counseling with "clients and potential clients **in the** City and **County**" (emphasis added)); (*Id.* ¶¶ 166-179) (alleging that "**[b]ecause of the** City and **County Ordinances**" Otto is suffering irreparable injury to his rights to free speech (emphasis added)). Just like Hamilton, in this section of the Complaint alone Otto provides almost **twenty** separate paragraphs alleging that he is being harmed and chilled by the County's Ordinance. (*Id.* ¶¶ 162-182)

Accepting the County's argument would require the Court to ignore the plain language and import of Otto's allegations with respect to the County's Ordinance, and to infer that therapists in general, and Otto in particular, can never provide services outside the four walls of their office, such as at a client's house, a church, a school, a park, an ice cream parlor or a myriad other places. This would be the exact opposite of "mak[ing] all reasonable inferences in favor of the non-moving party," in this case Otto, as is required. *Spanish Broad.*, 376 F.3d at 1070.

Otto has plainly alleged more than sufficient harm flowing to him from the County's Ordinance, as well as causation and redressability,[3] to entitle him to discover and to present facts at trial to support his claims. The County's contention should meet the same fate as the City's.

**B.** **The City's Concession That Otto Has Standing To Challenge The City Ordinance, And The County's Concession That Hamilton Has Standing To Challenge The County Ordinance, Are Fatal To Their Contentions.**

The City's concession that Otto has Article III standing to challenge the City Ordinance, and the County's concession that Hamilton has standing to challenge the County Ordinance, are fatal to their standing challenges altogether. Once the Court establishes the standing of at least one plaintiff for the relief sought, which the City and County have both conceded exists as to at least one Plaintiff, it need not consider the standing of other plaintiffs in the action. *See, e.g.*, *Carey v. Population Serv., Int'l*, 431 U.S. 678, 682 (2010) (once standing of one plaintiff is established, the court need not decide the standing of the other plaintiffs); *Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) (where "we have at least one individual plaintiff who has demonstrated standing to assert these rights as his own," "we need not consider whether the other individual and corporate plaintiffs have standing to maintain suit"); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 n.10 (11th Cir. 2004) (holding that it is "sufficient if one plaintiff has standing"); *Planned Parenthood Ass'n of Altanta Area, Inc. v. Miller*, 934 F.2d 1462, 1465 n.2 (11th Cir. 1991) ("Since Dr. Moore has standing, we need not consider the standing of the other parties").

Here, because Defendants have each conceded the Article III standing of at least one Plaintiff, the complaint may not be dismissed under Rule 12(b)(1). Indeed, Rule 12 permits a court to dismiss a complaint for lack of subject matter jurisdiction. "The key word in the Rule is 'complaint.' **By its terms, Rule 12(b)(1) permits the Court to dismiss a *complaint* not a *complainant*.**" *In re Florida Cement & Concrete Antitrust Litig.*, No. 09-2387-CIV-ALTONAGA/Brown, 2011 WL 13174536, *1 (S.D. Fla. Feb. 24, 2011) (italics in original, bold emphasis added). Thus, "**[i]t is settled law that as long as one plaintiff has standing, the Court has subject matter jurisdiction over the case**." *Id*. Defendants' standing arguments are a colossal waste of time.

---

[3]      Otto meets the causation and redressability elements of standing for the same reasons as Hamilton, as demonstrated in the preceding section.

### C.   Plaintiffs Have Standing To Challenge The Ordinances On Behalf Of Their Minor Clients.

The Supreme Court and the Eleventh Circuit have long recognized the rights of doctors and mental health professionals to bring constitutional challenges on behalf of their patients and clients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106 (1976); *Doe v. Bolton*, 410 U.S. 179 (1973); *Miller*, 934 F.2d at 1465 n.2; *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). Plaintiffs' assertion of their clients' constitutional rights is consistent with Article III standing requirements because their clients' "enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue." *Singleton*, 428 U.S. at 114-15. As such, "the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Id.* at 115. The Eleventh Circuit has noted that doctors or mental health professionals have standing to bring claims on behalf of their clients when (1) the plaintiff has suffered concrete injury, (2) the plaintiff and the third party have a close relationship, and (3) the third party faces some obstacles to asserting his own rights. *Miller*, 934 F.2d at 1465 n.2.

Plaintiffs satisfy each of these elements. Although **the City and County only challenge the third element** (City MTD at 4-5; County MTD at 3), and therefore waived argument as to the first two, out of an abundance of caution Plaintiffs will briefly address all three.

#### 1.   Plaintiffs have alleged concrete injury.

Plaintiffs' Complaint alleges, and this Court must presume true, that Plaintiffs are currently suffering irreparable injury at the hands of Defendants' ordinances, and by virtue of Defendants' conduct. (VC ¶¶ 162-182). Indeed, the City and County Ordinances are prohibiting Plaintiffs from engaging in voluntary SOCE counseling with minor clients who desire to receive it, and the Ordinances are unconstitutionally prohibiting such counseling on the basis of its content and viewpoint. (*Id.* ¶¶ 186-188). Plaintiffs are also suffering irreparable injury under the yoke of presumptively unconstitutional prior restraints. (*Id.* ¶ 185). Plaintiffs are therefore suffering concrete injury sufficient to satisfy Article III and thus satisfy the first requirement. Indeed, as demonstrated above, the City and County each admit that at least one Plaintiff has standing to sue them, which necessary includes an admission that sufficient injury has been alleged.

