UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  18-CV-80771-RLR

ROBERT OTTO, and
JULIE HAMILTON,

     Plaintiffs,

vs.

CITY OF BOCA RATON, FLORIDA, and
COUNTY OF PALM BEACH, FLORIDA,

     Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE EXPENSES AND COSTS  [ECF No. 221]

Plaintiffs Dr. Robert Otto and Dr. Julie Hamilton move for prevailing party costs, including reasonable attorneys' fees and non-taxable expenses, as authorized by 42 U.S.C. §1988.[1] They request $2,225,018 in fees and $12,864.30 in expenses and costs. ECF No. 221. Defendants Palm Beach County ("County") and City of Boca Raton ("City") do not oppose Plaintiffs' entitlement to prevailing party costs. Both dispute the amount of compensable costs. The City also argues that any award should be allocated *pro rata* between the Defendants.

---

[1] Unless otherwise specified, the term "costs" as used in this Report and Recommendation includes all items recoverable under Section 1988. "Attorneys' fees" and "non-taxable expenses" are subsets of "costs." *See Marek v. Estate of Chesny,* 473 U.S. 1, 9 (1985) (attorneys' fees); *Dowdell v. City of Apopka,* 698 F.2d 1181 (11th Cir. 1983) (expenses).

The County suggests the Court award fees in the range of $705,000 to $710,000 and expenses of $3,362.51. ECF No. 228. The City suggests an award of $497,275 in fees, with 3/7 ($213,132.07) allocated to the City and the balance allocated to the County. ECF No. 229. The City argues that the requested expenses should either be denied in full or should be allocated *pro rata* between the Defendants, with the City being taxed for 3/7 of the compensable expenses. *Id*.

For the following reasons, it is recommended that Plaintiffs be awarded $736,887.45 in costs under §1988 consisting of $736,227.53 in attorneys' fees and $659.92 in non-taxable expenses. Those costs should be shared equally by the Defendants.

## PROCEDURAL HISTORY

Plaintiffs brought this lawsuit to challenge the legality of ordinances enacted by the Defendants that prohibited sexual orientation change efforts ("SOCE"). In their Complaint and First Amended Complaint, they asserted federal claims under 42 U.S.C. §1983 and state law claims. ECF Nos. 1 ¶18; 182 ¶21. The District Court denied a preliminary injunction but stayed the proceedings while Plaintiffs took an interlocutory appeal. The Eleventh Circuit panel reversed and remanded with instructions to enter a preliminary injunction. 981 F.3d 854 (11th Cir. 2020). Rehearing *en banc* was denied. 41 F.4th 1271 (11th Cir. 2022). The mandate issued on July 29, 2022, and the stay was lifted. ECF Nos. 149, 168. After six months more litigation, the Defendants made Offers of Judgment pursuant to Federal Rule of Civil

Procedure 68(a), which both Plaintiffs accepted. ECF Nos. 196, 203 (collectively "the Offers").

On April 6, 2023, after the Plaintiffs filed Notices accepting the Offers, a Final Judgment was entered. ECF No. 211. Plaintiffs timely moved for prevailing party costs. ECF No. 221.[2]

## LEGAL PRINCIPLES

I.      *42 U.S.C. §1988*

Title 42, United States Code, Section 1988 is an exception to the general rule in American litigation that each party bears its own attorney's fees. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). As relevant here, it says:

> In any action or proceeding to enforce a provision of section[] 1983 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. §1988(b). Appellate attorneys' fees are recoverable under Section 1988. *Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005).

The party seeking fees bears the burden of proving entitlement and amount. *Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). "The proper approach in applying a federal fee-shifting statute like § 1988 is to take a reasonable number of hours and multiply it by a reasonable fee and thereby create

---

[2] Plaintiffs separately moved for taxable costs under 28 U.S.C. §1920. Judge Rosenberg has already ruled on that request. ECF No. 232.

a 'lodestar.'" *Johnston v. Borders*, 36 F.4th 1254, 1282 (11th Cir. 2022) (citations omitted). In evaluating the lodestar, the trial court must consider the so-called *Johnson* factors:

> (1) the time and labor required, (2) the novelty, complexity, and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly; (4) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (5) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (6) whether the fee is fixed or contingent (7) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client; (8) the amount involved and the results obtained, (9) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

The United States Supreme Court recognizes that trial courts have substantial discretion and flexibility in awarding Section 1988 fees:

> We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley [v. Eckerhart],* 461 U.S. [424] at 437, 103 S.Ct. 1933 [(1983)]. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

A. <u>Reasonable Hourly Rate</u>

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable

skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). "Generally, the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed . . .'" *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013 WL 6238647, at *12 (S.D. Fla. Dec. 3, 2013) (J. Goodman) (quoting *Barnes*, 168 F.3d at 427). The fee applicant bears the burden of justifying the claimed market rate. *See Barnes*, 168 F.3d at 427.

The Court must consider "what a reasonable, paying client would be willing to pay," bearing in mind "*all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees," including the *Johnson* factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively") (emphasis in original). In addition, the Court may consider prior hourly rates awarded to other attorneys of similar experience in the community and also the Court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."). *See also Norman*, 836 F.2d at 1303 ("[t]he court . . . is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees . . .").

B. <u>Hours Reasonably Expended</u>

The fee applicant must adequately document the hours reasonably expended on the litigation. *Barnes*, 168 F.3d at 427. "[C]ounsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (citations and quotations omitted). For example, counsel cannot rely on block billing. "'[B]lock billing' . . . is the disfavored practice of including multiple distinct tasks within the same time entry without specifying the amount of time spent on each task." *TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *11 (S.D. Fla. Apr. 11, 2018) (J. Valle) (finding a fee reduction appropriate where counsel's practice of block billing made it "impossible" for the court to ascertain how much time was spent on each task).

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)).

6

## II.     Lodestar Multiplier

"There is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). Superior attorney performance can justify an upward adjustment of the lodestar in "rare" and "exceptional" circumstances where there is "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). These circumstances include (1) if the hourly rate used to calculate the lodestar "does not adequately measure the attorney's true market value," (2) there has been an "extraordinary outlay of expenses" in "exceptionally protracted" litigation, (3) there has been an "exceptional delay in the payment of fees." *Id.* at 554-55. Nevertheless, "the lodestar calculation will in virtually every case already reflect all indicia of attorney performance relevant to a fee award." *Id.* at 561 (Thomas, J., concurring) (noting in 2010, "We have never sustained an enhancement of a lodestar amount for performance."); *Id.* at 560 ("[E]xtraordinary cases are presented only in the rarest circumstances.") (Kennedy, J., concurring).

<u>DISCUSSION</u>

Plaintiffs summarize their fee request as follows:

| Name | Hourly Rate | Hours Worked | Amount |
|------|------------:|-------------:|-------:|
| Richard Mast | $ 625 | 17.20 | $      10,750.00 |
| Mary McAlister | $ 700 | 30.70 | $      21,490.00 |
| Daniel Schmid | $ 625 | 464.20 | $    290,125.00 |
| Horatio Mihet | $ 700 | 710.80 | $    497,560.00 |
| Roger Gannam | $ 700 | 653.80 | $    457,660.00 |
| Mathew Staver | $ 760 | 119.20 | $      90,592.00 |
| Paralegal | $ 150 | 48.80 | $        7,320.00 |
| Law Clerk | $ 150 | 230.10 | $      34,515.00 |
| | **TOTAL** | **2,274.80** | **$ 1,410,012.00** |
| **TOTAL WITH 1.5 MULTIPLIER** | | | **$ 2,115,018.00** |

ECF No. 221 at 3. Aside from the billing records themselves (ECF Nos. 221-2 and 221-3), Plaintiffs' only evidence to support their fee request is the Declaration of Horatio G. Mihet. ECF No. 221-1.