## 2.    Plaintiffs and their clients have the requisite close relationship.

It has long been held that the relationship of a healthcare professional and patient satisfies the requisite close relationship for purposes of third party standing. *See, e.g.*, *Singleton*, 428 U.S. at 117 ("the physician is uniquely qualified to litigate the constitutionality of the [government's] interference with, or discrimination against" medical decision); *Miller*, 934 F.2d at 1465 n.2 (holding that the relationship between doctor and patient is sufficiently close for standing); *Deerfield*, 661 F.2d at 334 (same); *Planned Parenthood Se., Inc. v. Bentley*, 951 F. Supp. 2d 1280, 1284 (M.D. Ala. 2013) ("federal courts **routinely** recognize a [doctor's] standing to assert the claims of its patients") (emphasis added); *Reproductive Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1320 (M.D. Ala. 2016) (permitting doctor to assert claims on behalf of minor patient); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("**a physician or other professional may raise the *constitutional* rights … of his or her patients**" (bold emphasis added; italics original)); *Aid for Women v. Foulston*, 441 F.3d 1101, 1112 (10th Cir. 2006) (same); *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003) (close relationships arise "in professional contexts, where the right of the potential plaintiff and third-party plaintiff neatly align." (emphasis added)). The constitutionally protected right to make decisions concerning one's mental health and health care, based upon candid and unencumbered speech from the therapist, is "one in which the physician is intimately involved." *Singleton*, 428 U.S. at 117. Indeed, "[t]he closeness of the relationship is patent." *Id.*; *see also Miller*, 934 F.2d at 1465 n.2 (same).

Here, Plaintiffs and their clients establish a therapeutic alliance in their counseling and the relationship between them is sufficiently close. Indeed, Plaintiffs' clients have specifically sought them out because they offer client-centered and client-directed counseling consistent with the clients' wishes, values and beliefs. (VC ¶¶ 129, 145, 146). This relationship is inherently close and sufficient for Article III standing. *See Penn. Psychiatric Soc'y v. Green Springs Health Serv., Inc.*, 280 F.3d 278, 289 (3d Cir. 2002) ("Psychiatrists **clearly** have the kind of relationship with their patients which lends itself to advancing claims on their behalf. This intimate relationship and the resulting mental health treatment ensures psychiatrists can effectively assert their patients' rights." (emphasis added)). Therefore, Plaintiffs have—by the very nature of their counseling relationship with their patients—satisfied the second requirement. *Id.* at 290 ("the psychiatrist-patient relationship would satisfy the second criterion for third-party standing")

### 3.    Plaintiffs' clients face significant obstacles to litigation.

Plaintiffs' clients face substantial obstacles to bringing these claims. Indeed, "[f]or one thing, [they] may be chilled from such assertion by a desire to protect the very privacy of [their] decision from the publicity of a court suit." *Singleton*, 428 U.S. at 117. "[T]he psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." *Jaffree v. Redmond*, 518 U.S. 1, 10 (1996). "[D]isclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.*

"**The stigma associated with receiving mental health services presents a considerable deterrent to litigation**." *Penn. Psychiatric Soc'y*, 280 F.3d at 290 (citing *Parham v. J.R.*, 442 U.S. 584 (1979) (Stewart, J., concurring) (emphasis added)). This consideration is only increased when such counseling involves intimate details concerning a minor's development, growth, and identity. Indeed, even the fear of stigmatization associated with bringing claims in a public forum "operates as a powerful deterrent to bringing suit." *Id.* As the Tenth Circuit has held, "**adolescents seeking health care related to sexuality or mental health care may be chilled from asserting their own rights by a desire to protect the very privacy of the care they seek from the publicity of a court suit**." *Aid for Women*, 441 F.3d at 1114 (emphasis added). The desire to keep private the intimate details associated with SOCE counseling are clearly obstacles to bringing the claims of Plaintiffs' clients in public court. The mere fact that the City and County passed their respective Ordinances is *ipso facto* proof that Plaintiffs' clients are likely to be stigmatized and subjected to opprobrium for seeking the kind of counseling that offends Defendants' sensibilities. And, to make matters worse, Plaintiffs' clients are minors and thus face a separate set of obstacles to litigation.

In sum, Plaintiffs' allegations are more than sufficient to establish standing at this initial juncture. However, in the event the Court deems that any additional allegations are necessary regarding the obstacles to litigation faced by Plaintiffs' clients, or regarding any other aspect, Plaintiffs stand ready to provide them in an amended complaint and request that ability. (*See* Section IX, *infra*).

IV.   **DEFENDANTS' ATTEMPTS TO RESOLVE FACTUAL DISPUTES AT THE MOTION TO DISMISS STAGE IS IMPROPER AS A MATTER OF BLACK LETTER LAW.**

Beyond foundering out of the starting gate on standing and Section 1983, and being based on a demonstrably flawed reading of Plaintiffs' Complaint, Defendants' motions to dismiss are also littered with arguments disputing the facts alleged in Plaintiffs' Complaint. This is plainly improper at the motion to dismiss stage, where this Court is required to accept all "facts alleged in the complaint as true and draw all reasonable inference in the plaintiff's favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). This Court is not permitted to go outside the allegations of the Complaint, as Defendants have entreated. Instead, this Court's "review must be limited to the four corners of the complaint." *Id.*

A.   **Defendants' Self-Serving Contentions Regarding Defendants' Supposedly Innocent Intent Behind The Ordinances Are Factual Determinations Improper For Resolution At The Motion To Dismiss Stage.**

Defendants devote many pages to arguing that their intent behind passage of the Ordinances was not to regulate speech, let alone to violate Plaintiffs' viewpoints, but simply to ban what they call an ineffective medical practice. (County MTD at 4-13; City MTD at 7-13). But, these contentions attempt to do what is impermissible at this stage, namely dispute factual allegations of the Complaint. Plaintiffs' Complaint plainly alleges that Defendants enacted the challenged Ordinances based on hostility towards the viewpoint espoused by Plaintiffs in SOCE counseling, and that the Ordinances were intended to discriminate against certain viewpoints with which Defendants disagree. (VC ¶¶ 1, 186, 188, 195). Despite those allegations, Defendants contend that they had no such discriminatory intent. Defendants labor in vain.