The following discussion addresses the following eight topics: (1) whether Plaintiffs waived their right to recover costs accrued after the Offers were served, (2) whether Plaintiffs can recover attorneys' fees and expenses for traveling to Palm Beach County, (3) Defendants' challenges to specific categories of billing entries; (4) what hourly rates are reasonable; (5) the lodestar computation, (6) whether a lodestar multiplier should be applied, (7) Defendants' objections to the non-travel expenses, and (8) allocation of costs between Defendants.

I.      *Fees and Costs Incurred After the Offers of Judgements ("Fees-on-Fees")*

Federal Rule of Civil Procedure 68(a) allows a defendant to make an offer of judgment. It says:

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a). When the plaintiff has brought a claim under 42 U.S.C. §1983, reasonable attorneys' fees are a "cost" for purposes of Rule 68. *Marek v. Estate of Chesny*, 473 U.S. 1, 9 (1985). A civil rights plaintiff can waive its right to Section 1988 costs as part of a settlement. *Evans v. Jeff D.*, 475 U.S. 717, 737–38 (1986); *see also Pottinger v. City of Miami*, 805 F.3d 1293, 1299 (11th Cir. 2015) (plaintiff can "through a settlement or consent order agree[] to compromise his right to pursue subsequent fees.") (citing *Maloney v. City of Marietta*, 822 F.2d 1023, 1027 (11th Cir. 1987)).

All parties agree that a Rule 68 offer of judgment is treated as a contract and is interpreted using traditional contract principles. ECF Nos. 228 at 22; 229 at 229 at 12-13; 235 at 21. "The cardinal rule of contract construction is that when the language of the contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with its plain meaning." *Columbia Bank v. Columbia Developers, LLC*, 127 So. 3d 670, 673 (Fla. 1st DCA 2013) (citation omitted). If a term in an offer of judgment is ambiguous, that ambiguity must be resolved against the offeror. *Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1244 (11th Cir. 2002). But, claims of ambiguity must be carefully considered:

> Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation. However, a true ambiguity does not exist merely because a document can possibly be

interpreted in more than one manner. Further, *when a document's language is clear, a court cannot indulge in construction or interpretation of its plain meaning.*

*Lambert v. Berkley S. Condo Ass'n*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996) (internal citations omitted) *quoted in and emphasis added by Universal Med. Inv. Corp. v. Mike Rollison Fence, LLC*, 331 So. 3d 242, 246 (Fla. 1st DCA 2021). "[F]anciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations." *American Medical Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 4th DCA 1984) *quoted in Universal Med. Inv. Corp*, 331 So. 3d. at 246 (adding brackets).

On January 27, 2023, the City served Rule 68(a) offers of judgment on each Plaintiff. The City's Offers said, in relevant part:

> The City hereby offers to allow entry of judgment against it as to [Plaintiff] in the amount of [($50,000)/($25,000)], plus the City's pro rata share of [Plaintiff's] costs (including reasonable statutory attorney's fees when deemed to be a component of costs such as under 42 U.S.C. §1988, as determined by the Court) accrued to date for all of [Plaintiff's] claims for relief.

ECF Nos. 196-1, 196-2. On February 9, 2023, the Plaintiffs accepted the City's Offers by filing a Notice with the Court. ECF No. 196.

On February 22, 2023, the County served Rule 68(a) offers of judgment on each Plaintiff. The County's Offers said in relevant part:

> The County hereby offers to allow entry of judgment against it as to [Plaintiff] in the amount of fifty thousand dollars ($50,000), plus the County's pro rata share of [Plaintiff's] costs (including reasonable statutory attorney's fees when deemed to be a component of costs such as under 42 U.S.C. §1988, as determined by the Court) accrued to date for all of [Plaintiff's] claims for relief.

ECF Nos. 203-1, 203-2. On March 3, 2023, Plaintiffs accepted the County's Offers by filing a Notice with the Court. ECF No. 203.

All parties agree that the Offers entitle Plaintiffs to whatever reasonable costs they accumulated prior to the Offers being served. They dispute whether Plaintiffs can recover costs accrued after the dates of the Offers ("fees-on-fees").

Although they argue it did not happen here, Plaintiffs do not appear to dispute that, as a matter of law, a plaintiff can waive its right to fees-on-fees. *See* ECF No. 235 at 22 (if the Offers had said "accrued to the date of this offer" they would have "set a clear and unambiguous limitation on fees incurred after the dates of the offers."). In any event, Plaintiffs have not cited any authority for the principle that the parties cannot agree, as a condition of an offer of judgment, that the plaintiff waives its right to fees-on-fees. The lack of authority is not surprising. As noted above, the United States Supreme Court has said that a plaintiff can waive its right to *all* costs; as a matter of logic, it then follows that a plaintiff can waive its right to a subset of costs, such as fees-on-fees. This conclusion is also consistent with the plain language of Rule 68, which allows a defendant to offer, and a plaintiff to accept, a judgment "on specified terms."

Defendants argue that the clear and unambiguous terms of the accepted Offers waived Plaintiffs' statutory right to fees-on-fees because the Offers expressly limited themselves to costs "accrued to date." ECF Nos. 228 at 22; 229 at 12-13. Specifically, the County challenges Plaintiffs' Counsel's claim to 105 hours that were worked on or after February 22, 2023. ECF Nos. 228 at 22; 228-12. The City challenges an

additional 64.5 hours that were worked after January 27, 2023, and before February
22. ECF Nos. 229 at 12; 229-3 at 103-110. Plaintiffs have not disputed these hourly
computations.

Plaintiffs argue that the terms of the Offers do not exclude fees-on-fees because
the Offers "contain at least four flaws and ambiguities." ECF No. 235 at 21. Plaintiffs
say: (1) "the Offers expressly provide that Plaintiffs may seek 'reasonable statutory
attorney's fees when deemed to be a component of costs, such as under 42 U.S.C.
§ 1988, as determined by the Court," *id.*; (2) the Offers only apply to costs "accrued to
date for all of [Plaintiff's]s [sic] claims for relief," *id.* (first brackets in original), which
is ambiguous as to whether the cut-off is the date of the offer, the acceptance, or the
judgment; (3) the phrase "reasonable attorney's fees when deemed to be a component
of costs such as under 42 U.S.C. 1988, as determined by the Court" is inconsistent
with Defendants' assertion that reimbursable fees stopped accruing when the offer
was made, *id.* at 22; and (4) "Defendants' Offers incorrectly lump 'costs … for all of
[Plaintiff's] claims for relief' to include 'reasonable statutory attorney's fees." *Id.* at
23 (ellipses in original). Plaintiffs cite multiple cases where fees-on-fees were awarded
after a Section 1983 plaintiff accepted a Rule 68 offer of judgment. ECF No. 235 at
20-21.