Questions of intent are factual questions inappropriate for resolution on a motion to dismiss. *See, e.g., Pullman-Standard v. Swint*, 456 U.S. 273, 289 (1982) (government's intent to discriminate is a pure question of fact); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) ("a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder"); *Katsaris v. United States*, 684 F.2d 758, 762 (11th Cir. 1982) ("Intent is a question of fact."); *id.* ("More particularly, intent is a question of ultimate fact and proof of intention is of necessity, largely circumstantial); *Guthartz v. Park Centre West Corp.*, No. 07-80334-Civ, 2009 WL 278960, *4 (S.D Fla. Feb. 5, 2009) (intent is a question of fact). Thus,

resolving the factual question of Defendants' intent behind the Ordinances is premature and improper at this stage. *See Heller v. Carnival Corp.,* 191 F. Supp. 3d 1352, 1365 (S.D. Fla. 2016) (holding that "it is premature to rule on [a party's intent] at a motion to dismiss").

Defendants also cannot point to the self-serving statements regarding their intent which they stuffed into their discriminatory Ordinances, to deprive Plaintiffs of the opportunity to discover, and to present at trial, evidence that Defendants' recitations are pretextual and feigned solely to escape the judicial review they knew would be inevitable. If it were that simple, no legislature could ever be found to have acted with discriminatory intent, because any legislature could insert a self-serving line or two in an otherwise invidious regulation, as Defendants are alleged to have done here. Defendants will have plenty of opportunity to profess their supposedly innocent intent, but they cannot do so now, at this motion to dismiss stage.

**B.      Defendants' Contentions Regarding Speech Vs. Conduct Are Factual Determinations Improper For Resolution On A Motion To Dismiss.**

Defendants also premise their arguments, to a large extent, on their contention that the challenged Ordinances prohibit a professional practice, and in no way hinder or chill speech. (County MTD at 4-7; City MTD at 7-9). Their argument essentially boils down to the notion that government can label a particular kind of speech "professional conduct" and thereby evade the exacting scrutiny the First Amendment requires. As demonstrated in Section V.A.1, *infra*, this "dubious constitutional enterprise" – in the words of the Eleventh Circuit – has been relegated to the dustbin of constitutional history as a matter of binding law in this Circuit.

More importantly for present purposes, Defendants' dubious speech vs. conduct argument is likewise premised on factual contentions and is premature at this stage of the proceedings. Determinations of what Plaintiffs say or do in their SOCE counseling that is now banned, whether such counseling involves anything other than pure speech, and whether it transgresses the line into conduct, are all questions of fact that cannot be decided now, as Defendants urge. Questions related to the scope of the Ordinances require inquiry into the facts underlying SOCE counseling, Defendants' alleged motives, and the extent of those practices actually prohibited by either the language of the Ordinances or by Defendants' interpretation and application of their Ordinances in specific cases. All of these matters are questions of fact that cannot be decided now, as demonstrated in the preceding section.

To be sure, Plaintiffs' well-pled allegations, which must be accepted as true, demonstrate that their voluntary SOCE counseling – which Defendants have banned – **involves only speech**, and not any conduct whatsoever. (VC ¶ 74) ("Speech is the **only** tool that Plaintiffs use in their counseling with minors seeking to reduce or eliminate unwanted same-sex attractions, behaviors, or identity." (emphasis added)); (*Id.*) ("The **only** thing that happens in their counseling sessions is speech." (emphasis added)); (*Id.* ¶ 76) ("Plaintiffs employ speech to help clients"); (*Id.* ¶ 72) ("Plaintiffs do not engage in aversive techniques."). Defendants are certainly free to attempt to dispute these contentions – but certainly not now. *See, e.g.*, *Devengoechea v. Bolivarian Rep. of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018) ("On a motion to dismiss, the factual allegations in the complaint are taken as true, **even if they are subject to dispute**." (emphasis added)); *Sofarelli v. G.L.E. Assoc., Inc.*, No. 8:08-cv-387-T-24 EAJ, 2008 WL 2047928, *2 (M.D. Fla. May 13, 2008) ("That the Defendant disputes Plaintiffs' version of the facts does not make those facts speculative, as the Court is required to assume that all of the allegations in Plaintiff's complaint are true."). Thus, even if it were not constitutionally dubious, Defendants' factual effort to pigeonhole Plaintiffs' SOCE counseling into the "conduct" rubric must fail at this stage.

## C.    Defendants' Evidentiary Arguments And Submissions Are Clearly Improper At The Motion To Dismiss Stage.

While the City restrains itself from introducing evidence on a motion to dismiss, the County is not so restrained and contends that its enactment of the County Ordinance was based on "substantial evidence." (County MTD at 10). The County's misguided effort to bring that supposed "substantial evidence" before the Court at this juncture must fail for two reasons: (1) the County introduces "evidence" outside of the four corners of Plaintiffs' Complaint, and (2) evidentiary issues are premature at the motion to dismiss stage.

First, the County submits videos and transcripts of County Commission hearings where the County Ordinance was discussed and debated. (County MTD at 1 & n.2). Those transcripts and the alleged "evidence" discussed therein are clearly outside the four corners of Plaintiffs' Complaint, and thus reliance on them is inappropriate at this stage. *See, e.g.*, *St. George*, 285 F.3d at 1337 ("The scope of the review **must be limited to the four corners of the complaint**." (emphasis added)); *see also Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Hernandez v. Am. Fed'n of Police, Inc.*, No. 13-24002-Civ-WILLIAMS, 2014 WL 12600144, *1 (S.D. Fla. Mar. 7 2014) (same). Indeed, as in *Hernandez*, "Defendants rely on documents outside

the Complaint to raise several factual issues." *Id.* at *1. But, as this Court held, "[a]ddressing these issues now would require the Court to make factual determinations that are inappropriate at the motion to dismiss stage. When considering a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations in the Complaint." *Id.* Thus, the County's submission of and reliance upon matters outside of Plaintiffs' well-pled Complaint are improper and cannot be countenanced.