Plaintiffs also argue, as a matter of public policy, that the Court should not
interpret the Offers to preclude fees-on-fees because doing so would be "unduly
harsh," would set a poor precedent, and would undercut Congress' purpose in passing

§1988. *Id.* at 24. Therefore, they argue, the interests of justice require that they be awarded fees-on-fees. *Id.*

I agree with Defendants that the Offers unambiguously excluded fees-on-fees. Shorn of parentheticals, each Offer says that judgment will be entered for a lump sum amount to each Plaintiff "plus the [payor's] pro rata share of Plaintiffs' costs . . . accrued to date for all of [each Plaintiff's] claims for relief." So, structurally, the Offer clearly defined what can be recovered (costs related to all of Plaintiffs' claims for relief) and then set the time period for which they can be recovered (accrued to date).

Contrary to Plaintiffs' arguments, the phrases "to date" and "accrued to date" are not ambiguous. According to the Oxford English Dictionary, the idiom "to date" means "to the present time or moment; up to now." https://www.oed.com/search/dictionary/?scope=Entries&q=to%20date&tl=true; *see also, e.g.,* To Date, **Random House Dictionary of the English Language** (2d ed. 1987) ("to date" means "up to the present time; until now."); *see also Morjal v. City of Chicago*, 774 F.3d 419 (7th Cir. 2014).[3] Plaintiffs have not shown that this term as used in the Offers is reasonably susceptible to any alternative interpretation.

---

[3] In *Morjal*, the plaintiff accepted an offer of judgment that called for a fixed payment "plus reasonable attorney's fees and costs accrued to date in an amount to be determined by the Court." *Id.* The District Court held that this language waived plaintiff's right to fees-on-fees. The Court of Appeals agreed, but found that the waiver was not enforceable insofar as the defendants violated the offer of judgment by acting unreasonably in litigating the amount of attorney's fees and costs. 774 F.3d at 423 ("The defendants' arbitrary, improper challenges failed to comply with their obligation to 'allow judgment to be taken against them' for reasonable attorneys' fees, and therefore were not subject to the limitations on fees in that agreement."). Unlike in *Morial*, Plaintiffs, here, have not made this argument that the Offers waived fees-

Plaintiffs concede that if the Offers had said "accrued to the date of this offer" they would have "set a clear and unambiguous limitation on fees incurred after the dates of the offers." ECF No. 235 at 22. There is no ambiguity between "accrued to date" (the language of the Offers) and "accrued to the date of this offer" (language Plaintiffs concede would be clear). Both are equally clear, particularly in the context of the Offers. Under Rule 68, the defining date is when the offer is served on the opposing party. Service must occur at least 14 days before the trial. Fed. R. Civ. P. 68(a). The recipient has 14 days "after being served" to formally accept the offer. *Id.* The offer must include "the costs *then* accrued." *Id.* Read in context, the word "then" in Rule 68(a) can only be referring to the date when the offer is served, that is, "to date" as of the service of the offer. Finally, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs *incurred after the offer was made."* Fed. R. Civ. P. 68(d). So, Rule 68 separates costs incurred before the offer is served from costs incurred after service.

The Defendants' Offers unambiguously gave Plaintiffs the minimum required by Rule 68(a) – a judgment plus costs "then accrued." The parties were free to negotiate whether Defendants would agree to pay costs accrued thereafter. By accepting the Offers as drafted, Plaintiffs waived their right to later-accrued costs. The Offers were not ambiguous because they lacked words "of this offer" or similar

---

on-fees but Defendants have forfeited their right to enforce the waiver.

language that reiterated that the Offer incorporated only costs accrued as of the date of the Offers.

Further contextual evidence that the phrase "to date" clearly refers to the date an Offer was served is that the only date in each Offer document is in the certificate of service. As discussed above, the service date is the operative date under Rule 68. Each Offer said "to date" and listed only one date — the date of service. The service date is the only logical date referenced by the phrase "accrued to date" in the Offer.

Plaintiffs argue that the parenthetical "(including reasonable statutory attorney's fees when deemed to be a component of costs such as under 42 U.S.C. §1988, as determined by the Court)" creates an ambiguity or otherwise gives them the right to recover fees-on-fees. I disagree. The natural reading of this language is that the parenthetical clarifies that the reimbursable costs contemplated by the Offer include whatever statutory attorneys' fees the Court awards. That is, the *category* of reimbursable costs include court-awarded attorneys' fees. The phrase immediately after the parenthetical — "accrued to date" — limits the *time period* for which those costs can be reimbursed. The parenthetical does not contradict the rest of the Offer.

To summarize, whether Plaintiffs waived their right to fees-on-fees is a fact-specific inquiry that turns on the contractual terms of the Offers. Here, the unambiguous terms of the Offers evince a waiver.[4]

---

[4] Alternatively, even if I accept Plaintiffs' argument that the term "accrued to date" is ambiguous among the date of the offer, the date of acceptance, or the date of the judgment, it is not clear why construing this alleged ambiguity against Defendants allows Plaintiffs to recover all fees-on-fees. Plaintiffs concede that if the Offers had said "accrued to the date of this offer" they would have "set a clear and unambiguous

15

The cases that Plaintiffs cite do not compel a different conclusion. In *Laswell v. City of Johnston City,* 436 F. Supp. 2d 974 (S.D. Il. 2006), the plaintiff accepted an offer of judgment. The defendant objected to fees-on-fees. The Court overruled that objection, noting "courts have consistently held that plaintiffs are entitled to reasonable attorney's fees for time spent establishing and litigating §1988 fees." *Id.* at 981. But, there is no indication in the *Laswell* published opinion that the defendant alleged the plaintiff had waived its right to fees on fees.

In *Eccles v. City of Lewiston Library Bd. of Trustees,* the plaintiff accepted an offer of judgment for $200,000 "exclusive of reasonable attorney's fees and costs incurred by Plaintiffs in furtherance of their claims as of the date of this offer, as determined by the Court." 2021 WL 277196 at *6 (D. Idaho Jan. 27, 2021). After accepting the offer, Plaintiff incurred additional fees and costs. Defendant argued that Plaintiff had waived the right to these fees. The court interpreted the clause "as of the date of this offer" to modify the term "claims." It held that Plaintiff could recover fees and costs (including post-acceptance fees) if those fees were related to claims pending as of the date of the offer. The judge noted, "had the offer of judgment limited 'reasonable attorney's fees and costs incurred by the Plaintiffs' to 'the date of this offer,' the offer of judgment would likely constitute a clear and unambiguous

---

limitation on fees incurred after the dates of the offers." ECF No. 235 at 22. By the same logic, if the allegedly ambiguous term is construed to mean "accrued to the date of judgment" it would waive fees-on-fees after that date.

limitation of any fees incurred after the date of the offer." *Id.* at *7. Here, the Offers contained the kind of language that the *Eccles* judge would have found binding.

In *Walker v. United Fin. Serv.*, No. 10-C-180, 2010 WL 4942008, at *5 (E.D. Wis. Nov. 30, 2010), the offer of judgment said defendant "serves upon plaintiff's counsel this offer of settlement for the sum of $1,000.00 plus reasonable attorney fees and costs." The offer lacked an express time limitation, so it was deemed ambiguous and construed against the defendant. For that reason, the court held that plaintiff could recover post-offer attorneys' fees as a prevailing party under the FDCPA, including fees-on-fees. Here, the Offers are time-limited by the term "to date."