The County's own authority reveals the improper nature of its attempt to introduce evidence at this stage. The County cites *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) for the proposition that the court may consider documents attached to a motion to dismiss, but only **if** those documents are "undisputed." (County MTD at 1, n.2) It should go without saying, but just to be clear: Plaintiffs **do** dispute the authenticity, hearsay nature, relevancy and all other aspects of the evidence Defendants seek to introduce at this stage. These are matters to be probed and established in discovery, not on a motion testing the sufficiency of the Complaint. *See, e.g.*, *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (court cannot take judicial notice of the veracity of allegations in submitted testimony outside of the instant litigation); *In re Presta*, No. 3:09-bk-1222-JAF, 2014 WL 2448444, *2 (M.D. Fla. May 28, 2014) (hearsay assertions "are not the proper subject of judicial notice"); *Turbyfill v. Scottsdale Indem. Co.*, No. 3:14cv283-RV/EMT, 2016 WL 741657, *2 (N.D. Fla. Feb. 24, 2016) (judicial notice does not "cure any customary objections involved in the admissibility of evidence, such as hearsay").

Second, regardless of the merit (or lack thereof) of the County's notion that it had "substantial evidence" to enact the Ordinance, questions related to the County's knowledge or lack thereof are factual matters. *See, e.g.*, *Chanel, Inc.*, 931 F.2d at 1476 (party's knowledge is a question of fact); *Criss v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1292-93 (M.D. Fla. 2017) (questions related to a party's knowledge are questions of fact inappropriate for resolution at motion to dismiss stage). Thus, looking beyond the four corners of the Complaint and determining what knowledge Defendants possessed is plainly improper on a motion to dismiss.

### D.   Defendants' Preemption Arguments Are Factual Issues Improper For Resolution At The Motion To Dismiss Stage.

Finally, Defendants' attempts to resolve factual preemption issues at this stage is likewise improper. As this Court has said, preemption analysis involves a highly fact-intensive inquiry. *Jouria v. CE Res., Inc.*, No. 0:15-cv-61165-WPD, 2017 WL 3868422, *3 (S.D. Fla. July 17, 2017); *see also Kevin Harrington Enter., Inc. v. Bearwolf*, No. 98-1039-Civ-UNGARO-BENAGES, 1998

WL 798164, *1 (S.D. Fla. Aug. 5, 1998) (holding that it is improper to resolve the fact-intensive inquiry of preemption at the motion to dismiss stage). Defendants' contention that the Ordinances are not *ultra vires* rests on their claims that the State has not preempted the field of mental health professionals, and that Defendants have the authority to regulate professions and professional conduct. (City MTD at 17; County MTD at 17-18). Resolution of these preemption issues necessarily requires a factual record, and is therefore inappropriate for a motion to dismiss.

Indeed, in determining whether the State's regulation impliedly preempts local governments from regulating mental health professionals licensed by the State, the court must look at the provisions of the policy as a whole, the nature of power exercised by the legislature, the object sought to be attained by the statute, and the character of the obligations imposed by the statute. *Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779, 784 (Fla. 2016). The object and purpose of a statute or statutory scheme is necessarily fact intensive and inappropriate for a motion to dismiss. *See, e.g.*, *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408 (5th Cir. 1991) (a legislature's purpose in enacting a law "is a question of fact"). Defendants' request to dismiss Plaintiffs' preemption claim before any factual inquiry is undertaken cannot be countenanced.

Incidentally, as this Court knows from the discovery dispute it has already been required to address, Plaintiffs propounded interrogatories upon the County and City to inquire about the extent to which they purport to regulate any other modes of therapy (besides SOCE counseling), or any other professionals or professional conduct. (Dkts. 27-1, 27-2, 42). Not surprisingly, Defendants have not been able (or willing) to identify **a single such other regulation** – refusing instead to respond to these legitimate inquiries even after obtaining more time from this Court in which to respond. This confirms Plaintiffs' claims that the SOCE bans enacted by Defendants here are the **first** – and **only** – exercise of Defendants' supposedly broad, routine, and unremarkable power to regulate professions and professionals for the safety of their citizens. All of this demonstrates that factual development, especially depositions, will lay bare Defendants' preemption defenses. This is why Defendants are attempting to cut off that factual development prematurely, and this is precisely why that factual development must be permitted.

In sum, the Court should confine its review to the four corners of Plaintiffs' Complaint, and deny Defendants' improper and premature motions to dismiss.

## V.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF THE FIRST AMENDMENT.

### A.   Plaintiffs' Well-Pled Allegations Demonstrate A Violation Of Their Right To Free Speech.

Plaintiffs' well-pled allegations include that their voluntary SOCE counseling with willing minors involves nothing more than pure speech, and that no "conduct" takes place in their counseling sessions. Plaintiffs' well-pled allegations also demonstrate that the Ordinances are chilling and otherwise violating their right to free speech in a number of ways.

#### 1.   Plaintiffs' well-pled allegations demonstrate that their practice is pure speech, and neither Defendants nor this Court can resurrect the "dubious constitutional enterprise" of classifying Plaintiffs' speech as conduct expressly interred by the Eleventh Circuit.

Defendants contend that Plaintiffs fail to state a claim because their mental health practices do not involve speech at all, but merely conduct. (County MTD at 4-7; City MTD at 7-9). As already noted, however, Plaintiffs' Complaint alleges that Plaintiffs' SOCE counseling with minors involves nothing more than speech. (VC ¶ 74) ("Speech is the **only** tool that Plaintiffs use in their counseling with minors seeking to reduce or eliminate unwanted same-sex attractions, behaviors, or identity."); (*Id.*) ("The **only** thing that happens in their counseling sessions is speech."); (*Id.* ¶ 76) ("Plaintiffs employ speech to help clients"); (*Id.* ¶ 72) ("Plaintiffs do not engage in aversive techniques."). It is **these** allegations, not Defendants' contrary claims, which must be accepted as true.