In *E.E.O.C. v. Hamilton Standard Div., United Techs. Corp.*, 637 F. Supp. 1155, 1156 (D. Conn. 1986), the plaintiff rejected the defendant's offer of judgment. The case was later settled. The defendant argued that Rule 68 prevented the plaintiff from recovering attorneys' fees for any services after the date of the offer of judgment. The court found that the unaccepted offer of judgment had no effect on plaintiff's entitlement to statutory attorneys' fees. Here, the Offers were accepted and are therefore a binding contract.

In *Williams v. Greifinger*, No. 95 CIV. 0385 (JSM), 1999 WL 239684, at *2 (S.D.N.Y. Apr. 23, 1999), the court allowed plaintiff's counsel to recover fees for time expended after the offer of judgment. It said, "In the circumstances of this case, it would be inappropriate to apply Rule 68 to deny plaintiff's counsel fees for time which they spent after the offer was made." *Id.* One of those circumstances was that "the

offer did not on its face indicate whether it included attorney's fees." *Id*. Here, the offers unambiguously allowed for costs (including attorneys' fees) but only "to date."

Finally, I reject Plaintiffs' public policy and "interests of justice" arguments. First, "When a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." *Snyder v. Fla. Prepaid Coll. Bd.*, 269 So. 3d 586, 592 (Fla. 1st DCA 2019) (citation omitted). Second, Plaintiffs ignore countervailing policies, such as Rule 68's goal of encouraging settlements and a party's freedom of contract. *See Duncanson v. SJ Wathen Bloomington, LLC*, No. 14-CV-704-ORL-40KRS, 2018 WL 11354981, at *2 (M.D. Fla. Aug. 23, 2018) ("The purpose of Rule 68 is to encourage the settlement of litigation.") (quoting *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 349-350 (1981)); *see also Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000) ("A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain.") (citation omitted). As part of Rule 68, Congress has allowed a party to waive fees-on-fees. This Court cannot overturn that policy decision.

For all these reasons, Plaintiffs have waived any right to recover Section 1988 costs from the City for any time after January 27, 2023, and from the County for any time after February 22, 2023. Plaintiffs did not contest Defendants' calculation of 169.5 hours for fees-on-fees, so I accept that number.

18

II.     *Travel Time and Expenses*

Arguing that Plaintiffs have not shown a lack of competent attorneys in South Florida willing and able to handle this case, the City challenges 86.3 hours associated with Plaintiffs' Counsel's travel time to Palm Beach County. ECF No. 229 at 13-14. For the same reason, the City objects to the entire $7,441.58 in requested non-taxable travel costs. ECF No. 229 at 15-16. The County objects to non-taxable travel expenses for (1) Mr. Gannam to attend depositions in Palm Beach County in which he did not participate as counsel ($1,158.90), and (2) multiple attorneys travel to West Palm Beach for a discovery hearing ($649.64).[5]

Plaintiffs reply that their travel time and fees were reasonable and necessary because no local firms had experience litigating counseling ban cases. ECF No. 235 at 2-5, 19:

> [A]ll counseling ban challenges in the country since 2012 have been filed or taken over by one of only three national law firms, and none of them has an office in Palm Beach County. And, at the time this case was filed, only Liberty Counsel (three cases) and PJI (one case) had such experience. Liberty Counsel, headquartered in the Orlando area, is the only such firm in Florida, and is the closest to Plaintiffs. Thus, the travel time [and travel expenses] of Liberty Counsel's attorneys . . . was both reasonable and necessary, and is thus fully compensable.

ECF No. 235 at 19. Plaintiffs are not addressing the correct issue. The proper and relevant question is whether local lawyers would have taken on the case and litigated it effectively, despite not having prior experience. Plaintiffs have not offered evidence

---

[5] The County also objects to a $1,610.62 non-taxable expense for multiple attorneys attending the Eleventh Circuit oral argument. ECF No. 228 at 28. I address this objection below.

that competent local counsel was unavailable. I take judicial notice that multiple Fortune 100 law firms have offices in Palm Beach County. There is also a chapter of the ACLU and the Christian Legal Society. Notably, there is no evidence in the record that either Plaintiff unsuccessfully tried to hire local counsel.[6] In short, Plaintiffs have not met their burden of showing that a competent local lawyer would have been unwilling to litigate this cutting-edge constitutional law issue.

Plaintiff's Counsel's travel time and travel expenses to West Palm Beach should not be awarded.

### III.   County's Objections to Requested Hours Worked

#### A.  Billing Judgment

The County argues that Plaintiffs' Counsel improperly seeks reimbursement for 11.6 hours for time entries denoted "exercise billing judgment." ECF No. 228 at 14; *see* ECF No. 221-2 at 84-85. The County cites several cases where similar time entries were disallowed. ECF No. 228 at 14 n. 4. Plaintiffs' Reply does not respond to this argument, so it is conceded. *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (A party's "failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."), *cited in Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014); *see also Campbell v. Boies, Schiller,*

---

[6] I note that the County alleges, "It would appear from Plaintiff's counsel's billing records that this was not a case where the named Plaintiffs reached out to counsel. Rather, it seems that counsel sought out and researched potential clients to serve as plaintiffs." ECF No. 228 at 23; *see* ECF No. 221-2 at 1 (10/27/17 billing entry for "research potential clients."). Plaintiffs did not respond to this assertion. Nevertheless, it is irrelevant to my analysis whether Plaintiffs found counsel, or counsel found Plaintiffs.

*Flexner LLP*, 543 F. Supp. 3d 1334, 1341 (S.D. Fla. 2021) (J. Moore) (failure to address claim constitutes abandonment).

The County also argues that Plaintiffs' Counsel improperly billed 1.3 hours for drafting and sending a one-page, five-paragraph settlement demand email on August 17, 2022. ECF No. 228 at 14-15; *see* ECF No. 228-2. The billing records for Mr. Mihet show .6 hours on August 17, 2022, to "draft and send revised settlement demand to County and City." ECF No. 221-2 at 70. Mr. Schmid's billed .7 hours that day for a block of activities that included "review email correspondence and discussion with opposing counsel from HGM regarding same." *Id*. Plaintiffs' Reply does not respond to this argument, so it too is conceded. *Kramer*, 306 F. Supp. 2d at 1221.

Because Plaintiffs have failed to meet their burden to explain why these 12.9 hours were reasonably and necessarily incurred, I find that a fee reduction is appropriate.

B. Drafting Pleadings

The County next argues it was excessive for Plaintiffs' Counsel to bill 105 hours for drafting the Complaint and Preliminary Injunction motion. ECF No. 228 at 15-17. The County argues these pleadings were materially identical to pleadings that had been filed in the *Vazzo* litigation "only 2 months before Plaintiffs' counsel started drafting their Complaint and PI motion here." *Id*. at 15. The County says that only 10-15 hours should have been sufficient to draft the pleadings. *Id*. at 17. Plaintiffs argue that this case presented unique issues, including the need to develop Rule 11-compliant evidence of standing and injury. ECF No. 235 at 15-16. Having reviewed the underlying pleadings and given the legal and factual issues being pled, I disagree

21

that only 10-15 hours would have been sufficient to draft them. Nevertheless, Plaintiffs have not shown that 105 hours was necessary. The fee award should be reduced to reflect this excessive billing.