Second, Defendants' attempts to evade constitutional scrutiny of their viewpoint and content-based restriction of Plaintiffs' speech fails as a matter of law.[4] Indeed, the Eleventh Circuit has explicitly rejected the precise argument espoused by Defendants here. In *Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017) (en banc), the Eleventh Circuit was presented with the identical argument that a prohibition on what a doctor could say to his patients did not implicate the First Amendment because speech was merely incidental to the state's regulation of professional

---

[4] Plaintiffs address this contention only briefly here, to note that resolution of the speech vs. conduct issue is improper at the motion to dismiss stage and that binding law prohibits Defendants from engaging in the dubious constitutional enterprise of labeling speech as conduct to avoid First Amendment review. This discussion is much more relevant for the preliminary injunction analysis, and Plaintiffs intend to treat it far more exhaustively in that context and briefing.

conduct. *Id.* at 1308. Slapping that contention down as sheer nonsense, the en banc court held that such labeling legerdemain was a "dubious constitutional enterprise." *Id.* at 1309. "Speech is speech, and it must be analyzed as such for purposes of the First Amendment." *Id.* at 1307 (quoting *King v. Governor of New Jersey*, 767 F.3d 216, 229 (3d Cir. 2014)). Indeed, "**[s]aying that restrictions on writing and speaking are merely incidental to speech is like saying that limitations on walking and running are merely incidental to ambulation**." *Id.* (emphasis added).

Defendants readily acknowledge that their "professional conduct" argument is premised on the same arguments that have already been unequivocally condemned as "dubious" by the en banc Eleventh Circuit. (*E.g.*, County MTD at 4, n. 5; City MTD at 12). Instead of abandoning that now-defunct argument, however, Defendants craft a curious solution: they entreat this Court to overrule the en banc Eleventh Circuit, and adopt instead Plaintiffs' own interpretation of Supreme Court precedent. (County MTD at 4, n. 5). That's not how precedent works, however. Plaintiffs cannot skip over the Eleventh Circuit to avoid a decision they don't like. This is because, "[w]ithout a *clearly contrary* opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court," let alone the entire court sitting en banc. *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003) (quoting *National Labor Relations Board v. Datapoint Corp.,* 642 F.2d 123, 129 (5th Cir. Unit A Apr. 1981) (italics in original)). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision," let alone the trial court with a basis for overruling the appellate court. *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008).

Defendants do not even suggest that the Eleventh Circuit's en banc repudiation of their argument in *Wollschlaeger* has ever been overruled by the Supreme Court. As such, this Court is bound by **that** decision, no matter how much Defendants seek to escape it. Thus, what the Eleventh Circuit has rejected as "dubious," Plaintiffs cannot now resurrect. Plaintiffs' speech is speech, and Defendants cannot run roughshod over it by labeling it as "conduct."

> **2.    Plaintiffs' well-pled allegations demonstrate that their speech is chilled and restricted by Defendants' ordinances.**

Not only have Plaintiffs plainly alleged that their voluntary SOCE counseling involves nothing more than speech – a conclusion the en banc Eleventh Circuit agrees with – but the well-

pled allegations of their Complaint also demonstrate that their speech is being chilled and restricted by Defendants' Ordinances. (VC ¶ 166) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are prohibited from advertising SOCE counseling to clients and potential clients, including minors, in the City and County."); (*Id.* ¶ 167) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are prohibited from offering voluntary SOCE counseling to clients and potential clients, including minors, in the City and County."); (*Id.* ¶ 168) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are prohibited from engaging in SOCE counseling with clients and potential clients, including minors who desire such counseling, in the City and County."); (*Id.* ¶ 169) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are restricted from engaging in constitutionally protected speech, including advertising their SOCE counseling to clients and potential clients in the City and County."); (*Id.* ¶ 170) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are prohibited from engaging in constitutionally protected speech, including offering their SOCE counseling to clients and potential clients in the City and County."); (*Id.* ¶ 171) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are prohibited from engaging in constitutionally protected speech, including providing their SOCE counseling to willing clients and potential clients in the City and County."); (*Id.* ¶ 172) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton have been chilled in their constitutionally protected expression."); (*Id.* ¶ 173) ("Because of the City and County Ordinances, Dr. Otto and Dr. Hamilton are prohibited from engaging in constitutionally protected speech, including providing their SOCE counseling to willing clients and potential clients in the City and County in violation of their clients and potential clients' First Amendment right to receive information.").

Plaintiffs' allegations also establish that Defendants' Ordinances violate the First Amendment as viewpoint and content-based, as prior restraints, as vague, as overbroad, and as vesting unbridled discretion in the hands of government officials. (VC ¶ 185) ("The City and County Ordinances, on their face and as applied, are unconstitutional prior restraints."); (*Id.* ¶ 186) ("The City and County Ordinances, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint."); (*Id.* ¶ 187) ("The City and County Ordinances, on their face and as applied, authorize only one viewpoint on SOCE counseling and unwanted same-sex sexual attractions, behaviors, and identity by forcing Plaintiffs to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, behaviors, or identity. The

Ordinances also force Plaintiffs' clients and their parents to receive only one viewpoint on this otherwise permissible subject matter."); (*Id.* ¶ 188) ("The City and County Ordinances, on their face and as applied, discriminate against Plaintiffs' speech on the basis of the content of the message they offer and that Plaintiffs' clients seek to receive."); (*Id.* ¶ 194) ("The City and County Ordinances, on their face and as applied, unconstitutionally chill and abridge the right of Plaintiffs' clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity."); (*Id.* ¶ 198) ("The City and County Ordinances, on their face and as applied, are impermissibly vague as they require licensed professionals subject to their dictates and government officials tasked with enforcing them to guess at their meaning and differ as to their application.").

As these allegations make plain, Plaintiffs have unquestionably pled a violation of their First Amendment right to speech, that their speech is being chilled, and that the Ordinances impose unconstitutional restrictions on their ability to speak.