    C. <u>Multiple Lawyers at Depositions</u>

The County objects that Plaintiffs' Counsel is seeking 152.9 hours for Mr. Mihet and Mr. Gannam to both prepare for, travel to, and attend depositions of Dr. Otto, Dr. Hamilton, the County's representative(s), the City's representative(s).[7] ECF No. 228 at 17.[8] Plaintiffs' Counsel responds that each lawyer made a distinct contribution, so having both attend was reasonable and necessary, particularly given the voluminous document discovery and compressed discovery schedule that preceded the preliminary injunction hearing.

I accept Plaintiffs' argument that having multiple attorneys prepare each other, and the Plaintiff-deponents, was reasonable and necessary under the circumstances. It was also reasonable to have two lawyers participate in taking the opposing parties' depositions. I also find that the time billed for these tasks was reasonable. However, Plaintiffs have not shown why it was necessary to have two attorneys present to defend the depositions of Dr. Otto and Dr. Hamilton. Under the Federal Rules of Civil Procedure and this Court's Local Rules, counsel defending a

---

[7] The County's Motion references Helene Hzvid, Shayna Ginsburg, and Michael Woika. ECF No. 228 at 17. The billing records say "deposition of City" and "deposition of County" without identifying the witness(es). ECF No. 228-9.

[8] I have addressed the objection to travel time and expenses above.

deposition has a limited role. *See, e.g.,* Fed. R. Civ. P. 30(c)(2). Accordingly, a partial fee reduction that accounts for the duplicative time billed by Mr. Gannam to attend Dr. Otto and Dr. Hamilton's depositions is appropriate.

D.  Oral Argument Preparation

The County next argues that 124 hours to prepare for the Eleventh Circuit oral argument was excessive. ECF No. 228 at 17-18; *see* ECF No. 228-10. Plaintiffs respond that the "nature, complexity, and relative novelty of the constitutional claims" warranted this level of preparation. ECF No. 235 at 17. They also note that numerous amicus briefs were filed and had to be reviewed. *Id*. It is reasonable that Plaintiffs' Counsel would have spent substantial time preparing for the oral argument. But, Mr. Mihet's Declaration does not offer sufficient *facts* to adequately explain why 124 hours of billable time – which equates to almost 16 full 8-hour days – was reasonably incurred as necessary to prepare for oral argument.[9] I find that Plaintiffs' Counsel's time spent on this task was excessive and the fee award should be reduced for this reason.

E.  Block Billing

The County next argues that 592.5 hours should be stricken because of block billing. ECF No. 228 at 18; *see* ECF No. 228-11. Plaintiffs do not dispute that the billing records contain single entries that document multiple tasks. ECF No. 221-1 ¶15 ("Some individual time entries group together multiple sub-tasks without specific

---

[9] Notably, these hours do not include time spent researching and drafting the appellate briefs, but rather distinct time spent preparing for oral argument after the briefs were submitted.

time allocations, but only where such sub-tasks are closely related and therefore appropriately billed as one task."). They argue that "the grouped tasks all relate to the application of the County's counseling ban ordinance to the Plaintiff Julie Hamilton. None of the tasks is unrelated to any other." ECF No. 135 at 14 (citing *DJ Lincoln*, No. 20-CV-14159, 2022 WL 4287640 at *9 (S.D. Fla. July 28, 2022) (J. Reinhart).

Plaintiff's argument misconstrues the problem with block billing. It is not sufficient that the tasks were related to the representation; each individual task must also be necessary to the representation. Without sufficiently-detailed individualized billing records, the Court cannot evaluate necessity. Here, neither the billing records nor Mr. Mihet's Declaration adequately justify all of the block-billed time.

Defendants also argue that block-billed entries incorporate "non-compensable clerical activity, such as filing documents or preparing exhibits . . . vague descriptions such as 'attention to' (21 entries) and 'consider strategy' (29 entries)" and excessive strategy sessions — "121 block billed entries include 'discuss with LC team' or 'discuss with legal team.'" ECF No. 228 at 19 (citing ECF No. 228-11). Plaintiffs do not reply to these specific examples.

For all these reasons, Plaintiffs have not justified all of the time that was blocked billed. A fee reduction for block billing is therefore appropriate.

F. <u>Vague Time Entries</u>

The County next argues that Plaintiffs' Counsel should not be reimbursed for time entries related to "considering strategy", paying "attention to," "researching," "drafting," and "preparing" without further explanation. ECF No. 228 at 21. Many of

these entries overlap with the block billed entries discussed above. Nevertheless, because Plaintiffs have not offered evidence to explain why all of this work was necessary to their representation, these entries likewise justify a reduction in compensable hours.

G. <u>Clerical Tasks</u>

The County challenges Plaintiffs' request for time spent on tasks such as "preparation of exhibits, filing documents, scheduling, reviewing their own time records, and contacting the court for status updates." ECF Nos. 228 at 22 n.6; 228-13. The County submitted a summary exhibit listing 171.7 hours titled "Attorneys Billing For Clerical/Secretarial Work." ECF No. 228-13. But, as Plaintiffs point out, some of the time entries in the exhibit were for non-clerical tasks, such as document drafting and revising initial disclosures. *Id.*

Plaintiffs further respond that the Court's electronic filing requirements justify attorneys performing otherwise clerical tasks. ECF No. 235 at 19 ("Indeed, electronically filing a pleading or motion is as natural and appropriate for an attorney as signing the pleading or motion."). I disagree. Attorney time is compensable under Section 1988 only if it is reasonable and necessary to representing the client. Courts have long held that clerical tasks are not compensable. That being said, I agree with Plaintiffs that an entire time entry should not be stricken if only a portion of it involves a non-compensable clerical task. Accordingly, a reduction of hours based on time spent on clerical tasks, rather than a reduction based on entries that include clerical tasks, is appropriate.

H. <u>Misc. Conceded Objections</u>

The County argues that the following billable time is not compensable:

- 4.1 hours spent identifying potential plaintiffs is not compensable. ECF No. 228 at 23-24.

- 17.9 hours for counsel and their staff to become familiar with the Local Rules is not compensable. ECF No. 228 at 24.

- 5.2 hours interacting with *amici*. ECF No. 228 at 24-25.

The County's response to the Motion cites authorities supporting why these categories of time should not be reimbursed. In any event, Plaintiffs did not respond to these arguments, so they are conceded. Because the time billed for these tasks is not compensable, a billing reduction is justified.

IV.    *City's Objections to Requested Hours Worked*

The City makes many of the same arguments as the County about excessive time, block billing, billing by multiple attorneys, copying from the *Vazzo* litigation, and clerical tasks. ECF No. 229. The same analysis discussed above applies to these arguments by the City.

V.    *Compensable Hours*

Plaintiffs requested a total of 2,274.80 hours. For the reasons stated above, Plaintiffs have contractually waived their entitlement to fees-on-fees and have failed to meet their burden to show that they are entitled to recover their Counsel's travel time. Therefore, they are not entitled to recover fees for the 169.5 hours that were incurred after they accepted the Offers or fees for the 86.3 hours that were incurred

26

for travel time. Excluding these categorically non-recoverable fees, leaves 2,019 hours of billable time ("Remaining Requested Hours").