### B. Plaintiffs' Well-Pled Allegations Demonstrate A Violation Of Their Right To Free Exercise.

Plaintiffs' well-pled allegations, taken as true, reveal that Defendants' enactment of the Ordinances are an unconstitutional violation of their right to free exercise of religion. Indeed, it is now axiomatic that hostility toward religious beliefs is plainly unconstitutional. "The principle that government may not enact laws that suppress religious belief or practice is so well understood that few violations are recorded in our opinions." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993). Plaintiffs have alleged, and are entitled to adduce evidence at trial to prove, that Defendants' Ordinances were motivated by, and display, hostility towards Plaintiffs' religious convictions. "Although a law targeting religious beliefs as such is never permissible . . . if the object of the law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Id.* at 533 (citations omitted). Although neutral laws of general applicability receive deferential treatment, *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990), "[a] law failing to satisfy these requirements must be justified by a compelling government interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531-32. Defendants' Ordinances therefore "must undergo the most rigorous of scrutiny." *Id.* at 546. A law "will survive strict scrutiny **only in rare cases**." *Id.* (emphasis added). As *Lukumi* made abundantly clear, "[t]he Free Exercise Clause . . . extends beyond facial

discrimination. The Clause 'forbids subtle departures from neutrality,' [and] 'covert suppression of particular religious beliefs.'" *Id.* at 534 (quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971); *Bowen v. Roy*, 476 U.S. 693 (1986)). "The Free Exercise Clause protects against government hostility which is masked, as well as overt." *Id.* Plaintiffs' well-pled allegations satisfy these requirements.

### 1. Plaintiffs' allegations demonstrate their sincerely held religious beliefs.

Plaintiffs have plainly alleged that they and their clients have sincerely held religious beliefs concerning human sexuality and same-sex attractions, behaviors, and identity. (VC ¶ 129) (alleging that Otto's clients profess to be Christians who desire SOCE counseling to aid them in living a life consistent with their sincerely held religious beliefs); (*Id.* ¶ 145) (alleging that many of Hamilton's clients uphold a Biblical worldview and believe that same-sex attractions, behaviors, and identity are inconsistent with their sincerely held religious beliefs); (*Id.* ¶ 251) (alleging that Plaintiffs' clients have sincerely held religious beliefs that same-sex attractions, behaviors, and identity are inconsistent with their religious beliefs; (*Id.* ¶ 252) (alleging that Otto and Hamilton have sincerely held religious beliefs that they should counsel their clients from a religious viewpoint and help their client align their attractions, behaviors, and identity to the clients' own sincerely held religious beliefs and convictions).

### 2. Plaintiffs' allegations demonstrate that the Ordinances violated their sincerely held religious beliefs.

Plaintiffs' well-pled allegations also demonstrate that the Ordinances violate their sincerely held religious beliefs. (VC ¶ 253) (alleging that the Ordinances cause direct and immediate conflict with Otto's and Hamilton's sincerely held religious beliefs and prohibit them from offering counseling consistent with such religious beliefs); (*Id.* ¶ 254) (alleging that the Ordinances burden Plaintiffs' and their clients' religious beliefs and that the Ordinances compel them to change their religious beliefs or act in contradiction to them); (*Id.* ¶ 255) (alleging that the Ordinances placed Plaintiffs and their clients in an irresolvable conflict between their sincerely held religious beliefs and compliance with the Ordinances).

### 3. Plaintiffs' allegations demonstrate the Ordinances' hostility towards religious belief.

Plaintiffs allegations also demonstrate that the Ordinances explicitly target their religious beliefs and exhibit unconstitutional hostility towards such beliefs. (VC ¶ 257) (alleging that the Ordinances "specifically and discriminatorily target religious speech, beliefs, and viewpoint of those individuals who believe change is possible"); (*Id.* ¶ 4) (alleging that the Ordinances "deny and severely impair" Plaintiffs and their clients' "right to prioritize their religious and moral values and their right to receive effective counseling consistent with those values").

Defendants, especially the City, showcase their hostility to Plaintiffs' religious beliefs not only in their Ordinances, but even now, in their motions to dismiss. After arguing that its Ordinance allows Plaintiffs to "provide spiritual counsel" to their clients, so long as it is not SOCE counseling, the City feels compelled to include a wholly gratuitous footnote calling Plaintiffs' religious beliefs "hate speech [that] is frequently cloaked in the garb of religion," and likening Plaintiffs to the KKK. (City MTD at 20, n. 28). This footnote serves no purpose whatsoever – it is not necessary to any legal argument advanced by the City – other than to showcase the City's utter contempt for Plaintiffs' sincerely held religious beliefs that they should help their willing minor clients to live consistently with the clients' own religious beliefs. Defendants' religious animus is so great that it oozes to the surface and cannot be masked.

### 4. Plaintiffs' allegations demonstrate that the Ordinances contain individualized exemptions and religious gerrymanders.

A system of individualized or categorical exemptions from the general prohibitions of a statute demonstrate that it is not neutral or generally applicable. *See Lukumi*, 508 U.S. at 536-38. Laws that target substantially similar conduct but unevenly proscribe the conduct purporting to cause the harm constitute an impermissible "religious gerrymander." *Id.* Defendants contend that the Ordinances are neutral and generally applicable, and that the "object of the law" is not to target religious beliefs. (City MTD at 15; County MTD at 14-15). This argument fails for two reasons: (1) it is premature and improper to determine motives or the government's purpose for enacting a law at the motion to dismiss stage, *see supra* Section IV.A., and (2) such contentions are contradicted by the well-pled allegations of Plaintiffs' Complaint, which must be presumed true. Plaintiffs' allegations demonstrate that the Ordinances set up a system of individualized

exemptions and unconstitutionally impose a gerrymander on Plaintiffs' free exercise rights. (*See* VC ¶¶ 111-121). Thus, Plaintiffs have sufficiently alleged a violation of their free exercise rights.

## VI.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF THE FLORIDA RELIGIOUS FREEDOM RESTORATION ACT.

Defendants also contend that Plaintiffs fail to state a claim under the Florida Religious Freedom Restoration Act ("FRFRA") because they are not "required" to engage in SOCE counseling with minors. (County MTD at 19-20; City MTD at 19-20). Putting aside the offensive nature of Defendants' attempt to tell Plaintiffs what their religious beliefs are or should be, Defendants' argument ignores the text of FRFRA and ignores the allegations of Plaintiffs' Complaint.