Based on my review of the billing records, I find that there should be a 25% across-the-board reduction of Counsel's Remaining Requested Hours due to the billing issues discussed above. "If a court determines that the number of hours is unreasonably high, there are two recognized methods available to the court to reduce the amount of attorneys' fees: 'it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.'" *Grasso v. Grasso*, 2016 WL 8716273, at *4 (M.D. Fla. Oct. 21, 2016) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)). Particularly where the invoices supporting a fee application are voluminous, courts have the discretion "to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions." *Project Vote v. Blackwell*, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (collecting cases); *see also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources.").

Notably, the Eleventh Circuit held in *Bivins* that a court can apply either of the two methods identified above, but not both. 548 F.3d at 1351. The Eleventh Circuit explained that this requirement was necessary to ensure that district courts do not doubly-discount requested hours, as the district court in *Bivins* did, when arriving at the lodestar. *Id*. at 1351-52.

The process employed here does not run afoul of *Bivins'* mandate. I do not conduct an hour-by-hour analysis of Plaintiffs' Counsels' requested hours and then apply an across-the-board cut of those hours. Instead, I first categorically deny Plaintiffs' request to recover travel time and fees-on-fees. I then apply an across-the-board cut to the remaining universe of potentially compensable hours (i.e. the Remaining Requested Hours) to reach a reasonable number of hours. *See Regions Bank v. Kaplan*, No. 12-CV-1837-T-17MAP, 2019 WL 1417851, at *6 (M.D. Fla. Mar. 29, 2019) (adopting Report and Recommendation that first excluded hours spent on claims that were categorically non-compensable pursuant to a contract and then applied an across-the-board reduction to the remaining compensable hours).

Based on this methodology, the lodestar will be calculated based on 1515 reasonable hours of compensable time (75% of 2019 hours), which is 66.6% of the hours requested in the Motion (1515 out of 2274.8). I find these hours to be reasonable after considering all the *Johnson* factors. That reduction will be applied equally to all timekeepers, with the following result:

28

| Name | Hours Requested | Hours Awarded |
|---|---:|---:|
| Richard Mast | 17.2 | 11.5 |
| Mary McAlister | 30.7 | 20.4 |
| Daniel Schmid | 464.2 | 309.2 |
| Horatio Mihet | 710.8 | 473.4 |
| Roger Gannam | 653.8 | 435.4 |
| Mathew Staver | 119.2 | 79.4 |
| Paralegal | 48.8 | 32.5 |
| Law Clerk | 230.1 | 153.2 |
| | **2,274.80** | **1515** |

### VI.    *Hourly Rates*

To support the requested rates, Plaintiffs rely on the Declaration of Horatio Mihet. ECF No. 221-1. Mr. Mihet swears, "I am familiar with the prevailing market rates in the Southern District of Florida, including in Palm Beach County, for the services of attorneys and legal staff of like quality and kind as those of Liberty Counsel. I reside and work in South Florida and, in addition to this matter, I have handled numerous litigated and non-litigated legal matters in South Florida, including in Palm Beach County, in both federal and state courts." ECF No. 221-1 ¶18. He later opines, "the hourly rates requested in Plaintiffs' fee petition . . . for complex constitutional litigation in Palm Beach County are reasonable for attorneys of comparable qualifications and experience and are commensurate with the prevailing market rates for attorneys practicing or appearing in Palm Beach County,

as determined recently by this Court." *Id.* at ¶25 (citing *DJ Lincoln Enters. Inc. v. Google, Inc.,* No. 20-CV-14159-RLR, 2022 WL 4287640 (S.D. Fla. July 28, 2022) *report and recommendation adopted,* 2022 WL 3754182 (S.D. Fla. Aug. 30, 2022).

The City argues that Plaintiffs' Counsel's rates should be capped by the rates they requested, and were awarded, in a contemporaneous challenge to an SOCE ordinance in the Middle District of Florida (*Vazzo* litigation). It is undisputed that, in the *Vazzo* case, Plaintiffs' Counsel asked for the following billing rates:

| Name | Hourly Rate |
|------|-------------|
| Mary McAlister | $ 375 |
| Daniel Schmid | $ 300 |
| Horatio Mihet | $ 425 |
| Roger Gannam | $ 425 |
| Mathew Staver | $ 500 |
| Paralegal | $ 100 |

Plaintiffs' Counsel correctly notes that Tampa, not West Palm Beach, was the locality in that case, and that these rates were for work performed in 2018-19. ECF No. 235 at 8. The City notes that much of the billing in this case occurred in 2018 and 2019, when hourly rates in Palm Beach County were lower than they are today.

A.  <u>Non-Admitted Counsel are not limited to paralegal rates</u>

Before deciding what reasonable hourly rates to award, I address Defendants' argument that Ms. McAlister and Mr. Schmid should only be reimbursed at paralegal rates because they are not members of the bar of this Court and were not admitted *pro hac vice.* ECF No. 229 at 7 (citing *Zech v. Comm'r of Soc. Sec.*, 680 F. App'x 858 (11th Cir. 2017)); ECF No. 228 at 2-3 (same). I disagree. I agree with, and adopt, Plaintiffs' argument that "[t]he better reasoned approach is taken by the Ninth

30

Circuit in *Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815 (9th Cir. 2009)." ECF No. 235 at 11.

In *Zech,* the Eleventh Circuit acknowledged the trial court's broad discretion in awarding statutory attorneys' fees. It said that unless "the district court fails to apply the proper legal standard, fails to follow proper procedures in making its determination, or bases an award upon clearly erroneous findings of fact . . we will affirm even if we would have decided the matter the other way." 680 F. App'x at 859. At most, *Zech* holds that the trial court has discretion to deny full rates to non-admitted lawyers under some circumstances.

Defendants also cite *Martin v. Comm'r of Soc. Sec.*, No. 6:17-CV-1974-ORL-KRS, 2018 WL 8578026, at *3 (M.D. Fla. Dec. 6, 2018) as support for denying full rates to non-admitted lawyers. In that case, the Court found that counsel was evading the Local Rules' limit on *pro hac vice* admissions.

Without attempting to identify, or distinguish, all situations where an attorney could be denied full rates because they did not seek *pro hac vice* admission, this case is not one of them. Law firms frequently use non-admitted lawyers for drafting documents, research, and other non-court activities. There is no evidence that Plaintiffs' Counsel was attempting to evade this Court's rules. Defendants point to the first sentence of Rule 4(a) of the Local Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys which says, "Only members of this Court's bar may *appear as attorneys before this Court*, except when the Court permits an appearance pro hac vice." (emphasis added). An attorney who merely drafts or

31

reviews documents, or helps another attorney prepare for a hearing, is not "appearing before this Court." This sentence can be contrasted to the next sentence which says, "Attorneys residing within this District *and practicing before this Court* are expected to be members of the bar of this Court." Here, there is no evidence that Ms. McAlister or Mr. Schmid reside in this District, so I need not decide whether non-court participation in a pending case constitutes "practicing before this Court." I further note that Ms. McAlister's last billing entry was in February 2018; the Complaint was not filed until June 2018. So, there was no vehicle for Ms. McAlister to seek *pro hac vice* admission before doing her work.