First, FRFRA defines "exercise of religion" as "an act or refusal to act that is substantially motivated by a religious belief, **whether or not the religious exercise is compulsory or central to a larger system of religious belief**." Fla. Stat. § 761.02(3) (emphasis added). Plaintiffs have plainly alleged that they and their clients hold sincere religious beliefs that same-sex attractions, behaviors, or identity are contrary to the Scripture and that they must resolve such conflicts by aligning attractions, behaviors, and identity to the teachings of Scripture. (VC ¶ 302). ("Plaintiffs and their clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs."); (*id.* ¶ 303) (alleging that Plaintiffs have sincerely held religious beliefs "to provide spiritual counsel and assistance to their clients who seek such counsel"); (*id.* ¶ 304) (alleging that Plaintiffs and their clients' religious beliefs concerning same-sex attractions, behaviors, or identity are "central components of their faith"). It is simply not up to Defendants to tell Plaintiffs what their religious beliefs "require." Instead, they must accept Plaintiffs' allegations, let alone at the motion to dismiss stage.

Second, Defendants' Ordinances substantially burden those practices by forbidding Plaintiffs and their clients from making decisions consistent with their sincerely held religious beliefs. The Ordinances forbid Plaintiffs' clients from seeking, and Plaintiffs from providing, counseling that helps Plaintiffs' clients align their behaviors, attractions or identity with the clients' religious beliefs. As the Florida Supreme Court has held, "a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires." *Warner v. City of Boca*

*Raton*, 887 So.3d 1023, 1033 (Fla. 2004). As Plaintiffs' allegations make plain, the Ordinances **forbid** them from engaging in counseling that is consistent with their and their clients' sincerely held religious beliefs, **compels** them to change their religious beliefs, and **compels** them to act in contradiction to their sincerely held religious beliefs. (VC ¶ 304) ("The Ordinances cause them a direct and immediate conflict with their religious beliefs by **prohibiting** them from offering, referring, or receiving counseling that is consistent with their religious beliefs." (emphasis added)); (*id.* ¶ 305) (alleging that the Ordinances "**compel** them to both change their religious beliefs and to act in contradiction to them" (emphasis added)).

Thus, Plaintiffs have plainly alleged a violation of FRFRA by alleging that they hold sincerely held religious that are substantially burdened by the Ordinances.

## VII.    PLAINTIFFS' HAVE SUFFICIENTLY ALLEGED THAT THE ORDINANCES ARE *ULTRA VIRES*.

Defendants also contend that Plaintiffs fail to state a claim under Article VIII, §2(b) of the Florida Constitution. (City MTD at 16-18; County MTD at 17-18). Defendants are once again wrong.

Defendants' attempt to limit the analysis to whether the State has enacted a specific statute prohibiting a locality from enacting a ban on SOCE counseling ignores the proper question at issue under Article VIII, §2(b). The proper question is whether the State has "preempted **a particular subject area**," not one individual form of counseling. *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880, 886 (Fla. 2010) (emphasis added). Defendants contend that the question should be whether there is any legislative statement expressly prohibiting local governments in the state from "enacting ordinances **prohibiting conversion therapy**." (*See, e.g.*, City MTD at 16 (emphasis added)). The relevant subject area in this case is regulation of mental health professionals, not the outlawing of SOCE counseling. Under the City's logic, a municipality would be empowered to enact any regulation it so desires if the State has not passed minute legislation prohibiting the regulation of a specific act, regardless of whether the statutory scheme regulating a particular **area** is overwhelmingly pervasive. This is not the law.

Here, Plaintiffs have plainly alleged that the State has enacted a pervasive scheme regulating mental health professionals. (VC ¶¶ 274-278). Indeed, Plaintiffs have alleged that the State is the only entity that licenses professionals in the State. (*Id.* ¶ 195). The State licenses mental health counselors, regulates their conduct, and solely controls the disciplinary proceedings against

such professionals. (*Id.* ¶ 274) ("Florida has preempted the field of regulation of mental health professionals through enactment of Florida Statutes, Title XXXII, Chapter 491"); (*Id.* ¶ 275) ("Florida has preempted the field of disciplinary actions for licensed mental health professionals").

This regulatory scheme, which covers all licensed medical and mental health professionals in the State, is unquestionably pervasive and evinces an intent to maintain sole control of licensed professionals in the State. **It is because of this comprehensive regulatory scheme that Defendants are not able to name in discovery – in response to interrogatories – any other mode of therapy, any other professional, or any other profession that Defendants regulate in the same or similar way that they regulate (or ban) SOCE counseling**. *See* Section IV.D., *supra*. Not a single one.

At this stage of the proceedings, Defendants are not permitted to challenge factual allegations to escape review of their unconstitutional and *ultra vires* actions. Plaintiffs' well-pled allegations amply survive the minimal threshold requirements for notice pleading.

## VIII. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF THE PATIENTS' BILL OF RIGHTS AND RESPONSIBILITIES.

Defendants' premature attempt to escape liability under the Florida Patient's Bill of Rights and Responsibilities fairs no better. (City MTD at 18-19; County MTD at 18-19). Defendants contend that Plaintiffs cannot be "health care practitioners" because that term **only** applies to "physicians licensed under chapter 458, osteopathic physicians licensed under chapter 459, or podiatric physicians licensed under chapter 491." (County MTD at 18; City MTD at 19). This argument defies the plain language of the statute. As the statute makes clear,

> a patient has the right to access any mode of treatment that is, in his or her own judgment and the judgment of his or her health care practitioner, in the best interests of the patient, including complementary or alternative health care treatments, **in accordance with the provisions of §456.41**.

Fla. Stat. § 381.026(4)(d)(3) (emphasis added).