  B. <u>Calculation of Reasonable Hourly Rates</u>

  I now turn to what reasonable hourly rates should be awarded. This case was filed in June 2018. It was actively and continuously litigated through the appellate panel argument in February 2020. The pace of litigation slowed substantially — but did not cease — during the *en banc* proceedings that ended when the appellate mandate issued in July 2022. After that, there was approximately eight months of active litigation before the Offers were accepted in early 2023.

  1. <u>Hourly Rate Computation Methodology</u>

  As this timeline shows, the majority of the compensable hours occurred between the filing of the Complaint in June 2018 and the appellate argument in February 2020. I am aware from personal knowledge that there has been a substantial increase in attorney billing rates in the West Palm Beach market since 2020. To account for this change, I am awarding two hourly rates: one for hours

accrued from the onset of this case through the appellate argument in February 2020 ("pre-February 2020 time"); one for hours accrued after February 2020 ("post-February 2020 time"). Where a timekeeper accrued hours during both periods, I have applied a weighted average to arrive at an overall hourly rate. For timekeepers with a relatively low number of hours, I have computed an exact distribution of which hours accrued before and after February 2020. For other timekeepers where that computation would have been too time-consuming, I have reviewed the overall itemized billing records and estimated the proper distribution, as explained more fully below.

This approach will result in some hours being compensated at a higher rate than would have been paid in real time, and other hours being under-compensated. Undoubtedly, some of those variances will cancel each other out, but not entirely. Nevertheless, I believe this approach is the best way to estimate the reasonable value of the services provided by Plaintiffs' Counsel and to achieve the "rough justice" that binding precedent demands. *Fox*, 563 U.S. at 838.

For pre-February 2020 time, I award the rates requested in the *Vazzo* fee request. Based on my personal knowledge of the Palm Beach County legal market, those rates are commensurate with rates charged in that market in 2017-19 for lawyers of similar experience. Plaintiffs have not shown that higher rates are warranted. For post-February 2020 time, I award the rates requested by Plaintiffs' Counsel. These rates are within the range of rates for similar lawyers in Palm Beach County, albeit at the high end of the spectrum. This case involved complex and unique

issues of constitutional law, and required sophisticated skills in both trial and appellate advocacy. I believe Palm Beach County clients would have paid these requested rates in 2022 to get attorneys who could successfully litigate these issues.

2.  Horacio Mihet

Mr. Mihet actively participated as lead counsel in all stages of the litigation. I divide his compensable hours equally between pre- and post-February 2020 rates. His pre-February 2020 hourly rate is $425. Mr. Mihet has been admitted to the bar over 20 years and has litigated complex constitutional cases at a high level. A post-February 2020 hourly rate of $700 is appropriate for him. His weighted average rate is $562.50.

3.  Roger Gannam

I treat Mr. Gannams's time and hourly rates the same as Mr. Mihet's. They have similar professional experience and played similar roles in this case. Mr. Gannam's pre-February 2020 hourly rate is $425. A post-February 2020 hourly rate of $700 is appropriate for him. His weighted average rate is $562.50.

4.  Daniel Schmid

Mr. Schmid is less experienced than Mr. Mihet, Mr. Gannam, and Mr. Staver. He played a lesser role in this litigation than Mr. Mihet and Mr. Gannam. But, he participated throughout all phases of the litigation. I therefore also allocate his time equally between pre- and post-February 2020. His pre-February 2020 hourly rate is $300. A post-February 2020 hourly rate of $625 is appropriate for him. His weighted average rate is $462.50.

5.  <u>Matthew Staver</u>

Mr. Staver was the most senior lawyer on this case. He argued the appeal in the Eleventh Circuit, but otherwise appears to have played a lesser role to Mr. Mihet, Mr. Gannam, and Mr. Schmid. Only approximately 24 of his 119.2 itemized hours accrued after the appellate panel argument in February 2020. As such, I allocate 80% of his time to his *Vazzo* rate ($500) and 20% to the higher hourly rate requested here ($760). His weighted average hourly rate is $552.

6.  <u>Richard Mast</u>

Mr. Mast was not part of the *Vazzo* fee request. It appears from the itemized billing records that all of Mr. Mast's time was billed between October 2017 and February 2018. Based on his experience at the time, a rate of $325 is appropriate.

7.  <u>Law Clerk Daniel Piedra</u>

The Law Clerk, Mr. Piedra, also was not part of the *Vazzo* fee request. He appears to have incurred all of his billable time after August 2022. His requested rate of $150 per hour is reasonable and will be awarded in full.

8.  <u>Mary McAlister</u>

All of Ms. McAlister's hours accrued before March 2018, so her hourly rate for all compensable billing is her *Vazzo* rate of $375.

9.  <u>Paralegal Jill Schmid</u>

Paralegal Jill Schmid had 31.5 itemized hours between December 2017 and December 2019, 3.0 hours between December 2019 and April 2022, then 14.3 hours between May 2022 and October 2022. For the purpose of calculating her hourly rate,

35

I award $100 per hour for 31.5 hours and $150 per hour for 17.3 hours. This amounts to a weighted hourly rate of $117.73.[10]

### VII.   Lodestar Calculation

| Name | Hours Requested | Hours Awarded | Hourly Rate | Total |
|---|---|---|---|---|
| Richard Mast | 17.2 | 11.5 | $ 325.00 | $3,737.50 |
| Mary McAlister | 30.7 | 20.4 | $ 375.00 | $7,650.00 |
| Daniel Schmid | 464.2 | 309.2 | $ 462.50 | $143,005.00 |
| Horatio Mihet | 710.8 | 473.4 | $ 562.50 | $266,287.50 |
| Roger Gannam | 653.8 | 435.4 | $ 562.50 | $244,912.50 |
| Mathew Staver | 119.2 | 79.4 | $ 552.00 | $43,828.80 |
| Paralegal | 48.8 | 32.5 | $ 117.73 | $3,826.23 |
| Law Clerk | 230.1 | 153.2 | $ 150.00 | $22,980.00 |
| | **2,274.80** | **1515** | | $736,227.53 |

### C. Plaintiffs are not entitled to a lodestar multiplier

Plaintiffs have not met their burden of producing specific evidence that the circumstances of this case were so rare and exceptional that the lodestar fee would not have been adequate to attract competent counsel. They ask for an enhancement because of the undesirability of the case. ECF No. 221 at 13-14. They argue that lawyers who bring civil rights cases like this one are often ostracized or harassed — as their counsel was, here. *Id.*

---

[10] ($100 per hour x 31.5 hours) + ($150 per hour x 17.3 hours) = $5745 total billing. Divide by 48.8 hours = $117.73 per hour.

Plaintiffs argue that a multiplier can be based on the *Johnson* factors, such as undesirability. ECF No. 221 at 13. The sole authority they cite for this argument is *DJ Lincoln,* 2022 WL 4287640 at *6. That case did not involve a multiplier. Rather, the cited portion says that the *Johnson* factors are relevant for computing the lodestar, not for evaluating a multiplier. "The Supreme Court has made it plain that 'most, if not all,' of the factors used to determine a reasonable fee are already subsumed in the lodestar, and it is not permissible to enhance a fee based on a factor that is subsumed. That would be 'double counting'—i.e., a windfall." *In re Home Depot Inc.*, 931 F.3d 1065, 1083 (11th Cir. 2019) (internal citations omitted).