Thus, the statutory road map requires an analysis of what the provisions of Section 456.41 offer to a patient seeking such treatment and from whom he may seek such treatment. Section 456.41 answers this question in an abundantly clear manner: "[i]t is the intent of the legislature that **health care practitioners** be able to offer complimentary or alternative health care treatments." Fla. Stat. § 456.61(1) (emphasis added). Thus, if the Patient's Bill of Rights and Responsibilities permits patients to seek complimentary or alternative health care treatments "in

accordance with the provisions of §456.41," Fla. Stat. § 381.026(4)(d)(3), and Section 456.41's plain language explicitly states that a client has the right to receive such treatment from a "health care practitioner," then there can be no dispute that health care practitioners are included in this analysis. Therefore, to determine exactly what a "health care practitioner" is for purposes of Section 381.026(4)(d)(3) and Section 456.41, and whether Plaintiffs are included in that definition, the Court must determine what Section 456.41 defines as a "health care practitioner." This is an easy task, because, under Section 456.41(2)(b): "[h]ealth care practitioner means any health care practitioner as defined in § 456.001(4)," which includes marriage and family therapists licensed under Fla. Stat. § 491.003(5). Defendants' futile attempts to ignore the plain roadmap laid out by these statutes has no merit and should be rejected.

Defendants also reprise their defunct standing arguments. (County MTD at 18; City MTD at 19). The County concedes, as it must, that Plaintiffs' clients could bring a claim under the statute. (County MTD at 18). Thus, it must retreat to its flawed argument that Plaintiffs may not bring claims on their patients' behalf. As demonstrated in Section III.C., *supra*, this argument falls far short of the mark.

Finally, the County maintains that Count VII fails to state a claim upon which relief can be granted because SOCE is not a "complementary or alternative health care treatment" that is designed to treat a "human disease, pain, injury, deformity, or other physical or mental condition." (County MTD at 19). This argument is fatally flawed for two reasons: (1) it ignores the plain text of the statute, and (2) it ignores the well-pled allegations of Plaintiffs' Complaint.

First, the County's contention ignores the plain text of the statute. The Patient's Bill of Rights and Responsibilities explicitly states that "[a] patient has the right to access **any mode of treatment** that is, in his or her own judgment and the judgment of his or her health care practitioner, in the best interests of the patient, **including** complementary or alternative health care treatments." Fla. Stat. § 381.026(d)(3) (emphasis added). The County appears to contend that "**any mode of treatment**" somehow means **only** "complementary or alternative health care treatments." (County MTD at 19) ("the provisions expressly apply to 'complementary or alternative health care treatment'"). However, "**any mode of treatment**" is not limited in such fashion. Indeed, the term "including" is always intended to be non-exhaustive and is simply used for illustrative purposes. *See, e.g.*, *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application

of the general principle"); *Stansell v. Revolutionary Armed Forces of Columbia*, 704 F.3d 910, 915 (11th Cir. 2013) ("'includes' is merely illustrative"). Thus, Defendants' attempts to circumscribe the options available to Plaintiffs' clients by treating an illustrative example as an exhaustive definition fails as a matter of black letter law.

Second, even a cursory reading of Plaintiffs' Complaint demonstrates that Plaintiffs believe SOCE counseling is an effective mechanism to help a willing client struggling with unwanted same-sex attractions, behaviors, or identity, and that Plaintiffs have seen the benefits of such counseling. (VC ¶¶ 129, 130, 132, 133, 147, 150, 152). Plaintiffs believe that SOCE counseling is in the best interest of those clients who voluntarily seek it and whose goals and desires for counseling are to change. (*Id.* ¶¶ 129, 145, 146). Despite those plain allegations, the County contends that SOCE counseling still fails to constitute an alternative or complementary health care treatment because "unwanted same-sex attractions, behaviors, or identity is not a human disease, pain, injury, deformity, or other physical or mental condition." (County MTD at 19). This, again, ignores the allegations of Plaintiffs' Complaint. In its zealous attempt to attribute false motives to Plaintiffs in their SOCE counseling, the County cannot see what Plaintiffs' counseling actually is. The premise that SOCE counseling should be prohibited because "homosexuality is not an illness," ignores the point. (VC ¶ 79). In fact, when a client seeks SOCE counseling from Plaintiffs, such counseling is focused on "treat[ing] the **anxiety** and **confusion** that arises from a client's **unwanted** same-sex attractions, behaviors, or identity." (VC ¶ 78). The **anxiety**, **confusion**, **distress**, or other emotional problems that arise from the conflict the client feels over their unwanted same-sex attractions, behaviors, or identity are mental conditions, and those conditions are what Plaintiffs treat in SOCE counseling. (VC ¶¶ 78-82). Thus, the County's contention is plainly in error, and Plaintiffs' well-pled allegations state a claim upon which relief can be granted.

## IX. IF THIS COURT FINDS PLAINTIFFS' ALLEGATIONS LACKING IN ANY RESPECT, IT MUST GRANT THEM LEAVE TO AMEND.

Finally, should this Court determine that Plaintiffs' Complaint is lacking in any respect, which Plaintiffs do not concede, Plaintiffs should be given the opportunity to amend their Complaint to address any deficiencies. Indeed, Fed. R. Civ. P. 15 permits a party to amend its pleading and instructs that "[t]he court should **freely give leave** when justice so requires." Fed. R. Civ. P. 15(a)(2) (emphasis added). Binding precedent dictates that Plaintiffs must be given at least one opportunity to amend their Complaint. As the Eleventh Circuit has held, "the rule in this

27

circuit" is that "a plaintiff **must** be given at least one chance to amend the complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (emphasis added); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (same); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (holding that Rule 15 "evinces a bias in favor of granting leave to amend"). Thus, should this Court find any deficiency in Plaintiffs' Complaint, Plaintiffs respectfully request leave to address it.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Respectfully submitted,

/s/ Horatio G. Mihet
Mathew D. Staver (FL Bar 0701092)
Horatio G. Mihet (FL Bar 026581)
Roger K. Gannam (FL Bar 240450)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2018, I caused a true and correct copy of the foregoing to be filed electronically with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic notification system.

/s/ Horatio G. Mihet
Horatio G. Mihet
*Attorney for Plaintiffs*

28