I need not resolve whether the undesirability *Johnson* factor could ever justify a lodestar multiplier. Here, even accepting Plaintiffs' argument that this case was undesirable and that their counsel was subject to hostility because of this representation, those facts do not warrant a multiplier. The issue is not whether representing these Plaintiffs was *unpopular*. The proper question is whether there is specific evidence that the lodestar fee — which already incorporates an undesirability factor — would not have provided a reasonable fee that would have been "adequate to attract competent counsel." *Perdue*, 559 U.S. at 553-54. As discussed above, Plaintiffs have not offered evidence that other competent counsel refused to take on this case, nor have they shown that competent counsel would not have taken on the case for the lodestar fee.

Plaintiffs cite multiple cases that they say awarded lodestar multipliers based on undesirability. ECF No. 221 at 14. Several of those are inapplicable because they

predate *Perdue,* which overruled prior Eleventh Circuit precedent that was more lenient toward multipliers. None of the three post-*Perdue* cases that Plaintiffs cite arose under Section 1988. One awarded a multiplier based on Florida law that applies a lower standard for fee multipliers. *See Levesque v. Gov't Emps. Ins. Co.*, No. 15-14005, 2022 WL 1679224 (S.D. Fla. Mar. 11, 2022) (J. Maynard).[11] Another, *Holman v. Student Loan Xpress, Inc.,* 778 F. Supp. 2d 1306 (M.D. Fla. 2011), awarded a multiplier because counsel in a consumer class action litigated under a contingency fee arrangement and had to wait two years to be compensated. The multiplier was not based on the alleged undesirability of the case. In the third, *Ryder v. Diversified Ambulance Billing, LLC*, No. 09-CV-2058, 2011 WL 13323560 (M.D. Fla. 2011), the court awarded a multiplier after "Plaintiff submitted evidence suggesting that an enhancement is necessary in this case in order to provide ensure to [sic] that counsel is fully compensated and that similar plaintiffs are able to obtain competent

---

[11] As Judge Maynard explained:

> Florida courts "routinely approve [ ] fees that reward lawyers for pursuing cases that have little chance of success." *Progressive Express Inc. Co. v. Schultz*, 948 So.2d 1027, 1032 (Fla. 5th DCA 2007). Put simply, "the riskier the case the greater the multiplier." *Id.* Unlike federal courts applying federal law within the stricter confines of *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543 (2010), "courts applying Florida law apply a risk multiplier based on the need for a contingency fee arrangement coupled with evidence in the record that, without a multiplier, the plaintiffs would have faced substantial difficulties finding counsel in the relevant market." *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2019 WL 7905013, *6 (Oct. 10, 2019) (citing *Sun Bank of Ocala v. Ford*, 564 So.2d 1078, 1079 (Fla. 1990)).

*Levesque,* 2022 WL 1679224, at *8.

representation in the future." *Id*. at *3. That case-specific conclusion has no precedential value here, where the facts are different. As noted above, Plaintiffs have not shown that the facts of this case are so rare and exceptional that their counsel should receive a fee multiplier.

   D. <u>Non-Taxable Costs</u>

Plaintiffs ask for the following costs that are not taxable under 28 U.S.C. §1920:

| | |
|---|---|
| Attorney travel expenses: | $ 7,441.58 |
| Electronic research expenses: | $ 4,879.93 |
| Shipping expenses: | $   542.79 |

Plaintiffs have submitted itemized invoices and other documentation showing that these expenses were incurred. ECF No. 221-3. As the factual basis for why these expenses are reimbursable, Plaintiffs rely on the Mihet Declaration. ECF No. 221-1. Mr. Mihet summarily swears, "The claimed expenses were necessary to our effective representation of Plaintiffs and are of a type routinely and ordinarily billed to clients." *Id*. ¶30. Defendants do not dispute that the requested expenses were incurred. They only challenge whether these expenses can be recovered under §1988.

I have already found that attorney travel to Palm Beach County is not recoverable. The County also objects to Mr. Mihet's travel to attend a moot court session in Orlando ($659.92), and (4) multiple attorneys attending the Eleventh Circuit oral argument ($1,610.62). It also objects to the electronic research and shipping expenses on the grounds that they lack sufficient detail to show that they were necessary to Plaintiffs' representation. ECF No. 228 at 28-29.

The City joins the County's objection that Plaintiffs have not substantiated why the legal research expenses and shipping expenses were necessary to the representation. *Id.* In sum, the City says Plaintiffs should not receive any non-taxable expenses.

For the same reasons that travel time is not compensable, travel expenses to West Palm Beach are not recoverable.

Mr. Mihet's travel to Orlando to prepare for oral argument was reasonable and necessary. ECF No. 221-1 ¶18 (Mr. Mihet resides and works in South Florida). As one of the lead lawyers in the trial court proceedings, it was reasonable and appropriate for Mr. Mihet to be present to assist in oral argument preparation.

Travel by multiple attorneys to attend the appellate argument in Miami was not reasonable and necessary. Even after the 25% across-the-board reduction, I have allowed over 75 hours of billable time for oral argument preparation. Plaintiffs have not offered evidence that, despite that amount of pre-argument preparation, it was necessary to have multiple lawyers present at oral argument such that their travel expenses are compensable.

Plaintiffs argue that the research costs were reasonably related to the representation. They rely on Mr. Mihet's declaration and the fact that the Westlaw billing records show counsel's internal file number for this case (17-11). Mr. Mihet's declaration is not sufficiently detailed to justify these expenses. It is merely a conclusory statement. Similarly, the fact that the bills include an internal file number is not, by itself, sufficient to show that the expense was reasonable and necessary to

the representation. Although it may have been reasonable for Plaintiffs to incur some research costs in this case, Plaintiffs have the burden to justify their entitlement to the amount of research costs requested. Because Plaintiffs have failed to sufficiently show that the amount of research costs they incurred was reasonable and necessary to the representation, and it would be impossible for the Court to determine what amount of research costs would be reasonable in this case based on the information provided, I find that Plaintiffs' research costs are not compensable.

For the same reasons, Mr. Mihet's declaration and the shipping receipts are inadequate to justify why the shipping charges were necessary to the representation.

In sum, the only compensable non-taxable costs are $659.92 for Mr. Mihet's travel to Orlando for oral argument preparation.

E.  Allocation of Fees and Costs

The City argues that the compensable costs should be allocated pro rata, with 3/7 being allocated to the City and 4/7 being allocated to the County. ECF No. 229 at 3-4. This issue was previously briefed in response to Plaintiffs' Motion for Taxable Costs. *See* ECF Nos. 218, 220. After full briefing on that issue, Judge Rosenberg ordered the taxable costs to be "shared equally by the Defendants." ECF No. 232. The City offers no good basis for me to reconsider Judge Rosenberg's decision.

41

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court award Plaintiffs $736,887.45 in costs under §1988 consisting of $736,227.53 in attorneys' fees and $659.92 in non-taxable expenses. Those costs should be shared equally by the Defendants.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 1st day of November 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE